UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**TERRY W. EMMERT**,

          Plaintiff,

v.

**CLACKAMAS COUNTY**,

          Defendant.

Case No. 3:13-cv-01317-ST

**FINDINGS AND RECOMMENDATIONS**

STEWART, Magistrate Judge:

<u>**INTRODUCTION**</u>

Plaintiff, Terry W. Emmert ("Emmert"), a landowner and developer, filed this action against defendant, Clackamas County, for the loss in value of several properties he purchased or retained to assist Clackamas County in the development of three transportation projects (Sunrise Corridor Project, East Side Light Rail Project, and Sunnyside Road Widening Project). Clackamas County allegedly represented that it would purchase the properties from Emmert when funds became available, but has not done so and instead has allegedly interfered with Emmert's efforts to sell or develop those properties in order to keep the property values low. The First Amended Complaint (docket #33) alleges claims under 42 USC § 1983 for violations of the Takings Clause of the Fifth Amendment (First Claim) and the Equal Protection Clause of the Fourteenth Amendment (Third Claim) of the United States Constitution, a claim for violation

of the Takings Clause in Article I, § 18, and Article XI, § 4, of the Oregon Constitution (Second Claim), as well as tort claims for fraud (Fourth Claim) and tortious interference with economic relations (Fifth Claim).

On October 24, 2013, Clackamas County filed a Motion to Dismiss (docket #9) Emmert's initial Complaint pursuant to FRCP 12(b)(6).  On June 24, 2014, Judge Dennis J. Hubel dismissed Emmert's equal protection and inverse condemnation claims with leave to replead, but declined to address Emmert's claims for inverse condemnation under the Oregon Constitution and fraud.  Opinion and Order (docket #26), p. 14.[1]

After Emmert filed a First Amended Complaint on August 29, 2014, Clackamas County filed a Motion to Dismiss the First Amended Complaint under FRCP 12(b)(6) for failure to state a claim (docket #34) without leave to replead.  For the following reasons, that motion should be granted in part and denied in part.

## **ALLEGATIONS**

Emmert owns or has owned 13 properties located in Clackamas County between I-205 to the west and Rock Creek Junction to the east.  First Amended Complaint, ¶ 4.  These 13 properties are referred to as: (1) the Hubbard Road Properties; (2) the 142nd Avenue East Properties; (3) the 142nd Avenue West Properties; (4) the Morning Way Properties; (5) the Con Battin Road Property; (6) the Sunnyside Road Property; (7) the 13171 Property; (8) the 15576 Property; (9) the Clackamas River Estates; (10) the Clear Creek Estates Property; (11) Emmert Heights; (12) Emmert International Business Park; and (13) the SE 114th Properties.  *Id.*

---

[1] Although the parties filed consents to a Magistrate Judge when this case was assigned to Judge Hubel (docket #17), Clackamas County subsequently withdrew its consent on November 17, 2014 (docket #36), prior to reassignment of this case to another Magistrate Judge on December 17, 2014 (docket #37).  A party has no absolute right to withdraw a validly given consent to a Magistrate Judge, and a motion to withdraw consent may be granted only on a showing of good cause or extraordinary circumstances.  28 USC § 636(c)(6); *see, e.g.  Carter v. Sea Land Servs., Inc.* 816 F2d 1018, 1021 (5th Cir 1987).  Nonetheless, absent an objection by Emmert and based on the reassignment, this court will honor the withdrawal of consent.

Three transportation projects by Clackamas County interfered with Emmert's efforts to sell and develop these properties. The first project, the Sunrise Corridor Project, which Clackamas County and other government entities have studied and planned to develop since the mid-1980s, is an improved route of travel from I-205 to Rock Creek Junction, a distance of approximately five miles. *Id*, ¶ 5. In December 2010, the Final Environmental Impact Statement recommended the Sunrise Corridor Project as the preferred option. *Id*, ¶ 6. The second project, the East Side Light Rail Project, which Clackamas County and other government entities have planned since 2000, is constructed and completed. *Id*, ¶ 7. The third project, the Sunnyside Road Widening Project, which Clackamas County and other government entities planned and constructed between 2000 and 2009, is completed and expands S.E. Sunnyside Road from its junction with I-205 eastward to approximately S.E. 172nd Avenue. *Id*, ¶ 8.

## I.   <u>Hubbard Road Properties</u>

On October 1, 2003, Emmert purchased a portion of the Hubbard Road Properties after Clackamas County employees, Cam Gilmour ("Gilmour") and Gary Cook ("Cook"), assured him that Clackamas County would buy these properties for the Sunrise Corridor Project as soon as money from the Oregon Department of Transportation ("ODOT") became available. *Id*, ¶ 10. Clackamas County never followed through on that promise to purchase the Hubbard Road Properties, despite several requests by Emmert. *Id*, ¶¶ 11–12.

At the time of the purchase, the previous owner, Armand Johnson ("Johnson"), remained on the property as a tenant and continued to run the cabinet shop he had operated for years. *Id*, ¶ 11. In 2004, Clackamas County employees Gilmour, Cook, and Steve Marshall ("Marshall"), conspired to devalue the Hubbard Road Properties by forcing Johnson out of his lease. *Id.*

Marshall accused Johnson of operating his cabinet shop without proper land use or building approvals, which Emmert challenged for nearly a year and ultimately defeated. *Id.*

In 2005, Emmert marketed the Hubbard Road Properties and secured an earnest money agreement for $3.1 million. *Id*, ¶ 13. Emmert lost the sale because Clackamas County refused to allow the potential purchaser to operate a RV dealership, despite numerous mixed-use, retail businesses operating at that time on adjacent and nearby properties along Hwy. 212. *Id*, ¶¶ 12-13.

In 2008, Emmert received another offer to purchase one of the Hubbard Road Properties from Davis Trucking ("Davis"). *Id*, ¶ 14. However, Clackamas County refused to grant Davis permission to use the property as he intended, insisting it did not have the necessary entrances. *Id.* Instead, Emmert successfully sought annexation by Happy Valley which approved the zone change allowing Davis to operate its business. *Id.* In November 2009, Emmert sold the Hubbard Road Properties to Davis. *Id.*

## II.    142nd Avenue East Properties

In November 2005, Emmert purchased the 142nd Avenue East Properties based on Gilmour's request and assurance that Clackamas County would purchase it for the Sunrise Corridor Project. *Id*, ¶ 16. Clackamas County reneged on its offer to purchase. *Id*, ¶ 17. Emmert then attempted to sell the properties to at least two interested buyers who signed earnest money agreements or made written offers. *Id.* However, the buyers were discouraged from completing the purchase by Clackamas County employees, including Rick McIntyre, Dick Polson, and Mike McAllister, who told them that a freeway would be built through the middle of the properties. *Id.*

///

**III.**   **142ⁿᵈ Avenue West Properties**

In 2002, Emmert applied to change the zone designation on the 142ⁿᵈ Avenue West Properties from I-2 industrial to C-2 commercial. *Id*, ¶ 18. In October 2005, while the application was pending, Regency Center entered into a contract to purchase the 142ⁿᵈ Avenue West Properties from Emmert for more than $16 million, supported by a $100,000.00 earnest money agreement. *Id*, ¶ 20. After a lengthy consideration process that ended in 2007, Clackamas County approved Emmert's application subject to conditions that made development of the land impossible. *Id*, ¶ 19. Emmert appealed the conditions to the Land Use Board of Appeals, but Regency Centers rescinded its offer before it was resolved. *Id*, ¶ 20.

**IV.**   **Morning Way Properties**

On September 24, 2008, Pacific Seafood offered to purchase the Morning Way Properties from Emmert. *Id*, ¶ 22. Emmert notified Clackamas County that he intended to accept the Pacific Seafood offer unless Clackamas County agreed to purchase the Morning Way Properties since it was in the intended path of the Sunrise Corridor Project. *Id*, ¶ 23. In late 2008, Clackamas County, through its employees Barb Cartmill ("Cartmill") and Gilmour, verbally agree to purchase the Morning Way Properties from Emmert, and in reliance on that verbal agreement, Emmert rejected Pacific Seafood's offer. *Id*, ¶ 24. In the summer of 2009, Clackamas County discouraged Baseline Nevada, LLC, from purchasing the Morning Way Properties, citing the inevitable condemnation from the Sunrise Corridor Project, but failed to honor its verbal agreement. *Id*, ¶ 25.

**V.**   **Con Battin Property**

As part of the construction of the Eastside Light Rail Project, Emmert lost frontage for the Con Battin Property. *Id*, ¶ 26. What was once frontage onto a cul-de-sac became state

property and the site for a Tri-Met switching station.  *Id*, ¶ 27.  On May 15, 2009, Emmert

received a $250,000.00 offer to buy the Con Battin Property, supported by a $20,000.00 earnest

money agreement.  *Id*, ¶ 28.  On January 28, 2010, the buyer cancelled the offer after Emmert

failed to obtain legal access to the Con Battin Property.  *Id*, ¶ 29.

## VI.  <u>Sunnyside Road Property</u>

Construction of the Sunnyside Road Widening Project eliminated the only street entrance

to the Sunnyside Road Property.  *Id*, ¶ 30.  For ten years, Emmert was promised by Clackamas

County employees, including Gilmour, that an alternative street access would be provided.  *Id*.

Clackamas County's failure to offer an alternative has frustrated interest from Jack in the Box

and Oil Can Henry's to purchase the Sunnyside Road Properties.  *Id*.  Emmert also lost all

System Development Charges he paid for under the Sunnyside Road Widening Project based on

representations that Clackamas County would either reimburse or issue credits for these charges.

*Id*, ¶¶ 8, 31.

## VII.  <u>13171 Property</u>

On December 26, 1997, Emmert purchased the 13171 Property.  *Id*, ¶ 32.  On

September 21, 2004, Emmert received a purchase offer for $595,000.00.  *Id.*  In November 2004,

Cook told Emmert that Clackamas County would need to purchase the 13171 Property for use in

the Sunrise Corridor Project.  *Id.*  On November 21, 2004, the interested buyer rescinded his

offer after the "DDA" told him that it would not allow construction on the property because a

"freeway" was going through it.  *Id.*  Negotiations between Clackamas County and Emmert

ended in 2005 because Gilmour reported that ODOT was not interested in negotiating with

Emmert under the willing-buyer program.  *Id.*  Nonetheless, Gilmour assured Emmert that

Clackamas County would purchase the 13171 Property from Emmert in the near future.  *Id.*

Through at least 2007, Gilmour and Cartmill continued to tell Emmert that Clackamas County would complete the purchase when they received the money from ODOT, although they knew that Clackamas County had $30 million available and did not need the ODOT funds. *Id*, ¶ 33. Clackamas County has reneged and failed to honor its verbal promise to purchase the 13171 Property. *Id*, ¶ 34.

## VIII.    15576 Property

In 2003, Emmert purchased the 15576 Property in order to develop it as a commercial site. *Id*, ¶ 35. After the purchase, Gilmour and Cook informed Emmert that Clackamas County planned to purchase the 15576 Property to construct an interchange for the Sunrise Corridor Project. *Id*, ¶ 36. Based on that statement, Emmert has not pursued his planned development and turned down an offer to purchase from RMP Property Holdings. *Id*, ¶ 37. Clackamas County has reneged and failed to honor its verbal promise to purchase the 15576 Property. *Id.*

## IX.    Clackamas River Estates

Emmert divided Clackamas River Estates into four subdivisions for residential development. *Id*, ¶ 38. In 2003, a potential buyer entered an earnest money agreement to purchase one lot for $400,000.00. *Id.* However, Clackamas County provided the buyer with inaccurate information which delayed its approval to change the septic location. *Id.* By the time of approval, the buyer's circumstances had changed and Emmert allowed the buyer to rescind its offer. *Id.*

On February 24, 2005, another buyer, Derek Marty ("Marty") entered an earnest money agreement to purchase all four lots for $1,670,000.00. *Id.* But Clackamas County again interfered with the sale by providing false information about the land, causing the buyer to withdraw his offer. *Id.*

**X.**   **Clear Creek Estates Property**

On March 16, 2005, Marty also signed an earnest money agreement to purchase the three lots within Clear Creek Estates Property for $1,125,000.00. *Id*, ¶ 39. Again, Clackamas County made misrepresentations to Marty and interfered with the sale, causing him to withdraw his offer. *Id.*

On April 17, 2008, John and Mary Kihlstrum offered $595,000.00 to buy one of the three lots. *Id.* The same employees from Clackamas County's Soils Division and Water and Environment Services deliberately misrepresented to the Kihlstrums that the septic tanks on the land had yet to be been approved, causing them to also withdraw their offer. *Id.*

**XI.**   **Emmert Heights**

Emmert developed Emmert Heights as a residential subdivision. *Id*, ¶ 40. In 2002, after the completion of one lot, DeCal Homes and John Schleining committed to buy most of the lots. *Id.* Clackamas County Planning, Transportation, Development, and Water, and the Environmental Services departments caused numerous delays during development of the remaining lots, causing DeCal Homes and John Schleining to refuse to complete the sale. *Id*, ¶ 41. The first lot sold in 2006, but Clackamas County has never granted the buyer's building permit. *Id*, ¶ 42.

**XII.**   **Emmert International Business Park**

Prior to 2002, Emmert could not develop or sell the Emmert International Business Park, a large industrial site located adjacent to the planned right-of-way for the Sunrise Corridor Project, because Clackamas County refused to provide a legal entrance. *Id*, ¶ 43. Emmert challenged the decision and was ultimately granted an entrance. *Id.* Since 2000, Clackamas County has required Emmert to complete a comprehensive plan before allowing construction.

*Id.* Clackamas County interfered with Emmert's efforts to lease the office tilt-ups he had built on the site by refusing to grant occupancy permits to potential tenants, including Righteous Clothing Co. *Id.*

Clackamas County also misrepresented the site's boundary lines during the comprehensive planning phase to appear as if the alignment of the Sunrise Corridor would not impact the site. *Id*, ¶ 44. In fact, the final alignment crossed over a significant portion of the Emmert International Business Park. *Id.*

In 2011, Colliers International was interested in purchasing the Building 4 tilt-up, but was told by County employee Larry Conrad that it could not make the purchase because Clackamas County planned to purchase the majority of the land to the north for the Sunrise Corridor Project, and the new highway would soon intersect the site. *Id.*

## XIII.   **SE 114th Properties**

In 2005 and 2006, during negotiations with Clackamas County for sale of Emmert's property at 11811 S.E. Hwy. 212 ("Headquarters Property"), Cartmill, Gilmour and Scot Sideras gave Emmert permission to transport houses located on the Headquarters Property to the S.E. 114th Property for storage. *Id*, ¶ 45. Clackamas County later cited Emmert for "illegal storage" of the houses at the SE 114th Properties. *Id*, ¶ 46. Emmert challenged the citation and during the proceedings, Cartmill and/or Gilmour lied about granting Emmert permission to store the houses. *Id.*

Emmert has marketed and attempted to sell one of more of the SE 114th Properties, but each attempt has been deliberately delayed and/or thwarted by Clackamas County. *Id*, ¶ 47. For example in 2009, Baseline Nevada LLC was looking at several properties along Hwy. 212 and

was told by Clackamas County' planning staff that a freeway would be built across the property. *Id.*

## STANDARDS

In order to survive a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007). In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995).

## FINDINGS

### I.   Statute of Limitations

In passing, Clackamas County mentions that it is not possible to tell if the purported constitutional deprivations and tort claims occurred within the applicable statute of limitations. Emmert's tort claims (Fourth and Fifth Claims) are subject to Oregon's two-year statute of limitations. ORS 12.110(1); *see Cramer v. Stonebridge Inn, Inc.*, 77 Or App 407, 410, 713 P2d 645, 646 (1986) (applying ORS 12.110(1) to an intentional interference with economic relations claim). That same two-year statute of limitations applies to the § 1983 claims (First and Third Claims). *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F3d 577, 580 (9th Cir 2012). In contrast, the statute of limitations for inverse condemnations claims brought under Oregon Constitution, Article I, § 18, is six years. *Suess Builders Co. v. City of Beaverton*, 294 Or 254, 267-68, 656 P2d 306, 314 (1982).

Any attempt by Clackamas County to dismiss claims based on the statute of limitations should be rejected as premature. First of all, Clackamas County does not actually argue how the limitations period might apply to a particular property, act or claim. This court cannot be expected to read minds in order to discern the factual basis for this argument. Second, Emmert alleges that he "learned on or about June 2009 that Defendant had devised a strategy to keep property values down and inhibit sales of property." First Amended Complaint, ¶ 49 "[I]t is "the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action," that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 US 384, 388 (2007) (citation and internal quotation marks omitted).

With respect to claims for fraud and deceit, the statute of limitations commences "only from the discovery of the fraud or deceit." ORS 12.110(1). As a result, the two-year statute of limitations does not begin to run until the plaintiff knows or, in the exercise of reasonable care, should have known of the alleged fraud or deceit. *Burgdorf v. Weston*, 259 Or App 755, 768-69, 316 P2d 303, 312 (2013) (citation omitted).

In addition, as discussed below, Emmert's takings claims rely on the "condemnation-cloud theory." Under that theory, extensive delays "between the initiation and abandonment of the condemnation process" is an important factor in determining an abuse of eminent domain authority. *Thompson v. Tualatin Hills Park & Recreation Dist.*, 496 F Supp 530, 544 (D Or 1980), *aff'd*, 701 F2d 99 (9th Cir 1983). Although evidence of a long delay is not required, the allegations reveal that many years passed after Clackamas County made overtures to purchase the Properties for condemnation and before June 2009 when Emmert allegedly discovered its intent to interfere with his efforts to market and sell the Properties. First Amendment Complaint, ¶ 10 (2003 for the Hubbard Road Properties), ¶ 16 (2005 for the 142nd Avenue East Properties),

¶ 31 (2003 for the Sunnyside Road Property), ¶ 32 (2004 for the 13171 Property), ¶¶ 35–36 (2003 for the 15576 Property).  A motion to dismiss based on the statute of limitations succeeds only when "the running of the statute is apparent on the face of the complaint."  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F3d 954, 969 (9th Cir 2010) (citation and internal quotation marks omitted).  Based on the allegations in the First Amended Complaint, it is far from apparent that the statute of limitations has run.

Moreover, Clackamas County has attached a Tolling Agreement to its motion which will likely impact the statute of limitations.  The Tolling Agreement commenced October 18, 2011, and, according to its Fourth Amendment, terminated on July 31, 2013, the day Emmert filed the initial Complaint.  Thus, it may well preserve many, but not all, of Emmert's claims.  However, "a court may look only at the face of the complaint to decide a motion to dismiss."  *Van Buskirk v. Cable News Network, Inc.*, 284 F3d 977, 980 (9th Cir 2002) .  If "matters outside the pleadings are presented to and not excluded by the court," then a motion to dismiss under FRCP 12(b)(6) for failure to state a claim "must be treated as one for summary judgment under Rule 56."  FRCP 12(d).  The only documents which may be considered on a motion to dismiss without converting it to a motion for summary judgment are documents attached to the complaint under FRCP 10(c), matters that are subject to judicial notice, *Shaw v. Hahn*, 56 F3d 1128, 1129 n1 (9th Cir), *cert. denied*, 516 US 964 (1950), and documents that are "referenced extensively in the complaint and [are] accepted by all parties as authentic."  *Van Buskirk*, 284 F3d at 980 (citation omitted).  The Tolling Agreement does not fall into any of these categories and, therefore, cannot be considered in resolving the motion to dismiss.

///

///

## II.    <u>Standing</u>

Next, Clackamas County argues that Emmert lacks standing to bring claims regarding four of his Properties (the 142nd Avenue West Properties, Con Battin Property Sunnyside Road Property, and Emmert Heights) because he has not suffered an injury.  An "injury in fact" must be "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 US 555, 560 (1992).

However, Emmert alleges the loss of sales and development opportunities for all four Properties, as well as a loss of access to the Con Battin Property and the Sunnyside Road Property.  First Amended Complaint, ¶¶ 20–21(142nd Avenue West Properties), ¶¶ 26–27 (Con Battin Property), ¶¶ 30–31 (Sunnyside Road Property), and ¶¶ 40–41 (Emmert Heights). Emmert's ability to eventually sell one lot within Emmert Heights in 2006 does not negate his previous injury.  *Id*, ¶ 42.  Therefore, Emmert has standing to bring all claims with respect to all 13 Properties.

## III.    <u>Immunity</u>

Clackamas County also argues that its employees, Cartmill and Gilmour, are immune from any liability arising from their alleged lies during Emmert's challenge of his citation for "illegal storage" at the SE 114th Properties.  First Amended Complaint, ¶ 46.  As support, Clackamas County cites the immunity granted to parties and witnesses for their testimony in judicial proceedings.  *See Briscoe v. LaHue*, 460 US 325, 345–46 (1983).

However, it is unclear from the allegations in the First Amended Complaint whether Cartmill and Gilmour lied during judicial or even administrative proceedings.  Moreover, Emmert responds that he is not suing these individuals for their false testimony or seeking to hold Clackamas County liable as a result under any *respondeat superior* theory.  Instead, he

makes this allegation to support his equal protection claim that Clackamas County was motivated

to single him out in enforcing its regulations. First Amended Complaint, ¶ 63. That claim is

based on an ongoing pattern of alleged discrimination that predates and can exist independently

of Cartmill and Gilmour's alleged lies. Thus, Clackamas County's motion to dismiss a "claim"

based on paragraph 46 should be denied.

## IV.  § 1983 Claims

### A.  *Monell* Liability

Clackamas County argues that the § 1983 claims should be dismissed based on a failure

to allege an official policy, custom, or practice that lead to any constitutional violations.

Municipalities are "persons" subject to damages liability under § 1983. *Monell v. Dep't of Soc.*

*Servs.*, 436 US 658 (1978); *Gillette v. Delmore*, 979 F2d 1342, 1346 (9th Cir 1992). However,

municipalities are liable only when "action pursuant to official municipal policy of some nature

caused a constitutional tort." *Monell*, 436 US at 691; *Pembaur v. City of Cincinnati*, 475 US

469, 479-80 (1986). In *Monell*, the Supreme Court held that a municipality may only be liable

under § 1983 for a constitutional tort in three general ways. First, a plaintiff can prove that the

employee who deprived him of a constitutional right was acting pursuant to a formal or *de facto*

municipal policy or entrenched custom. *Gillette*, 979 F2d at 1346. Second, the plaintiff can prove

that the person was an official with "final policymaking authority" and the "challenged action

itself thus constituted an act of official governmental policy." *Id.* Third, a plaintiff can prove that

an official with final policymaking authority "ratified" a municipal employee's unconstitutional

act. *Id* at 1346-47.

The First Amended Complaint proceeds under the first theory. However, Emmert does

not challenge that Clackamas County adopted an express policy. *See City of Oklahoma City v.*

*Tuttle*, 471 US 808, 823 (1985) ("the word 'policy' generally implies a course of action consciously chosen from among various alternatives").  Instead, he challenges Clackamas County's coordinated custom which he describes as a "strategy to keep property values down and inhibit sales of property within the Sunrise Corridor's proposed right-of-way."  First Amended Complaint, ¶ 49.

Clackamas County contends that Emmert identifies only a series of discretionary decisions by its employees unrelated to a custom or policy for which it has no *respondeat superior* liability.  *See Monell*, 436 US at 691; *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 US 397, 403 (1997).  To the contrary, Emmert's allegations indicate a coordinated effort by Clackamas County to depreciate land values of properties that were candidates for condemnation.  Clackamas County's strategy allegedly "included, but was not limited to, enacting regulations and undertaking activities that would minimize and/or prohibit development and/or discourage potential buyers from acquiring Properties in the planned right-of-ways" and advise "potential purchasers of the Properties not to purchase the Properties because they were subject to [Clackamas County's] right of eminent domain and ultimately condemnation."  First Amended Complaint, ¶ 49.  Allegations of repeated advice by Clackamas County employees to prospective buyers against purchasing the Properties because of future condemnation, as well as allegedly unsubstantiated promises to Emmert that Clackamas County would purchase his Properties, are sufficiently pled as a conduct consistent with that "strategy" and not isolated decision-making.

Emmert argues that he also states a *Monell* claim resulting from ratification and decisions of official policymakers, but neither theory is apparent from the face of the allegations.  Emmert appears to argue that Clackamas County's failure to correct its custom after receiving Emmert's

notice of claims required under the Oregon Tort Claims Act ("OTCA"), ORS 30.260-.330, constituted implicit ratification of its past practices, or that the allegations support an inference that a the decisions must have been made by someone with final policymaking authority.  But Emmert fails to allege these grounds or cite cases supporting either as a basis for a *Monell* claim. Nevertheless, Emmert has successfully pled *Monell* liability as the result of Clackamas County's custom of prohibiting development and discouraging purchase of properties slated for condemnation.

###    B.    <u>Inverse Condemnation</u>

Emmert's inverse condemnation claims are based upon the Fifth Amendment to the United States Constitution (First Claim) and Article I, § 18, and Article XI, § 4 of the Oregon Constitution (Second Claim).  The Fifth Amendment provides, in part, that "private property (shall not) be taken for public use, without just compensation."  This provision applies to the activities of states and their subdivisions by the due process clause of the Fourteenth Amendment.  Article I, § 18, of the Oregon Constitution has language virtually identical to, and has been construed to have the same meaning as, the Fifth Amendment.  *Lincoln Loan Co. v. State, By & Through State Highway Comm'n*, 274 Or 49, 52 n2, 545 P2d 105, 106 n2 (1976). Because of their similarity, the two constitutional provisions are considered in this circuit to provide a "single standard" for determining an inverse condemnation claim.  *See Thompson*, 496 F Supp at 539.  "Inverse condemnation is simply a popular term for a takings claim in which the government has taken property without formal condemnation proceedings."  *W. Linn Corp. Park, LLC v. City of W. Linn*, 428 F App'x 700, 701 n2 (9th Cir 2011).

Clackamas County argues that both inverse condemnation claims fail because the First Amended Complaint does not allege that Clackamas County acted for the benefit of public use.

Emmert argues that Clackamas County misunderstands his claim to be a *per se* taking claim. Instead, he is alleging what is commonly known as a condemnation-cloud or condemnation-blight claim. *See Thompson*, 496 F Supp at 539. In the typical condemnation-cloud action, the properties designated for condemnation have suffered drastic physical deterioration and depreciation in value before the formal appropriation. *Id* at 539-40 (explaining the theory). Condemnation-cloud cases do not require any physical entry or direct restraining by a government entity before requiring compensation to the landowner. *Id*. Instead, a taking occurs where the municipality "acted affirmatively to lower the value of the subject property" or places a cloud over it for several years without acting. *Id* at 543.

Although condemnation-cloud cases differ from *per se* taking cases in that they are actionable even if the condemnation proceedings are abandoned, a plaintiff alleging this theory must still allege a taking for the benefit of public use. Both constitutional provisions require that the plaintiff show that the governmental acts were done with the intent to take the property for a public use. *See Kelo v. City of New London, Conn.*, 545 US 469, 507 (2005); *Worman v. Columbia Cnty.*, 223 Or App 223, 234–35, 195 P3d 414, 420–21 (2008) (explaining that recent Oregon Supreme Court cases retained the public use requirement). The cases cited by Emmert to argue a contrary position are distinguishable because they never questioned the government's intent.

In the alternative, Emmert argues that his allegations qualify as a general regulatory takings pursuant to *Penn Cent. Transp. Co. v. City of New York*, 438 US 104 (1978). In that case, the Supreme Court was "unable to develop any 'set formula'" for evaluating these types of claims, but identified relevant factors, such as the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed

expectations, and the character of the governmental action. *McClung v. City of Sumner*, 548 F3d 1219, 1226 (9th Cir 2008), *abrogated on other grounds by Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S Ct 2586 (2013), quoting *Penn Central*, 438 at 116-17. However, again, these claims are not immune from the "public use" requirement.

Emmert does not specifically allege that Clackamas County's strategy to keep property values down and inhibit sales of his Properties within the Sunrise Corridor's proposed right-of-way was done with the intention to use those Properties for public use. Given that Emmert acquired many of the Properties allegedly to assist Clackamas County with respect to three public transportation projects, one could easily assume that Clackamas County intended to use the Properties for a public use. However, in his fraud claim, Emmert specifically alleges that Clackamas County "did not intend to purchase the Properties." First Amended Complaint, ¶ 71. Based on that allegation, Emmert's inverse condemnation claims necessarily fail because, if true, Clackamas County never intended to use his Properties for the public transportation projects. On the other hand, if Emmert succeeds in proving his inverse condemnation claims, then his fraud claim necessarily fails because Clackamas County made no false statements regarding its future intent to eventually condemn his Properties for the transportation projects. Although Emmert cannot succeed on both the inverse condemnation and fraud claims, he is not precluded from alleging them as alternative claims, provided that he alleges all of the necessary elements of each claim.

The First Amended Complaint fails to allege a public use by Clackamas County necessary to state a claim for inverse condemnation under either the federal or Oregon constitution. However, Emmert can easily amend his inverse condemnation claims to plead the necessary element of Clackamas County's intent to use the Properties for a public use and also

amend his fraud claim as an alternative claim premised on Clackamas County's lack of intent to use the Properties for a public use.

### C.    Equal Protection

Clackamas County also seeks to dismiss the Third Claim brought under § 1983 alleging a violation of Emmert's constitutional right to equal protection.  The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any persons within its jurisdiction the equal protection of the laws."  To state an equal protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate based upon plaintiff's membership in a protected class." *Barren v. Harrington*, 152 F3d 1193, 1194 (9th Cir 1998), citing *Washington v. Davis*, 426 US 229 (1976).  Emmert has not pleaded membership in a protected class, but instead proceeds under a "class of one" theory of equal protection.

"When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." *North Pacifica, LLC v. City of Pacifica*, 526 F3d 478, 486 (9th Cir 2008), quoting *Village of Willowbrook v. Olech*, 528 US 562, 564 (2000) (*per curiam*).  "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [government] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id* (citation omitted).  "A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed . . . to being an accident or a random act.'" *Id*, quoting *Jackson v. Burke*, 256 F3d 93, 96 (2nd Cir 2001).

In dismissing the equal protection claim alleged in the initial Complaint, Emmert asserts that Judge Hubel overstated the standard for pleading a class of one claim when quoting opinions by the Second and Third Circuits.  Opinion and Order (docket #26), p. 9, quoting *Perano v. Twp.*

*of Tilden*, 423 F App'x 234, 238 (3rd Cir 2011) (To be "similarly situated," parties must be "like him in all relevant aspects."); *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F3d 55 (2nd Cir 2010) ("[c]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."). But Judge Hubel did not misstate the law in the Ninth Circuit, as Emmert suggests. A plaintiff must show that he was treated differently from others *similarly* situated, not *identically* situated. *David Hill Dev., LLC v. City of Forest Grove*, No. 3:08-CV-266-AC, 2012 WL 5381555, at *20 (D Or Oct. 30, 2012). Consistent with Ninth Circuit precedent, Judge Hubel did not dismiss Emmert's original Complaint for failure to allege that he was identical to other developers, but for failure to allege the "**existence** of such similarly situated property owners who weren't treated in the alleged manner that gives rise to the claim." Opinion and Order, p. 10 (emphasis in original).

Clackamas County argues that Emmert still fails to identify substantially similar property owners required for a class of one claim. In response to Judge Hubel's ruling, Emmert now alleges that in December 2000, he "conducted a survey of more than 80 owners, developers, and tenants who owned, developed, or rented property along Highway 212, adjoining, adjacent to, and/or in the immediate vicinity of the Headquarters Property" to determine whether they "had been subjected to the same and/or similar interference with their efforts to rezone their properties and business." First Amended Complaint, ¶ 61. The survey revealed that "[n]one had experienced any of the same or similar types of interference as experienced by Emmert." *Id*. A second survey in 2005 "of the various uses of similar properties along Highway 212 . . . showed at least 134 commercial businesses operated without interference by Clackamas County." *Id*, ¶ 62. Unlike those surveyed, Emmert's tenants and prospective tenants were "consistently refused statement of use permits by Defendant when the statement of use sounded like retail

sales might be involved" and "singled out . . . for different treatment from all 134 other similarly situated property owners and tenants along the section of Highway 212 adjacent to the Sunrise Corridor Project." *Id*, ¶¶ 62-63.

Clackamas County contends that this comparison is insufficient because of the differences between Emmert and the 134 owners and tenants responding to the surveys. The 2000 survey sought information about property owners and tenants along Highway 212 who had experienced difficulty obtaining zoning changes. Although the Third Claim vaguely refers in paragraph 61 to "Emmert's proposed rezoning of certain properties," Clackamas County asserts that Emmert alleges that he applied for rezoning only with regard to the 142nd Avenue West Property. *Id*, ¶ 18. Yet denial of that request occurred in 2002, two years after he conducted the 2000 survey.

Clackamas County fails to note that the First Amended Complaint identifies six other Properties located along the section of Highway 212 adjacent to the Sunrise Corridor Project: the Hubbard Road Property (located at 13489, 13499, and just east of 13489 SE Hwy. 212); 142nd Avenue East Properties (intersection of Hwy. 212 and SE 142nd Ave.); 13171 Property (located at 13171 SE Hwy. 212); 15576 Property (interchange between Hwy. 224 and Hwy. 212); Emmert International Business Park (located at 11791 SE Hwy, 212); and SE 114th Properties (located at the intersection of SE 114th Avenue and Hwy. 212). First Amended Complaint, ¶¶ 4a, 4b, 4g, 4l, 4m, 36. Although not specifically alleged, the Morning Way Property also appears to be near the Sunrise Corridor Project based on references to a freeway going through it. *Id*, ¶ 25. Most of these Properties do not involve an alleged disruption in Emmert's attempts to rezone or obtain statement of use permits, which is the subject of the surveys. On the other hand, the allegations regarding the Hubbard Road Property and the

Emmert International Business Park relate to applications for zone changes and tenant permits.
Emmert alleges that Clackamas County refused to allow prospective purchasers to operate an RV
dealership or trucking business at the Hubbard Road Property "despite numerous mixed-use,
retail businesses operating at that time." *Id*, ¶¶ 12-13.  A zoning change may not have been
necessary for siting an RV dealership, but was required for the trucking business which Emmert
sought and got approved through annexation to Happy Valley. *Id*, ¶ 14.  Emmert further alleges
that Clackamas County interfered with his efforts to lease the office tilt-ups he built at the
Emmert International Business Park by refusing to grant occupancy permits to potential tenants,
including Righteous Clothing Co. *Id*, ¶ 43.  Therefore, the First Amended Complaint alleges
rezoning issues with respect to three Properties along Highway 212.

Despite these other allegations relating to rezoning, it is not apparent from the face of the
First Amended Complaint that Clackamas County's alleged disruption of Emmert's efforts to
rezone the Hubbard Road Property and rent the Emmert International Business Park occurred
before Emmert conducted the surveys of other property owners and tenants along Highway 212.
Clackamas County denied the request to operate the RV dealership at the Hubbard Road
Property sometime after Emmert marketed the site in 2005 and the request for the trucking
operation in 2009. *Id*, ¶¶ 12-14.  There is no date associated with Clackamas County's denial of
occupancy permits for Emmert International Business Park.  *Id*, ¶ 43.  In the same paragraph
Emmert alleges that "[p]rior to 2002, Emmert could not develop or sell the Emmert International
Business Park . . . because Clackamas County refused to provide a legal entrance." *Id*, ¶ 43.  But
Emmert successfully challenged the refusal to grant a legal entrance before Clackamas County
denied the occupancy permits.  Without allegations showing that Emmert experienced different
treatment in his zoning and occupancy applications than other property owners and tenants along

Highway 212 during the same time period, Emmert fails to allege a similarly-situated class required to state an equal protection claim.

Emmert contends that his allegations are sufficient to show Clackamas County's purported justifications for its regulatory conduct were pretextual. However, allegations of pretext do not revive an equal protection claim that fails due to the absence of treatment different than a similarly-situated class. An equal protection violation, grounded in a class of one, occurs when a law is "selectively enforced" *and* the "plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for an impermissible motive." *David Hill Dev., LLC*, 2012 WL 5381555, at *20, quoting *Squaw Valley Dev. Co. v. Goldberg*, 375 F3d 936, 946 (9th Cir 2004), *overruled on other grounds by Lingle v. Chevron U.S.A., Inc.*, 544 US 528, 542 (2005). Absent allegations that Clackamas County selectively approved its zoning and occupancy applications among a similarly situated class that included Emmert, the equal protection claim fails.

Finally, Emmert alleges that he is "the only property owner who owns parcels of real property along the section of Highway 212 adjacent to the Sunrise Corridor Project who has been asked by Defendant to purchase properties on its behalf and/or to refrain from selling or developing properties based upon promises that Defendant would purchase the properties from the property owner." *Id*, ¶ 64.[2] However, this allegation does not differentiate Emmert from other developers based on the wrongful conduct that gives rise to his equal protection claim. The equal protection claim is premised on Clackamas County making and then reneging on its promise to buy the Properties from Emmert. Based on that theory, Emmert may allege a class of one equal protection claim if Clackamas County made and honored that same promise to other

---

[2] In paragraph 65 of the First Amended Complaint, Emmert indicates Clackamas County singled him out only with regard to the properties referenced in paragraphs 10-25 and 32-44. These paragraphs do not include the Con Battin Property and the Sunnyside Road Property.

property owners along Highway 212 adjacent to the Sunrise Corridor Project.  He does not make that allegation.  Instead he alleges that Clackamas County only made that promise to him.

At this juncture, Emmert fails to allege facts sufficient to state a class of one equal protection claim.  However, if discovery should later reveal facts sufficient to support this claim, then he is free to seek leave to amend.

### D.    **Other Claims**

Clackamas County construes several other failed claims from the pleadings of Emmert's § 1983 claims, including claims for conspiracy and violations of the right to procedural due process and the Privileges and Immunities Clause of Article IV.  *See Arruda ex rel. Arruda v. Cnty. of L.A.*, 373 F App'x 798, 799 (9th Cir 2010) (recognizing a separate claim for conspiracy under § 1983).  Emmert alleges as part of his inverse condemnation claim that Clackamas County "engaged in . . . a conspiracy to interfere with the use, development, and/or sales by Emmert of any property he owned and owns within Clackamas County."  First Amended Complaint, ¶ 50.  In response to Clackamas County's motion, Emmert clarifies that this allegation of conspiracy is not a separate claim, but merely supports his inverse condemnation and equal protection claims under the theory that Clackamas County singled him out for differential treatment.  Similarly, Emmert denies any attempt to plead a violation of procedural due process or the Privileges and Immunities Clause of Article IV.  Therefore, the court does not construe the First Amended Complaint as pleading any § 1983 claim other than equal protection and inverse condemnation claims.

///

///

///

III.   **Tort Claims**

A.   **OTCA Notice**

Clackamas County seeks dismissal of Emmert's tort claims for failure to comply with the notice requirement of the OTCA. ORS 30.275(1) ("No action arising from any act or omission of a public body or an officer, employee or agent of a public body . . . shall be maintained unless notice of claim is given as required by this section"). As Clackamas County points out, Emmert alleges that he sent notice of his tort claims to Clackamas County Counsel Sid Sideras on or about October 8, 2011 (First Amended Complaint, ¶¶ 69, 75), before adding the intentional interference with economic relations claim in his First Amended Complaint. However, the OTCA notice provision does not require that "actual notice" specify the causes of action under which the plaintiff will challenge the allegedly tortious conduct.

> ORS 30.275(6) requires some form of communication by which the proper parties acquire actual knowledge of the time, place, and circumstances "giving rise to" the ultimate claim, not of the specific nature or theory of the claim. Although the notice also must warn of the plaintiff's intent to bring "*a* claim," the use of that term demonstrates that that warning need not specify precisely *what* claim.

*Flug v. Univ. of Or.*, 335 Or 540, 553-54, 73 P3d 917, 924 (2003).

Therefore, the OTCA did not require Emmert to specifically mention the intentional interference of economic relations claim by name in his notice. To the extent that Clackamas County otherwise challenges the substance of Emmert's October 8, 2011 notice, it is premature because the content of the notice is outside the First Amended Complaint and, as discussed above, cannot be considered on a motion to dismiss.

Clackamas County argues that the tort claims nevertheless fail because the notice was untimely. ORS 30.275(2) requires that a "[n]otice of claim shall be given . . . within 180 days after the alleged loss or injury" for all claims that are not wrongful death actions. Accordingly,

the OTCA notice did not provide actual notice of any actions occurring earlier than 180 days

before October 8, 2010, which would be April 11, 2010. However, timely notice depends not on

when Clackamas County acts, but on when Emmert discovered his injuries:

> [T]he notice of claim period does not commence to run, under the
> discovery rule, until a plaintiff knows or, in the exercise of reasonable care
> should know, that he or she has been injured and that there is a substantial
> possibility that the injury was caused by an identified person's tortious
> conduct.

*Johnson v. Multnomah Cnty. Dep't of Cmty. Justice*, 344 Or 111, 118, 178 P3d 210, 214 (2008)

(citation omitted).

Emmert does not allege when he learned that Clackamas County misled him about its

intentions to purchase several of his Properties or meddled in his development plans with an

improper purpose. Furthermore, Clackamas County does not suggest a date on which such

discovery occurred. Although the First Amended Complaint alleges various dates when

Clackamas County took adverse actions before April 11, 2010, those actions do not prove that

Emmert gained knowledge of his tortious injury before April 11, 2010. Instead, those dates

describe an ongoing pattern of allegedly tortious conduct. "The question whether and when a

plaintiff knew or should have known that his or her injury was caused by a particular defendant's

tortious conduct ordinarily is a question of fact for the jury." *Id*. Therefore, *when* Emmert

discovered this pattern was the result of actionable tortious conduct depends on facts which are

not alleged in the First Amended Complaint and which the court cannot consider on Clackamas

County's motion to dismiss.

### B.    Fraud

Clackamas County seeks dismissal of Emmert's fraud claim for failing to meet the

specificity requirements of FRCP 9 to plead the "who, what, when, where, and how" of the

alleged misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F3d 1097, 1106 (9th Cir 2003) (citation omitted). "A plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id* (alteration, internal quotation marks, and citation omitted). "While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Id* at 1103 (alteration, internal quotation marks, and citation omitted). The elements of actionable fraud under Oregon law are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Conzelmann v. Nw. Poultry & Dairy Prods. Co.*, 190 Or 332, 350, 225 P2d 757, 764 (1950).

The Fourth Claim alleges that Clackamas County falsely represented that it would purchase several of the Properties, namely the Hubbard Road Properties, 142nd Avenue East Properties, 13171 Property, 15576 Property, and one tract of the Morning Way Properties, from Emmert as soon as money became available, but instead used available funding to purchase land adjacent to these three Properties. First Amended Complaint, ¶ 70. [3] Clackamas County argues that Emmert cannot plead any facts to satisfy the eighth element of Emmert's right to rely on the representation because he knew from experience that a promise to buy land was unenforceable if not in writing. In a prior land dispute in state court, *Kazlauskas v. Emmert*, 248 Or App 555,

---

[3] Paragraph 70 of the First Amended Complaint specifically mentions only the 142nd Avenue East Properties, 15576 Property, and the Morning Way Properties. However, the Fourth Claim incorporates all earlier paragraphs in which Emmert alleges that Clackamas County made false promises that it would condemn the Hubbard Road Properties (First Amended Complaint, ¶ 10) and the 13171 Property. *Id*, ¶ 32.

566, 275 P3d 171, 177 (2012), Emmert argued that the statute of frauds, ORS 93.020(1),

defeated the Kazlauskas's fraud and breach of contract claims.

Despite Emmert's previous legal position, he could have reasonably relied on repeated

representations that Clackamas County would purchase his Properties.  Oregon law allows for

exceptions under which verbal promises to purchase land are valid either as enforceable

contracts or quasi-contracts based on part performance of the promise.  *Brice v. Hrdlicka*, 227 Or

App 460, 465-66, 206 P3d 265, 267-68 (2009).  In fact, Emmert acknowledged those exceptions

to the statute of frauds in *Kazlauskas* and contended the parties' verbal agreement did not meet

the standard.  Although it is apparent from pleadings that Emmert is an experienced businessman

and developer who is familiar with the laws and regulations related to Clackamas County (First

Amendment Complaint, ¶ 3), he does not claim proficiency in property law and could have

reasonably relied on Clackamas County's promises to buy his Properties.

Clackamas County also argues that Emmert fails to specifically plead a description of the

misrepresentations, when and where they were made, why they were false or misleading, and

when Emmert discovered the fraud.  When the alleged misrepresentation is discovered is not an

element of a fraud claim.  Thus, Emmert has no obligation to plead the date of his discovery until

Clackamas County alleges a statute of limitations defense.  *See Gomez v. Toledo*, 446 US 635,

640 (1980) (the burden of pleading an affirmative defense rests with the defendant).

The First Amended Complaint sufficiently alleges the substance of the misrepresentation

as to Clackamas County's intent to purchase and condemn several Properties.  This

representation was made either as an incentive for Emmert to purchase the Properties (First

Amended Complaint, ¶ 10 (Hubbard Road Properties) & ¶ 16 (142nd Avenue East Properties)),

or to dissuade Emmert from selling or developing the Properties.  *Id*, ¶ 24 (Morning Way

Properties), ¶ 32 (13171 Property), & ¶ 36 (15576 Property).  Furthermore, Emmert sufficiently alleges the representations were false because Clackamas County never intended to purchase the Properties when the misrepresentations were made and completed the projects without condemning any Properties.  *Id*, ¶ 71.

Clackamas County argues that an allegation that it did not fulfill its promise to buy the Properties is not sufficient to allege falsity.  "If the misrepresentation is a promise, then the plaintiff must show that the defendant either did not intend to perform when he made the promise or that he made the promise with reckless disregard as to whether he could perform . . . [and] a fraudulent intent not to keep a promise can be inferred *if sufficient circumstances are shown to support such an inference*."  *Sproul v. Fossi*, 274 Or 749, 752–53, 548 P2d 970, 972 (1976) (citations omitted).  While it is true that "[t]he mere failure to perform a promise is not sufficient to support an inference that a party did not intend to perform at the time the promise was made," Emmert need not produce evidence beyond Clackamas County's failure to perform on a motion to dismiss.  FRCP 9(b) requires that a plaintiff specifically allege, but not prove, that the speaker knew that its statement was false when made.  As such, the allegation that the promises "were false and known to be false when made by [Clackamas County's] employees" or "were made with reckless disregard for whether they were true or not" (First Amended Complaint, ¶ 71), is sufficient to satisfy the heightened pleading standard.

Clackamas County also asserts that the First Amended Complaint does not sufficiently allege when and where the misrepresentations were made with respect to five Properties (Hubbard Road Properties, 142nd Avenue East Properties, Morning Way Properties, 13171 Property, and 15576 Property).  However, with respect to each of these Properties, Emmert does allege who made the alleged misrepresentation and approximately when.  Before he purchased

Hubbard Road Properties on October 1, 2003, "conversations" with Clackamas County employees Gilmour and Cook assured him that Clackamas County would buy the property.  First Amended Complaint, ¶ 10.  Similarly, Emmert alleges that he purchased the 142nd Avenue East Properties in November of 2005 at the request of Gilmour.  *Id*, ¶ 16.  Cartmill and Gilmour made a verbal agreement with Emmert regarding the Morning Way Properties "[s]hortly after negotiations began in November 2008."  *Id*, ¶ 24.  Gilmour and Cook expressed an intent to buy the 15576 Property sometime after Emmert purchased the site in 2003.  *Id*, ¶ 36.  Cook and Gilmour allegedly stated Clackamas County's intent to purchase the 13171 Property on two separate occasions, first in November 2004 and again sometime in 2005 when Gilmour reported that ODOT was no longer interested in negotiating with Emmert as part of the willing-buyer program.  *Id*, ¶ 32.  Therefore, Emmert's fraud claim satisfies the FRCP 9(b) standard.

### C.     <u>Intentional Interference with Economic Relations</u>

Clackamas County seeks dismissal of the Fifth Claim alleging intentional interference with economic relations claim because it does not relate back to the original Complaint and, thus, is untimely.  FRCP 15(c) provides in relevant part, that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."  However, the original Complaint alleged that "[a]ll interested buyers have been discouraged by [Clackamas County] from purchasing the properties" (Complaint, ¶ 15); Clackamas County has "refused to allow a reasonable access route" to the Sunnyside Road Property (*id*, ¶ 28) and has given potential buyers false information regarding the site (*id*, ¶ 37); and other attempts to "deliberately delay[] and/or thwart" Emmert's development.  *Id*, ¶ 45.  His newly added Fifth Claim simply adds more details to those efforts by Clackamas County to

interfere with development of his Properties.  Therefore, this new claim does arise out of the same conduct alleged in the original Complaint and relates back.[4]

Clackamas County otherwise argues that the allegations do not raise a plausible claim for intentional interference with economic relations.  To state a claim for intentional interference with economic relations, a plaintiff must allege: (1) the existence of a professional or business relationship (which could include, *e.g.,* a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.  *McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841, 844 (1995).  The First Amended Complaint alleges that Clackamas County interfered with prospective buyers and tenants of Emmert's Properties (many of whom had entered earnest money agreements) through "improper means as alleged above" which caused Emmert to lose potential sales and leases in the amount of $41,780, 202.50.  First Amended Complaint, ¶¶ 75–76.  The Fifth Claim incorporates the prior allegations in paragraphs 10-47 which refer to a variety of acts by Clackamas County that appear to have frustrated potential sales by, among other actions, providing false information about the sites and telling buyers that the land would soon be condemned.  Those allegations as to improper means are sufficient to plead a claim for intentional interference with economic relations.

## IV.    **Damages**

Clackamas County argues that Emmert cannot recover non-economic damages under his tort claims, citing *Meyer v. 4-D Insulation Co.*, 60 Or App 70, 652 P2d 852 (1982).  *Meyer* discusses whether damages for mental distress are recoverable in an action alleging only damage

---

[4] Even if it does not relate back, it may be timely based on the Tolling Agreement which cannot be resolved at this juncture.

to property caused by negligence. *Id*, 60 Or App at 73–74, 652 P2d at 853–54. Absent physical injury, recovery of damages for mental distress is allowed where there is an independent basis of liability in certain cases, such as in certain intentional torts. *Id*. *Meyer* does not stand for the proposition that non-economic damages are never recoverable under an intentional tort claim as a matter of law. In fact, the Oregon Supreme Court has awarded non-economic damages based on allegations of fraud. *See, e.g.*, *Williams v. Philip Morris Inc.*, 344 Or 45, 49, 176 P3d 1255, 1257 (2008).

Alternatively, Clackamas County argues that Emmert's ability to recover damages for tortious conduct is limited by the OTCA, ORS 30.273. In 2009 the damages cap under the OTCA was increased to $100,000.00 per claimant and $500,000.00 for all claimants, and applies to all causes of action arising on or after July 1, 2009, and before July 1 of the subsequent year. ORS 30.273(2)–(3). Clackamas County asserts that any of Emmert's claims arising before 2009 are subject to the previous, lower cap. However, as admitted by Clackamas County, such claims cannot be determined from the pleadings because the dates are uncertain. The OTCA damages cap may indeed limit Emmert's damages, but is an affirmative defense available to Clackamas County. Emmert does not bear the burden of pleading an exemption from the OTCA cap.

In contrast, Emmert's prayer for punitive damages under state law are prohibited by the ORS 30.269(1) and under § 1983 by *City of Newport v. Fact Concerts, Inc.*, 453 US 247, 271 (1981). Accordingly, Emmert's prayer for punitive damages should be dismissed.

## V.    <u>Leave to Replead</u>

Defendant argues that Emmert has had ample opportunities to replead his claims and additional leave would be futile. A district court may dismiss claims without leave to amend when allowing an amendment would be futile or the amended complaint would be subject to

dismissal. *Saul v. United States*, 928 F2d 829, 843 (9th Cir 1991). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F3d 981, 1007 (9th Cir 2009) (internal quotation marks and citation omitted). After Judge Hubel dismissed the Complaint on June 24, 2014, the deadline to file an amended complaint was extended three times before Emmert filed the First Amended Complaint. Despite three telephone conferrals, the parties were unable to reach an agreement on a mutually acceptable amendment that satisfied the pleading standard. However, the First Amended Complaint should be dismissed for reasons other than those requiring dismissal of the original Complaint, suggesting that the pleadings are improving and the multiple extensions and conferrals were not fruitless. Moreover, Clackamas County has given no reason why these claims, other than Emmert's prayer for punitive damages, will ultimately fail as a matter of law. For these reasons, Emmert should be given the opportunity to file a Second Amended Complaint.

## **RECOMMENDATIONS**

For the reasons set forth above, Clackamas County's Motion to Dismiss (docket #34) should be GRANTED as to the First, Second and Third Claims without prejudice and with leave to replead, GRANTED as to the allegations for punitive damages with prejudice, and otherwise should be DENIED.

## **SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, May 29, 2015. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED May 12, 2015.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge