UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**TERRY W. EMMERT**,

        Plaintiff,

    v.

**CLACKAMAS COUNTY**,

        Defendant.

Case No. 3:13-cv-01317-ST

**FINDINGS AND
RECOMMENDATIONS**

STEWART, Magistrate Judge:

## <u>INTRODUCTION</u>

Plaintiff, Terry W. Emmert ("Emmert"), a landowner and developer, filed this action to

seek damages for the loss in value of 13 of his properties caused by three transportation projects

of defendant, Clackamas County.  In his initial Complaint, Emmert alleged claims under 42 USC

§ 1983 for violations of the Takings Clause of the Fifth Amendment and the Equal Protection

Clause of the Fourteenth Amendment of the United States Constitution; a claim for violation of

the Takings Clause in Article I, § 18, and Article XI, § 4, of the Oregon Constitution; as well as

tort claims for fraud and tortious interference with economic relations ("IIER").

On October 24, 2013, Clackamas County filed a Motion to Dismiss Emmert's initial Complaint (docket #9). Judge Hubel dismissed Emmert's § 1983 claims with leave to replead, but declined to address Emmert's claims for inverse condemnation under the Oregon Constitution and fraud. Opinion and Order (docket #26), p. 14. After Emmert filed a First Amended Complaint on August 29, 2014 (docket #33), Clackamas County filed a Motion to Dismiss for failure to state a claim without leave to replead (docket #34). Judge Hernandez granted that motion in part as to: (1) the § 1983 claims and Oregon inverse condemnation claim with leave to replead to include allegations regarding public use and official action, and further as to the Oregon inverse condemnation claim to include allegations regarding the deprivation of all economically viable use; (2) the tort claims with leave to replead to include allegations as to when Emmert discovered the allegedly tortious conduct; (3) Emmert's claim for punitive damages with prejudice, and otherwise denied the motion (docket #44).

Emmert then filed a Second Amended Complaint (docket #48). For the third time, Clackamas County has filed a Motion to Dismiss (docket #50) based on Emmert's failure to comply with Judge Hernandez's Order and urging that any further amendment be denied as futile. To address some of Clackamas County's arguments, Emmert has filed a Motion for Leave to File a Third Amended Complaint (docket #51). For the reasons set forth below, the Motion to Dismiss should be granted in part and denied in part with leave to replead, but the Proposed Third Amended Complaint requires further amendment to cure all deficiencies.

///

///

///

///

2 – FINDINGS AND RECOMMENDATIONS

## ALLEGATIONS

Since the Proposed Third Amended Complaint purports to address many of the issues raised by Clackamas County's Motion to Dismiss, the court will primarily refer its allegations to determine if further amendment would be futile.

Emmert owns or has owned 13 properties located in Clackamas County between I-205 to the west and Rock Creek Junction to the east. Proposed Third Amended Complaint, ¶ 4. These 13 properties are referred to as the: (1) Hubbard Road Properties; (2) 142nd Avenue East Properties; (3) 142nd Avenue West Properties; (4) Morning Way Properties; (5) Con Battin Road Property; (6) Sunnyside Road Property; (7) 13171 Property; (8) 15576 Property; (9) Clackamas River Estates; (10) Clear Creek Estates Property; (11) Emmert Heights; (12) Emmert International Business Park; and (13) SE 114th Properties. *Id.*

Emmert alleges that three transportation projects by Clackamas County have interfered with his efforts to sell and develop these properties, resulting in a loss of value. The first project, the Sunrise Corridor Project, which Clackamas County and other government entities have studied and planned to develop since the mid-1980s, is an improved route of travel from I-205 to Rock Creek Junction, a distance of approximately five miles. *Id*, ¶ 5. In December 2010, the Final Environmental Impact Statement ("FEIS") recommended the Sunrise Corridor Project as the preferred option. *Id*, ¶ 6. The second project, the East Side Light Rail Project, which Clackamas County and other government entities have planned since 2000, is constructed and completed. *Id*, ¶ 7. The third project, the Sunnyside Road Widening Project, which Clackamas County and other government entities planned and constructed between 2000 and 2009, is completed and expands SE Sunnyside Road from its junction with I-205 eastward to approximately SE 172nd Avenue. *Id*, ¶ 8.

As clarified by Emmert at the hearing, the First Claim alleges inverse condemnation in violation of the Takings Clause of the Fifth Amendment of the United States Constitution with respect to seven properties affected by the Sunrise Corridor Project.[1]  Emmert purchased two of these properties,[2] the Hubbard Road Property in 2003 (*id*, ¶¶ 10-15) and the 142nd Avenue East Properties in 2005 (*id*, ¶¶ 16-17), at the request of Clackamas County employees based on the promise to buy them as soon as money became available.  *Id*, ¶¶ 10, 16.  However, Clackamas County never followed through on that promise, despite several requests by Emmert.  *Id*, ¶¶ 11–12, 17.  Although Emmert was able to finally sell the Hubbard Road Property in November 2009 after annexing it to Happy Valley (*id*, ¶ 14), he has not been able to sell the 142nd Avenue East Properties.  *Id*, ¶ 17.

At the hearing, Emmert confirmed that five other properties are included in the First Claim:  Morning Way Properties (*id*, ¶¶ 22-25), 13171 Property (*id*, ¶¶ 32-34), 15576 Property (*id*, ¶¶ 35-37), Emmert International Business Park (*id*, ¶¶ 43-44), and SE 114th Properties (*id*, ¶¶ 45-47).  As to those properties, Emmert alleges that Clackamas County interfered with his potential sales by denying a zone change, discouraging buyers, or refusing permits.  *Id*, ¶¶ 19, 25, 32, 43-44, 47.

The Second Claim alleges inverse condemnation in violation of the Oregon Constitution by depriving Emmert "of any and all economically viable use of the Properties."  *Id*, ¶ 56.

---

[1] The First Claim is not a model of clarity on this point.  Although paragraph 49 refers to Clackamas County's "strategy to keep property values down and inhibit sale of property within the Sunrise Corridor," which involves seven properties, paragraph 51 refers to its conspiracy "to interfere with the sale, use and/or development of the Properties set forth in paragraphs 10-47," which includes all 13 properties.

[2] Paragraph 60 alleges that Emmert also acquired the 15576 Property and one lot in Morning Way Properties "specifically at defendant's request."  However, that allegation is not supported by any factual allegation.  Clackamas County expressed its intent to acquire the 15576 Property after Emmert's purchase (Proposed Third Amended Complaint, ¶ 36) and expressed an interest in obtaining the Morning Way Properties after Emmert received an offer to purchase in 2008, which would be sometime after his acquisition (*id*, ¶¶ 22-23).  For purposes of this motion, the court will rely on the factual allegations.

Emmert clarified at the hearing that this claim includes all 13 properties,[3] including the seven properties related to the Sunrise Corridor Project, as well as the Con Battin Property taken for the East Side Light Rail Project (*id*, ¶¶ 26-29) and the Sunnyside Road Property taken for the Sunnyside Road Widening Project (*id*, ¶¶ 30-31).  However, as to four of the 13 properties, Emmert does not allege that they were taken for a public use:  (1) the 142nd Avenue West Properties (*id*, ¶¶ 18-21) ; (2) Clackamas River Estates (*id*, ¶ 38); (3) Clear Creek Estates (*id*, ¶ 39); and (4) Emmert Heights (*id*, ¶¶ 40-42).

In the alternative to inverse condemnation, the Third Claim alleges fraud with respect to three properties purchased by Emmert based on a misrepresentation by Clackamas County that it would later buy them when funds became available:  the 142nd Avenue East Properties, 15576 Property, and one tract of Morning Way Properties.  *Id*, ¶¶ 58-62.

Also in the alternative to inverse condemnation, the Fourth Claim alleges that Clackamas County committed the tort of IIER "through improper means" with respect to all 13 properties. *Id*, ¶¶ 63-65.

## FINDINGS

## I.    Equal Protection Claim

This court previously concluded that Emmert failed to adequately allege a class of one equal protection claim.  Emmert re-alleged that same claim as the Third Claim in the Second Amended Complaint, adding three sentences which Clackamas County contends are insufficient to comply with the court's ruling.  However, the Proposed Third Amended Complaint deletes the equal protection claim.  Given the deletion of the equal protection claim, at least for now,

---

[3] The allegations are inconsistent with this clarification because Emmert alleges the same amount of damages, $41,780,202.50, for both the First Claim that pertains to only seven properties and the Second Claim that pertains to all 13 properties.  Proposed Third Amended Complaint, ¶¶ 53, 56.

Clackamas County's motion to dismiss that claim as pled in the Second Amended Complaint should be granted.

Emmert asserts federal question jurisdiction under 28 USC § 1331 based on the § 1983 claims alleging inverse condemnation under the federal Takings Clause and denial of equal protection. Now that Emmert is no longer alleging the equal protection claim, Clackamas County raises another argument for dismissal based on the lack of subject matter jurisdiction. The Proposed Third Amended Complaint alleges only one claim arising under federal law, namely the First Claim for violation of the federal Takings Clause. Clackamas County asserts that the court lacks jurisdiction over that claim because Emmert failed to first seek "compensation through the procedures provided by the State for obtaining such compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 US 172, 195 (1985). As a result, it contends that the First Claim should be dismissed as not ripe for adjudication. Absent the First Claim, which is the only remaining basis for subject matter jurisdiction, Clackamas County asserts that the court has no authority to adjudicate supplemental state law claims under 28 USC § 1367.

That argument must be rejected for two reasons. First, the state litigation ripeness doctrine articulated in *Williamson* has been weakened considerably since former Chief Justice Rehnquist and three other justices urged its reconsideration in *San Remo Hotel, L.P. v. City & Cnty. of S.F.*, 545 US 323, 348-52 (2005) (Rehnquist, J., concurring). Lower courts, including the Ninth Circuit, have undercut the state litigation requirement by holding that *Williamson* is a "prudential" ripeness rule which may not be applied when doing so would cause unfairness or an inefficient expenditure of court and party resources. *Guggenheim v. City of Goleta*, 638 F3d 1111, 1116-18 (9th Cir 2010) (*en banc*); J. David Breemer, *The Rebirth of Federal Takings*

*Review? The Courts' "Prudential" Answer to Williamson County's Flawed State Litigation*

*Ripeness Requirement*, 30 Touro L Rev 319 (2014); *also see Evans v. Wash. Cnty.*, 1999 WL

1271025, No. CV-99-1356-ST (D Or Dec. 10, 1999) (questioning applicability of *Williamson* to

an inverse condemnation claim under Oregon Constitution).  Therefore, the ripeness issue

regarding the First Claim cannot be decided at this early juncture on a motion to dismiss.

    Second, even if the First Claim should be dismissed as not yet ripe, the absence of the

equal protection claim in the Proposed Third Amended Complaint does not eliminate

supplemental jurisdiction over the state law claims.  If the sole federal claim is dismissed for lack

of subject matter jurisdiction, then the court never acquired jurisdiction and has "no discretion to

retain supplemental jurisdiction over [the] state law claims."  *Scott v. Pasadena Unified Sch.*

*Dist.*, 306 F3d 646, 664 (9th Cir 2002) (citations omitted).  However, if a plaintiff abandons a

federal claim after its dismissal on the merits, as Emmert has done here with respect to the equal

protection claim, then the court has discretion to retain supplemental jurisdiction over any related

state law claims.  *Herman Family Revocable Trust v. Teddy Bear*, 254 F3d 802, 806 (9th Cir

2001) ("If the district court dismisses all federal claims on the merits, it has discretion under

§ 1367(c) to adjudicate the remaining claims; if the court dismisses for lack of subject matter

jurisdiction, it has no discretion and must dismiss all claims."); *see also Prince v. Rescorp*

*Realty*, 940 F2d 1104, 1105 n2 (9th Cir 1991) (after removal, jurisdiction continued even though

the court dismissed the federal claim for failure to state a claim with leave to amend and plaintiff

filed an amended complaint dropping the federal claim and alleging only a state law claim).

    Therefore, dismissal is not warranted for lack of subject matter jurisdiction based on

Emmert's election in the Proposed Third Amended Complaint to delete the equal protection

claim.

## II.    Failure to Correct Defects in Inverse Condemnation Claims

### A.    "Public Use"

To comply with Judge Hernandez's Order to include a "public use" intent allegation in the inverse condemnation claims, Emmert has added the phrase "public use" to paragraphs 5, 7, and 8 in the Proposed Third Amended Complaint when describing each of the three transportation projects. However, Clackamas County contends that these new allegations are factually insufficient to state a viable inverse condemnation claim. Although that contention should be rejected, the inverse condemnation claims require clarification as to which properties are included.

Paragraphs 7 and 8 in the Proposed Third Amended Complaint allege that "one or more of the Properties has been impacted and effectively taken by [Clackamas County] for the public use of developing and constructing" the East Side Light Rail and Sunnyside Road Widening Projects. The properties allegedly affected by those two projects are the Con Battin Property and the Sunnyside Road Property. Clackamas County argues that by failing to include these two projects in the inverse condemnation claims in any of the prior complaints, Emmert improperly seeks to allege new theories of recovery. That argument apparently is based on interpreting both of the inverse condemnation claims as limited to only the seven properties affected by the Sunrise Corridor Project. That interpretation is reasonable since the Second Claim incorporates all of the allegations in the First Claim which, as clarified at the hearing, includes only the properties within the Sunrise Corridor Project, and both claims allege the same amount of damages ($41,780,202.50).

Contrary to that interpretation, Emmert clarified at the hearing that the Second Claim includes all 13 properties. However, as presently alleged, the Second Claim is unclear as to

whether it includes all properties or only those within the Sunrise Corridor Project.  And if it includes all 13 properties, then it improperly includes those properties for which no "public use" is alleged (142nd Avenue West Properties, Clackamas River Estates, Clear Creek Estate, and Emmert Heights).  Nowhere does the Proposed Third Amended Complaint allege that Clackamas County's interference with Emmert's plans to sell or develop these four properties was done with the motivation of furthering a public works project.  Thus, the Second Claim in the Proposed Third Amended Complaint is either under- or over-inclusive and must be amended yet again to specifically identify which properties were taken for a "public use."

Emmert also has amended paragraph 5 to allege that Clackamas County "engaged in a scheme to acquire certain Properties for public use in constructing the Sunrise Corridor Project" and "took official action in using [Emmert] to acquire certain Properties on behalf of [Clackamas County] that [it] told [Emmert] it needed to acquire for the public use of constructing the Sunrise Corridor Project."  Clackamas County interprets this allegation as nothing more than accusing it of using Emmert as a straw buyer for certain properties that does not rise to a constitutional taking.

First, it must be noted that only two of the seven properties included in the Sunrise Corridor Project were allegedly acquired by Emmert at the request of Clackamas County, namely the Hubbard Road Properties[4] and the 142nd Avenue East Properties.[5]  Therefore, this straw buyer argument by Clackamas County pertains only to those two properties.

Second, Clackamas County is correct that using Emmert as a straw buyer may have been a sharp business practice, but was not unconstitutional.  However, that is not the critical issue

---

[4] Although Emmert sold the Hubbard Road Properties in November 2009 after annexing them to Happy Valley, he could have suffered a loss in value prior to that sale due to Clackamas County's alleged delay and interference.

[5] See footnote 2.

with respect to Emmert's inverse condemnation claims premised on the condemnation-cloud/blight theory.  Emmert alleges that he purchased the Hubbard Road Properties and 142nd Avenue East Properties in reliance upon a request by a Clackamas County employees with assurance that Clackamas County would buy them for the Sunrise Corridor Project as soon as the funds became available. [6]  *Id*, ¶¶ 10, 16.  However, Clackamas County reneged on its promise to purchase the properties from Emmert.  *Id*, ¶¶ 12, 17.  When Emmert came to that realization, he attempted to sell the properties to interested buyers who were discouraged by Clackamas County employees "trying to keep the property value low for condemnation purposes" (*id*, ¶ 14) or explaining that "a freeway was going to be built through the middle of the Properties."  *Id*, ¶ 17.

If Clackamas County broke its promise to buy the Hubbard Road Properties and 142nd Avenue East Properties from Emmert when funds became available, then it may be liable for fraud, but not inverse condemnation.  As discussed in the prior Findings and Recommendation (docket #39), Clackamas County cannot be liable for inverse condemnation if it induced Emmert to buy these properties with no intention of later purchasing them when funds became available for a "public use."[7]  However, the inverse condemnation claim is not premised simply on Clackamas County reneging on its promise to purchase the Hubbard Road Properties and 142nd Avenue East Properties from Emmert, but on its later interference with his ability to sell the properties.  *Id*, ¶ 17.  In other words, for the inverse condemnation claim, it does not matter how

---

[6]  Emmert does not explain why he agreed to act as a straw buyer and whether he expected to make or lose money on the transaction when Clackamas County kept its alleged promise.  Also, Emmert alleges with respect to the 13171 Property that Clackamas County employees misrepresented that the money would come from ODOT, knowing that Clackamas County had funds available to purchase the 13171 Property, did not need ODOT funds, and had agreed with ODOT to "purchase properties along Highway 212 using its own funds as its contribution to the Sunrise Corridor Project."  Proposed Third Amended Complaint, ¶ 33.  Emmert does not allege whether this same alleged misrepresentation was made with respect to the Hubbard Road Properties and 142nd Avenue East Properties.

[7]  Of course, if Clackamas County did intend to purchase the properties from Emmert when making its promise, but later changed its mind, then Clackamas County may have breached its promise, but cannot be liable for making a misrepresentation sufficient to support a fraud claim.

Emmert acquired the properties.  As long as he owned them, but was unable to develop or sell them due to the proposed Sunrise Corridor Project, he may pursue an inverse condemnation claim for their resulting loss of value.

The question as this juncture is whether Emmert alleges that the Hubbard Road Properties and 142nd Avenue East Properties (and other properties he owned) suffered a loss in value due to Clackamas County's actions taken with the intent to take them for a "public use." The Proposed Third Amended Complaint sufficiently alleges that intent in compliance with Judge Hernandez's Order.

## B.    "Official Action"

Judge Hernandez also ruled that the First Amended Complaint did not sufficiently allege the "official action" necessary to support a condemnation cloud/blight theory.  Although paragraphs 5-9 described Clackamas County's conduct, they did not sufficiently allege a communication or other conduct designating the Properties for acquisition.  Official action is necessary "to distinguish a government entity's planning activities from its acquisition strategies."  *Picard v. Bay Area Reg'l Transit Dist.*, 823 F Supp 1519, 1525 (ND Cal 1993).

> There must have been either some formal announcement by the condemning agency of its intention to condemn, or some other official act or expression of intent to acquire the property in question . . . .  [W]here there has been no official action amounting to an announcement of intent to condemn, there could be no liability based on unreasonable delay following such an announcement. . . .  The pivotal issue in every case is whether the public agency's activities have gone beyond the planning stage to reach the "acquiring stage."

*Id*, quoting *Terminals Equip. Co, Inc. v. City & Cnty. of San Francisco*, 221 Cal App3d 234, 245-46, 270 Cal Rptr 329, 335–36 (1990).

As in the prior complaints, the Proposed Third Amended Complaint alleges that the official, employees, and agents of Clackamas County "were acting within the course and scope

of their employment" and that Emmert is a successful businessman who has done business in Clackamas County since approximately 1965 and is very familiar with eminent domain procedures in Clackamas County and with many of its employees and agents. Proposed Third Amended Complaint, ¶¶ 2-3. It alleges that Clackamas County engaged in a scheme to acquire the properties "through the Development, Disposition and Acquisition department." *Id*, ¶ 5. It adds some allegations that some employees, who presumably were in positions to act with apparent authority, definitively stated that Clackamas County intended to condemn specific properties for use in the development and constructions of the Sunrise Corridor Project. *Id*, ¶¶ 10 (Hubbard Road Properties), 16 (142nd Avenue East Properties), 24 (Morning Way Properties), 32 (13171 Property), 36-37 (15576 Property), & 44 (Emmert International Business Park). According to Emmert, these allegations leave no room to infer that these statements were mere expressions of opinion by low-level functionaries.

Even if these employees were acting within the scope of their employment, Clackamas County contends that the allegations are nonetheless insufficient to show that they were acting pursuant to any clear intent by Clackamas County to designate Emmert's properties for acquisition for the Sunrise Corridor Project. Emmert does not allege any resolution, policy, or other formal announcement by Clackamas County communicating that intent. Instead, he alleges that since the mid-1980s, Clackamas County, in collaboration with ODOT, "has contemplated, studied and planned" the improved route of travel from I-205 on the west to Rock Creek Junction on the east. *Id*, ¶ 5. Emmert does not even allege that the specific route has been determined yet, but instead alleges that the FEIS was released in December 2010 "recommending a preferred option for the Sunrise Corridor Project." *Id*, ¶ 6. He complains that the "preferred option" was the result of a "concerted and dishonest effort to minimize the amount of property it need to

acquire from" him.  *Id.*  In other words, Emmert alleges that he was led to believe by various employees that his properties would be condemned for the Sunrise Corridor Project, but learned in December 2010 that some of his properties would be outside the "preferred option." Moreover, none of his properties have yet been condemned.

As Clackamas County points out, the condemnation cloud/blight theory generally arises when a public entity designates a plaintiff's property for condemnation, but then delays for years while the property deteriorates in value.  *E.g*, *Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency*, 561 F2d 1327, 1331 (9th Cir 1977); *Foster v. City of Detroit*, 254 F Supp 655, 665-66 (ED Mich 1966), *aff'd*, 405 F3d 138 (6th Cir 1968).  However, none of these cases require public entity to express its intent to acquire property by condemnation through a written notice to the property owner or adoption of a resolution.  Instead, as long as the public entity has moved beyond the planning stage to the acquisition stage, this court perceives no reason why it cannot clearly indicate its intent to acquire property through some other form of official expression.  That expression may be manifested through words and conduct of employees with apparent authority, including the type of allegations made by Emmert.  Asking Emmert to buy and hold properties and actively discouraging potential buyers based on the inevitability of condemnation may be characterized as more than simply planning, but as actions rising to the level of acquisition.  Considering the allegations as a whole, Emmert alleges that Clackamas County, through its employees, intended to acquire seven of his properties for the Sunrise Corridor Project by taking actions consistent with that intent.  As a result of the delay in completing the Sunrise Corridor Project, Emmert has been unable to develop or sell those properties which have suffered a loss in value as a result.  Whether he can prove those allegations must be left for a fact-finder to decide.

It must be noted that, unlike the Sunrise Corridor Project, the other two projects have been completed.  The Proposed Third Amended Complaint does not allege that an unreasonable delay in completing either of those projects caused a reduction in the value of the affected properties.  Instead, it alleges that Emmert "lost the ability to develop and/or sell" the affected properties due to loss of access caused by the projects.  The construction of the Eastside Light Rail Project caused a re-design of the cul-de-sac, resulting in a loss of deeded legal frontage access to the Con Battin Road Property and the loss of a sale in January 2010.  Proposed Third Amended Complaint, ¶¶ 27-29.  In addition, the construction of the Sunnyside Road Widening Project blocked the only street entrance to the Sunnyside Road Property, causing the loss of potential sales and System Development Charges, which Clackamas County has refused to refund, despite a promise to do so.  *Id*, ¶¶ 30-31.  These properties do not fit within the condemnation cloud/blight theory, but instead appear to be as-applied regulatory takings claims without just compensation.

Similarly, with respect to the 142nd Avenue West Properties (*id*, ¶¶ 18-21), Emmert alleges that Clackamas County "engineered a very lengthy consideration process" of his application for a zone change from I-2 industrial to C-2 commercial and finally approved the application with conditions that "made development of the land impossible."  *Id*, ¶ 18.  The 142nd Avenue West Properties does not appear to relate to any of the three transportation projects, but may involve an independent regulatory takings claim.

If Emmert intends to allege as-applied regulatory takings claims, then he may be charged with knowledge of his constitutional takings claims at the time he lost the ability to develop those three properties and may not have timely filed those claims.  Clackamas County has not sought dismissal for that reason, but does suggest in its Reply that these claims are not ripe for

review, citing *Williamson Cnty.*, 473 US at 186, 195.  Whether the constitutional claims for these three properties can survive challenges based on the statute of limitations and ripeness are significant issues that should not be resolved based on the pending motion.

## III.    Tort Claims

### A.    Failure to State IIER Claim

The IIER claim in the Proposed Third Amended Complaint alleges a number of acts of interference by Clackamas County through improper means with respect to each of the 13 properties.  Although not addressed by the parties, the court notes that it alleges no act rising to the level of intentional inference through an improper means with respect to Emmet Heights.  It alleges only that Clackamas County "caused numerous unnecessary delays to the development" of that property.  *Id*, ¶ 41.  In addition, nothing improper is alleged concerning the redesign of the cul-de-sac of the Con Battin Property or the blocking of access to the Sunnyside Road Property. *Id*, ¶¶ 26-31.  Instead, Emmett complains that Clackamas County has not properly reimbursed him for these takings — an action that does not constitute an improper means for an IIER claim. Thus, the Proposed Third Amended Complaint fails to state an IIER claim with respect to those three properties.

### B.    Statute of Limitations

Clackamas County seeks dismissal of the tort claims for failure to sufficiently set forth the date on which Emmett discovered the alleged fraud and IIER as ordered by Judge Hernandez.

The tort claims are subject to the two-year statute of limitations which commences "only from the discovery of the fraud or deceit."  ORS 12.110(1); *Cramer v. Stonebridge Inn, Inc.*, 77 Or App 407, 410, 713 P2d 645, 646 (1986) (applying ORS 12.110(1) to IIER claim).  As a result,

the two-year statute of limitations does not begin to run until the plaintiff knows or, in the exercise of reasonable care, should have known of the alleged fraud or deceit. *Burgdorf v. Weston*, 259 Or App 755, 768-69, 316 P2d 303, 312 (2013) (citation omitted). In addition, Emmert must timely file a tort claim notice under the Oregon Tort Claims Act ("OTCA"), ORS 30.275(2)(b) ("Notice of claim shall be given . . . within 180 days after the alleged loss or injury"). The OTCA also is subject to the "discovery rule." *Johnson v. Multnomah Cnty.*, 344 Or 111, 118, 178 P3d 210, 213 (2008).

With respect to the tort claims, Judge Hernandez ordered Emmert to set forth the dates on which he discovered the acts of fraud and acts constituting IIER. In response, Emmert added allegations regarding the date of discovery to both claims in paragraphs 68 and 73 of the Second Amended Complaint. Because Clackamas County deemed those allegations to be insufficiently vague and conclusory, Emmert revised (and renumbered) the allegations in the Proposed Third Amended Complaint as follows:

> Kenneth C. Bauman came to the conclusion that there was a civil conspiracy to engage in the fraudulent conduct involving the above named individuals some time after May 2010. Plaintiff first discovered the fraudulent conduct thereafter and gave Mr. Bauman instructions to provide notice of this claim to Defendant. Mr. Bauman gave actual notice of this claim to Clackamas County Counsel Scot Sideras on or about October 8, 2010.

> * * *

> Kenneth C. Bauman came to the conclusion that Defendant improperly interfered with Plaintiff's economic relationships using improper means some time after May 2010. Plaintiff first discovered the tortious conduct thereafter and gave Mr. Bauman instructions to provide notice of this claim to Defendant. Mr. Bauman gave actual notice of the claim to Clackamas County Counsel Scot Sideras on or about October 8, 2010.

Proposed Third Amended Complaint, ¶¶ 59 & 64.

Emmert filed this action on July 31, 2013.  Clackamas County does not argue that the alleged date of discovery "some time after May 2010" falls outside the two-year statute of limitations, although it does.[8]  Instead, it argues that these new allegations fail to comply with FRCP 9 due to the lack of details as to time, place, and content of the alleged misrepresentations and interference that led Mr. Bauman to his "conclusion" in May 2010 of fraudulent conduct and improper interference with Emmert's economic relationships using improper means.

The fraud claim alleges that Emmert acquired three properties (142nd Avenue East Properties, 15576 Property, and one tract of the Morning Way Properties) based on a promise by Clackamas County to later buy them when funds became available.  *Id*, ¶ 60.  As noted above, that allegation is inconsistent with prior factual allegations that Emmert acquired the 15576 Property and Morning Way Properties before Clackamas County made any promise to acquire them.  In any event, Emmert does allege that in reliance on Clackamas County's promise to acquire them, he rejected an offer to purchase the Morning Way Properties and has not pursued planned development of the 15576 Property to his detriment, which is sufficient to state a fraud claim as to those properties.  *Id*, ¶¶ 24, 37.  Emmert alleges that the fraudulent nature of the promise was revealed "[w]hen [once] money became available instead of using it [to] purchase the Properties, [Clackamas County] used it to purchase other adjacent properties."  *Id*.  Emmert does not allege when Clackamas County used available funds to purchase other properties, but instead alleges that he discovered the fraudulent conduct "some time after May 2010."  *Id*, ¶ 59.

Clackamas County argues that this conclusory allegation is contradicted by other allegations revealing that Emmert knew, or reasonably should have known, that Clackamas County had deceived him well before May 2010:

---

[8]  This is likely due to the Tolling Agreement attached by Clackamas County to its prior motion.

1. 142nd Avenue East Properties:  Sometime after November 2005, at least two interested buyers, who had either signed earnest money agreements or expressed interest in purchasing the property, were discouraged from purchasing the property after Clackamas County verbally advised that a freeway was going to be built through the middle of the properties.  *Id*, ¶¶ 16-17;

2. 15576 Property:  Subsequent to 2003, RMP Property Holdings was dissuaded from purchasing the property because of oral representations by Clackamas County that it could not be purchased because a highway was going through it.  *Id*, ¶¶ 35 & 37;

3. Morning Way Properties:  In the summer of 2009, Clackamas County, citing the inevitability of condemnation due to a freeway, discouraged Baseline Nevada LLC from purchasing the property.  *Id*, ¶ 25.

The IIER claim similarly alleges many acts of interference by Clackamas County which occurred well before the alleged date of discovery in May 2010.  It does not specifically allege what constitutes the improper means, but only refers to "using improper means as alleged above."  *Id*, ¶ 64.  Presumably, that includes a failure by Clackamas County to purchase properties from him as promised as alleged in the fraud claim.  In addition, Emmert alleges that he held five other properties pending their condemnation for the Sunrise Corridor Project.  *Id*, ¶¶ 18-25, 32-37, 43-47.  What prevented him from selling or developing those properties was their planned condemnation for the Sunrise Corridor Project that never came to fruition:

> Emmert learned on or about June 2009 that Defendant had devised a strategy to keep property values down and inhibit sales of property within the Sunrise Corridor's proposed right-of-way.  The strategy included, but was not limited to, enacting regulations and undertaking activities that would deprive [Emmert] from making any economically viable use of the Properties, specifically by minimizing and/or prohibiting development and/or discouraging potential buyers from acquiring Properties in the planned right-of-ways.  The strategy also included, but was not limited to, advising potential purchasers of the Properties not to purchase the

Properties because they were subject to Defendant's right of eminent domain and ultimately condemnation by Defendant in the near future.  Defendant well knew that, in fact, eminent domain or condemnation was not likely to occur for many years and possibly never.

Emmert also learned on or about June 2009 that Defendant's employees . . . had engaged in and continue to engage in a conspiracy to interfere with the use, development, and/or sales by Emmert of any property he owned and owns within Clackamas County.

*Id*, ¶¶ 49-50.

In addition to the properties affected by the Sunrise Corridor Project, the Proposed Third Amended Complaint also alleges intentional interference by Clackamas County providing false information to potential buyers for the Clackamas River Estates in 2005 (*id*, ¶ 38) and Clear Creek Estates Properties in 2005 and 2008.  *Id*, ¶¶ 38-39.

Clackamas County argues that the acts of fraud and interference reveal that Emmert either knew, or in the exercise of reasonable care, should have known more than two years before filing the initial Complaint, as well as 180 days before October 8, 2010 (the date of his tort claim notice), that he had been injured by the tortious conduct of Clackamas County.

Based on the allegations in paragraphs 49 and 50, Clackamas County contends that at least by June 2009, Emmert acquired detailed knowledge of the allegedly tortious actions by Clackamas County, namely a "strategy [of] discouraging potential buyers from acquiring Properties in the planned right-of-ways" as part of a "conspiracy to interfere with the use, development, and/or sales by Emmert" of his properties.  *Id.*  Yet Emmert also alleges that "some time after May 2010" Mr. Bauman discovered and advised him of the acts of tortious interference with economic relations.  *Id*, ¶¶ 59, 64.  This May 2010 date is inconsistent with the allegations in paragraphs 49 and 50 that Emmert learned about the conspiracy in June 2009.

Emmert clarified at the hearing that Clackamas County was still leading him to believe that it would buy and/or condemn his properties until May 2010 when a triggering event occurred.  However, that clarification is difficult to reconcile with the factual allegations which, with one exception, all deal with conduct predating June 2009.  The only allegations of conduct after June 2009 and before May 2010 relating to the Sunrise Corridor Project are:

1.  In November 2009, Emmert sold the Hubbard Road Properties after annexation by Happy Valley (*id*, ¶ 14);

2.  In the summer of 2009, Clackamas County discouraged Baseline Nevada, LLC, from purchasing the Morning Way Properties (*id*, ¶ 25); and

3.  In 2009 (presumably the summer of 2009), Clackamas County discouraged Baseline Nevada, LLC, from purchasing the SE 114th Properties (*id*, ¶ 47).

In addition, another of the alleged acts of interference purportedly occurred at least three months *after* the OTCA notice:

> In 2011, Colliers International expressed an interest in purchasing the Building 4 tilt-up on the 11791 Property after Rey Reece Motors vacated.  Colliers International was told by Defendant's employee Larry Conrad untruthfully that the majority of the land to the north of the 11791 property would be acquired by the County for the Sunrise Corridor Project, and that Colliers International could not purchase the property because a highway would be going directly through it.

*Id*, ¶ 44.

As explained at the hearing, the triggering event was a meeting attended by Mr. Bauman in May 2010 at which he heard ODOT state that it would not provide funds to Clackamas County to purchase or condemn Emmert's properties in connection with the Sunrise Corridor

Project.[9]  Emmert explained that he did not include this additional factual allegation because he only needs to allege when he discovered the conspiracy, not how.  Even so, other inconsistent allegations cast doubt on the May 2010 discovery date.  Therefore, the Proposed Third Amended Complaint does not affirmatively plead the date of discovery either to satisfy FRCP 9 or to sufficiently allege compliance with the OTCA.

## IV.    Leave to Replead

Clackamas County asserts that Emmert has had ample opportunity to replead his claims and that no further leave to amend should be granted.  Despite three prior attempts, the Proposed Third Amended Complaint still does not cure all of the defects in the Second Amended Complaint.  It fails to specify which properties are included in each of the two inverse condemnation claims and the corresponding damages sought.  The inverse condemnation claims improperly include four properties for which no "public use" is alleged (142nd Avenue West Properties, Clackamas River Estates, Clear Creek Estates, and Emmert Heights).  In addition, the Con Battin and Sunnyside Road Properties are distinct from — and should not be lumped together with — the properties involved in the Sunrise Corridor Project, but should be alleged as separate takings claims.  Also, the fraud claim fails to clearly allege that only three properties are included, and the IIER claim should not include Emmert Heights, the Con Battin Property, and the Sunnyside Road Property for which no intentional interference is alleged.  Moreover, Emmert pleads inconsistent allegations as to when he discovered the tortious conduct.

"[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F3d 981, 1007 (9th

---

[9]  This refusal by ODOT is inconsistent with the allegation that Clackamas County had $30 million to purchase the 13171 Property for the Sunrise Corridor Project and did not need ODOT funds, but misrepresented to Emmert that it would purchase that property when it received ODOT funds.  Proposed Third Amended Complaint, ¶ 33.

Cir 2009) (internal quotation marks and citation omitted).  However, this court perceives no undue prejudice to Clackamas County by allowing Emmert to make these relatively minor amendments in order to clarify his claims.  Therefore, it should exercise its discretion to permit these amendments.

Of greater concern is the argument by Clackamas County that Emmert should not be allowed to pursue inverse condemnation claims without alleging more "official action" than the statements and promises made by its employees.  A district court may dismiss claims without leave to amend when allowing an amendment would be futile.  *Saul v. United States*, 928 F2d 829, 843 (9th Cir 1991).  However, the proposed amendments are not futile.  As Emmert acknowledges, he is pursuing a somewhat novel theory, but not one that is definitively foreclosed by any precedent.

For these reasons, Emmert should be given one, final opportunity to file an amended complaint, although not in the form currently proposed.

## RECOMMENDATIONS

For the reasons set forth above, Clackamas County's Motion to Dismiss (docket #50) should be GRANTED in part as to:

> 1. 142nd Avenue West Properties, Clackamas River Estates, Clear Creek Estates, and Emmert Heights in the Second Claim;
>
> 2. Emmert Heights, the Con Battin Property, and the Sunnyside Road Property in the Fourth Claim;
>
> 3. The Third and Fourth Claims for failing to affirmatively plead the date of discovery of the tortious conduct;

and otherwise should be DENIED.

In addition, Emmert's Motion for Leave to File a Third Amended Complaint (docket #51) should be GRANTED, but the amended complaint must cure the deficiencies described above.

## **SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, January 15, 2016. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED December 29, 2015.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge