## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**TERRY W. EMMERT**,

        Plaintiff,

    v.

**CLACKAMAS COUNTY**,

        Defendant.

Case No. 3:13-cv-01317-YY

**FINDINGS AND RECOMMENDATIONS**

YOU, Magistrate Judge:

### INTRODUCTION

Plaintiff, Terry W. Emmert ("Emmert"), a landowner and developer, filed this action seeking damages for the loss in value of his properties caused by three transportation projects of defendant, Clackamas County. For the reasons set forth below, the Motion to Dismiss should be granted in part and denied in part.

### BACKGROUND

In his initial Complaint, Emmert alleged claims under 42 USC § 1983 for violations of the Takings Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; a claim for violation of the Takings Clause in Article I, § 18, and Article XI, § 4, of the Oregon Constitution; as well as a tort claim for fraud.

1 – FINDINGS AND RECOMMENDATIONS

On October 24, 2013, Clackamas County filed a Motion to Dismiss Emmert's initial Complaint (docket #9).  Judge Hubel found that Emmert had failed to assert plausible § 1983 claims, dismissed those claims with leave to replead, and declined to address Emmert's state law claims for fraud and inverse condemnation.  Opinion and Order (docket #26), p. 14.  After Emmert filed a First Amended Complaint on August 29, 2014 (docket #33) with an additional claim for intentional interference with economic relations ("IIER"), Clackamas County filed a Motion to Dismiss for failure to state a claim without leave to replead (docket #34).  Judge Hernandez granted that motion in part as to:  (1) the § 1983 claims and Oregon inverse condemnation claim with leave to replead to include allegations regarding public use and official action, and further as to the Oregon inverse condemnation claim to include allegations regarding the deprivation of all economically viable use; (2) the tort claims with leave to replead to include allegations as to when Emmert discovered the allegedly tortious conduct; (3) Emmert's claim for punitive damages with prejudice; and otherwise denied the motion (docket #44).

Emmert then filed a Second Amended Complaint (docket #48).  For the third time, Clackamas County filed a Motion to Dismiss (docket #50) based on Emmert's failure to comply with Judge Hernandez's Order.  Judge Hernandez granted that motion in part as to:  (1) the 142nd Avenue West Properties, Clackamas River Estates, Clear Creek Estates, and Emmert Heights for failing to state allegations regarding public use; (2) Emmert Heights, the Con Battin Property, and Sunnyside Road Property for failing to allege an act rising to the level of intentional interference as required to state an IIER claim; and (3) the tort claims for failing to affirmatively plead the discovery of the tortious conduct; and otherwise denied the motion (docket #62).

The court granted Emmert leave to file a Third Amended Complaint, which he filed on February 18, 2016 (docket #63), omitting the IIER claim and three of the properties (Clackamas

River Estates, Clear Creek Estates, and Emmert Heights), and adding a new claim for breach of contract.  Third Amended Complaint, ¶¶ 60–66.  Clackamas County filed a Motion to Dismiss the Third Amended Complaint ("Motion") (docket #66) in its entirety, urging that any further amendment be denied as futile.

## CLAIMS

The Third Amended Complaint alleges claims involving 10 properties that Emmert owns or has owned.  They are located in Clackamas County between I-205 to the west and Rock Creek Junction to the east.  Third Amended Complaint, ¶ 4.  These 10 properties are referred to as the: (1) Hubbard Road Properties; (2) 142nd Avenue East Properties; (3) 142nd Avenue West Properties; (4) Morning Way Properties; (5) Con Battin Road Property; (6) Sunnyside Road Property; (7) 13171 Property; (8) 15576 Property; (9) Emmert International Business Park; and (10) SE 114th Properties.  *Id.*

Emmert alleges that three transportation projects by Clackamas County have interfered with his efforts to sell and develop these properties, resulting in a loss of value:

Sunset Corridor Project:  The first project, the Sunrise Corridor Project, is a contemplated development that Clackamas County and other government entities have studied and planned to develop since the mid-1980s.  It is a proposed improved route of travel from I-205 to Rock Creek Junction, a distance of approximately five miles.  *Id.*, ¶ 5.

East Side Light Rail Project:  The second project, the East Side Light Rail Project, which Clackamas County and other government entities have planned since 2000, is constructed and completed.  *Id.*, ¶ 7.

Sunnyside Road Widening Project: The third project, the Sunnyside Road Widening Project, which Clackamas County and other government entities planned and

constructed between 2000 and 2009, is completed and expands SE Sunnyside Road from its junction with I-205 eastward to approximately SE 172nd Avenue. *Id.*, ¶ 8.

     1)    <u>First Claim</u>

The First Claim involves six properties affected by the Sunrise Corridor Project and alleges inverse condemnation in violation of the Takings Clause of the Fifth Amendment of the United States Constitution under a condemnation/blight theory.

Emmert purchased one of these properties,[1] the 142nd Avenue East Properties, in 2005 (*id.*, ¶¶ 16-17), allegedly at the request of Clackamas County employees based on the promise to buy it as soon as money became available. *Id.*, ¶ 16. However, according to Emmert, Clackamas County never followed through on that promise, despite his repeated requests, and he has not been able to sell the 142nd Avenue East Properties. *Id.*, ¶ 17.

The five other properties included in the First Claim – the Morning Way Properties (*id.*, ¶¶ 22-25), 13171 Property (*id.*, ¶¶ 32-34), 15576 Property (*id.*, ¶¶ 35-37), Emmert International Business Park (*id.*, ¶¶ 43-44), and SE 114th Properties (*id.*, ¶¶ 45-47)) – allegedly lost value because Clackamas County interfered with Emmert's potential sales of the properties by denying a zone change, discouraging buyers, or refusing permits. *Id.*, ¶¶ 19, 25, 32, 43-44, 47.

Also under the First Claim, Emmert alleges a regulatory takings claim for the lost ability to develop or sell two properties affected by the East Side Light Rail Project and the Sunnyside Road Widening Project. *Id.*, ¶¶ 49-50. Emmert allegedly lost access to the Con Battin Property after construction of a switching station for the East Side Light Rail Project eliminated the

---

[1] Paragraph 57 alleges that Emmert also acquired the 15576 Property and one lot in Morning Way Properties "specifically at defendant's request." However, that allegation is not supported by any factual allegation. Clackamas County expressed its intent to acquire the 15576 Property after Emmert's purchase (Proposed Third Amended Complaint, ¶ 36) and expressed an interest in obtaining the Morning Way Properties after Emmert received an offer to purchase in 2008, which would be sometime after his acquisition (*id.*, ¶¶ 22-23). For purposes of this motion, the court will rely on the factual allegations.

frontage entrance to the property. *Id.*, ¶¶ 26-29. Similarly, construction of the Sunnyside Road Widening Project blocked the entrance to the Sunnyside Road Property, and Clackamas County allegedly refused to provide a reasonable, alternative access route. *Id.*, ¶¶ 30-31.

        2)    <u>Second Claim</u>

The Second Claim alleges inverse condemnation in violation of the Oregon Constitution by depriving Emmert "of any and all economically viable use of the Properties." *Id.*, ¶ 53. This claim includes all of the same eight properties as the First Claim, including the six properties related to the Sunrise Corridor Project, as well as the Con Battin Property taken for the East Side Light Rail Project (*id.*, ¶¶ 26-29) and the Sunnyside Road Property taken for the Sunnyside Road Widening Project (*id.*, ¶¶ 30-31).

        3)    <u>Third Claim</u>

In the alternative to inverse condemnation, the Third Claim alleges fraud with respect to four properties purchased by Emmert – the 142nd Avenue East Properties, 15576 Property, 13171 Property, and the Morning Way Properties – based on a misrepresentation by Clackamas County that it would later buy them when funds became available. *Id.*, ¶¶ 55-59.

        4)    <u>Fourth Claim</u>

Also in the alternative to inverse condemnation, the Fourth Claim alleges that Clackamas County committed breach of its oral contract to purchase those same four properties. *Id.*, ¶¶ 60-61, 64, 66.[2] The Fourth Claim additionally alleges breach of another, unrelated contract. Specifically, Emmert alleges the County promised to apply for a big box zoning change in support of Emmert's effort to rezone the 142nd Avenue West Properties. *Id.*, ¶¶ 63, 65.

///

---

[2] The numbering of paragraphs for the Fourth Claim for Relief in the Third Amended Complaint is incorrect because the number 63 precedes three separate paragraphs. For purposes of this motion, the court renumbered the paragraphs supporting the Breach of Contract claim to follow numerical order.

## STANDARDS

To survive a motion under FRCP 12(b)(6), a claim must include a short and plain statement showing that the claimant is "entitled to relief."  FRCP 8(a)(2).  To meet that standard, the claimant must provide factual allegations sufficient to show "a right to relief above a speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Only a claim that "states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Establishing the plausibility of a claim is a "process that is 'context specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'"  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014), quoting *Ashcroft*, 556 U.S. at 679 (2009).

The Ninth Circuit employs a two-step process for evaluating pleadings:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp! Inc.*, 765 F3d 1123, 1135 (9th Cir. 2014), quoting *Eclectic Props. E., LLC*, 751 F.3d at 996.

In evaluating a claim under FRCP 12(b)(6), the court is obligated to assume the truth of the factual allegations, but not the legal conclusions.  *Ashcroft*, 556 U.S. at 678.  The facts must be construed in the light most favorable to the plaintiff.  *Burgert v. Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 663 (9th Cir.2000).  A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim that

would entitle him or her to relief.  *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir. 2000).

## FINDINGS

Clackamas County's motion repeats some arguments asserted in past motions to dismiss. Each will be addressed below, repeating past Findings and Recommendations as necessary.

### I.    Section 1983 Claim (First Claim)

#### A.    Condemnation/Blight Theory

As it did in the first Motion to Dismiss (docket #34), Clackamas County argues that the § 1983 claim should be dismissed because Emmert has failed to allege that it engaged in an official policy, custom, or practice that lead to any constitutional violations.  Motion, pp. 4-12.

Municipalities are "persons" subject to damages liability under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).  However, municipalities are liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).  In *Monell*, the Supreme Court held that a municipality may only be liable under § 1983 for a constitutional tort in three general ways.  First, a plaintiff can prove that the employee who deprived him of a constitutional right was acting pursuant to a formal or *de facto* municipal policy or entrenched custom.  *Gillette*, 979 F.2d at 1346.  Second, the plaintiff can prove that the person was an official with "final policymaking authority" and the "challenged action itself thus constituted an act of official governmental policy."  *Id.*  Third, a plaintiff can prove that an official with final policymaking authority "ratified" a municipal employee's unconstitutional act.  *Id.* at 1346-47.

The Third Amended Complaint alleges the first theory – policy or custom.  Emmert does not allege that Clackamas County adopted an express policy.  *See City of Oklahoma City v Tuttle*, 471 U.S. 808, 823 (1985) ("the word 'policy' generally implies a course of action consciously chosen from among various alternatives").  Instead, he challenges Clackamas County's coordinated custom, which he describes as a "strategy to keep property values down and inhibit sales of property within the Sunrise Corridor's proposed right-of-way."  Third Amended Complaint, ¶ 44.

Clackamas County contends that Emmert identifies only a series of individual discretionary decisions by its employees unrelated to a custom or policy for which it has no *respondeat superior* liability.  *See Monell*, 436 US at 691; *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  To the contrary, Emmert alleges a coordinated effort by Clackamas County to depreciate land values of properties that were candidates for condemnation.  Clackamas County's "strategy" allegedly "included, but was not limited to, enacting regulations and undertaking activities that would minimize and/or prohibit development and/or discourage potential buyers from acquiring Properties in the planned right-of-ways" and advise "potential purchasers of the Properties not to purchase the Properties because they were subject to [Clackamas County's] right of eminent domain and ultimately condemnation."  Third Amended Complaint, ¶ 44.  Emmert has sufficiently pled conduct consistent with a "strategy" and not isolated decision-making.

Clackamas County takes issue with the fact that paragraph 45 of the Third Amended Complaint refers to "Defendant's employees named in paragraph 44," but there are no employees named in paragraph 44.  At oral argument, Emmert's counsel explained that this was the result of a "scrivener's error" that occurred when the Proposed Third Amended Complaint

was converted to the Third Amended Complaint and paragraph 41 was inadvertently excised.

Emmert's counsel also argued that the Third Amended Complaint otherwise includes reference

to the employees at issue and sufficiently alerts Clackamas County of the nature of Emmert's

claims.

Paragraph 41 of the Proposed Third Amended Complaint provides:

> 41. Defendant, through multiple individuals within Defendant's
> Planning, Transportation and Development and Water and
> Environmental Services departments, including Doug McClain,
> Ela Whelan, Michael Moises, Frank Iranshad, Tim Finley, Jody
> Yates, Joe Marek, Cam Gilmour, Jim Coleman, and others whose
> names are currently unknown to Emmert, caused numerous
> unnecessary delays to the development. When the subdivision was
> finally completed, DeCal Homes and John Schleining had so many
> problems getting Defendant to sign off on issues that arose, they
> ultimately refused to purchase the remaining lots from Emmert.

Proposed Third Amended Complaint, ¶ 41.  It appears that paragraph 41 was omitted from the

Third Amended Complaint because it pertained to claims regarding Emmert Heights, which

Emmert has abandoned.

In any case, Clackamas County would suffer no prejudice if Emmert is allowed to amend

the complaint to correct this inadvertent deletion.  As Emmert contends, many of the individuals

listed in paragraph 41 are named elsewhere in the Third Amended Complaint.  Moreover, in its

motion, Clackamas County raises exactly the same issue that it asserted in its motion to dismiss

the First Amended Complaint.  The First Amended Complaint contains the identical paragraph

41 that was inadvertently omitted from the Third Amended Complaint.  First Amended

Complaint (docket #33, ¶ 41).  Accordingly, the court should allow Emmert to correct this

inadvertent omission by amending his complaint to add the names of the individuals listed in

paragraph 41 of the First Amended Complaint and the Proposed Third Amended Complaint.

///

B.    **Regulatory Taking**

1.    **Sufficiency of Pleading**

Clackamas County argues that Emmert's takings claims fail to include sufficient facts to

meet the plausibility standard.  Motion, p. 13.  "Motions to dismiss for failure to state a claim

must be viewed with particular skepticism in cases involving claims of inverse condemnation."

*Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989) (citing *Sinaloa Lake Owners*

*Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1478 (9th Cir. 1989)).  "A taking may be found

without any physical invasion where 'a public entity acting in furtherance of a public project

directly and substantially interferes with property rights and thereby significantly impairs the

value of property.'"  *Id.* (citing *Martino v. Santa Clara Water Dist.*, 703 F.2d 1141, 1147 (9th

Cir. 1983)).  However, "[a] regulation that adversely affects property values does not constitute a

taking unless it destroys a major portion of the property's value."  *Id.* at 263.

Emmert alleges that the construction of the Eastside Light Rail Project caused a re-design

of the cul-de-sac, resulting in a loss of deeded legal frontage access to the Con Battin Road

Property and the loss of a sale in January 2010.  Third Amended Complaint, ¶¶ 27-29.  In

addition, he claims the construction of the Sunnyside Road Widening Project blocked the only

street entrance to the Sunnyside Road Property, causing the loss of potential sales and System

Development Charges, which Clackamas County has refused to refund, despite a promise to do

so.  *Id.*, ¶¶ 30-31.  These allegations present a plausible claim that the regulatory change in the

access to these two properties substantially interfered with Emmert's ability to sell these the land

based on the alleged failed sales.

///

///

2.    **Statute of Limitations**

Clackamas County next argues that Emmert's § 1983 regulatory takings claim for the

Sunnyside Road Property is barred by the statute of limitations.  Motion, pp. 15-16.  This claim

is subject to a two-year statute of limitations.[3]  *See Bonneau v. Centennial Sch. Dist. No. 28J,*

666 F.3d 577, 580 (9th Cir. 2012)(in a § 1983 suit, the district court "appropriately borrow[s]"

Oregon's statute of limitations for personal injury actions, which is two years).

The statute of limitations defense may be raised "by a motion for dismissal or by

summary judgment motion.  If the running of the statute is apparent on the face of the complaint,

the defense may be raised by a motion to dismiss."  *Jablon v. Dean Witter & Co.*, 614 F.2d 677,

682 (9th Cir. 1980), citing *Graham v Taubman*, 610 F.2d 821 (9th Cir. 1979).  "A motion under

Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim can be granted only if it appears

beyond doubt that the plaintiff can prove no set of facts in support of his or her claim."  *Id.*

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted

only if the assertions of the complaint, read with the required liberality, would not permit the

plaintiff to prove that the statute was tolled."  *Id.*

Here, the motion to dismiss should be denied because, when the facts of the complaint

are read in the light most favorable to Emmert, the running of the statute of limitations is not

apparent on the face of the complaint.  The Third Amended Complaint, which was filed on July

31, 2013, alleges that when Emmert bought the Sunnyside Road Property in 1998, it was

accessible on the south side of Sunnyside Road.  Third Amended Complaint, ¶ 30.  Thereafter,

the Sunnyside Road Widening Project blocked the only street entrance to the property, and

Emmert spent 10 years inquiring with various Clackamas County employees about alternative

---

[3] In contrast, the statute of limitations for inverse condemnations claims brought under Oregon Constitution, Article
I, § 18, is six years.  *Suess Builders Co. v. City of Beaverton*, 294 Or. 254, 267-68, 656 P.2d 306, 314 (1982).

access and received repeated assurances that reasonable access would be created.  *Id.*  During

that time, Emmert lost offers to buy the property from two national franchise chains, Jack in the

Box and Oil Can Henry's.  *Id.*, ¶ 31.  The pertinent language from the complaint provides as

follows:

> At the time Emmert purchased the Sunnyside Road Property in
> 1998, it had frontage on south side of Sunnyside Road. Defendant
> took and/or blocked the only street entrance to the Sunnyside Road
> property when it undertook the Sunnyside Road Widening
> Project. Despite ten years of effort by Emmert to obtain access to
> the Sunnyside Road Property, by inquiring with Jody Yates, Cam
> Gilmour, Barb Cartmill, Jonathan Mantay, Scot Sideras and
> others, and repeated promises by Cam Gilmour that Defendant
> would provide alternative access, Defendant has refused to allow a
> reasonable access route.

*Id*, ¶ 30.

The complaint clearly states that Emmert's 10-year effort did not begin until after the

frontage was blocked.  Specifically, the relevant portion of the complaint states, "[d]espite ten

years of effort by Emmert to *obtain access* to the Sunnyside Road Property."  *Id.* (emphasis

added).  This language indicates that, when Emmert began his 10-year effort, access to the

property at that point was blocked.

The two-year statute of limitations was triggered when Clackamas County took their

regulatory action and "refused to allow a reasonable access route."  The complaint does not

specify the date on which that refusal ultimately occurred.  However, Emmert alleges that

Clackamas County made repeated promises of an alternative route while he engaged in a 10-year

campaign to obtain access.  Thus, reading the complaint in the light most favorable to Emmert,

the end of the 10-year period constitutes the triggering date for the statute of limitations.

Although Emmert has not specified the exact dates when Clackamas County blocked

access and when his 10-year campaign ended, the court can reasonably infer that Emmert began

his 10-year effort to obtain new access to the Sunnyside Road Property sometime between 2000 and 2009, because those are the dates during which the Sunnyside Road Widening Project was "planned, constructed, and completed." *Id.*, ¶ 8. When the complaint is read in the light most favorable to Emmert, it is possible to infer that Clackamas County blocked access, for example, in 2001 in which case the 10-year period ended in 2011. Under that scenario, the complaint, which was filed in 2013, was filed within the statute of limitations period. Because, when all factual inferences are resolved in Emmert's favor, it cannot be said beyond doubt that Emmert did not file the complaint within the statute of limitations, the motion to dismiss should be denied.[4]

## II.    Fraud (Third Claim)

### A.    Statute of Limitations

Clackamas County next seeks dismissal of the fraud claim for failure to sufficiently set forth the date on which Emmert discovered the alleged fraud, as Judge Hernandez previously ordered. Motion, pp. 16-21.

The fraud claim is subject to the two-year statute of limitations that commences "only from the discovery of the fraud or deceit." ORS 12.110(1). As a result, the two-year statute of limitations does not begin to run until the plaintiff knows or, in the exercise of reasonable care, should have known of the alleged fraud or deceit. *Burgdorf v. Weston*, 259 Or. App. 755, 768-

---

[4] Clackamas County attached a Tolling Agreement to its Motion to Dismiss the First Amended Complaint (docket #34-1). The Tolling Agreement commenced October 8, 2011, and, according to its Fourth Amendment, terminated on July 31, 2013, the day Emmert filed the initial Complaint. However, "a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) . If "matters outside the pleadings are presented to and not excluded by the court," then a motion to dismiss under FRCP 12(b)(6) for failure to state a claim "must be treated as one for summary judgment under Rule 56." FRCP 12(d). The only documents which may be considered on a motion to dismiss without converting it to a motion for summary judgment are documents attached to the complaint under FRCP 10(c), matters that are subject to judicial notice, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995), *cert. denied*, 516 US 964 (1995), and documents that are "referenced extensively in the complaint and [are] accepted by all parties as authentic." *Van Buskirk*, 284 F.3d at 980 (citation omitted). The Tolling Agreement does not fall into any of these categories and, therefore, cannot be considered in resolving the motion to dismiss.

13 – FINDINGS AND RECOMMENDATIONS

69, 316 P.2d 303, 312 (2013) (citation omitted).  In addition, a plaintiff must timely file a tort

claim notice under the Oregon Tort Claims Act ("OTCA"), ORS 30.275(2)(b) ("Notice of claim

shall be given . . .  within 180 days after the alleged loss or injury.").  The OTCA also is subject

to the "discovery rule."  *Johnson v. Multnomah Cnty.*, 344 Or. 111, 118, 178 P.3d 210, 213

(2008).

On July 1, 2015, Judge Hernandez ordered Emmert to set forth the dates on which he

discovered the acts of fraud.  Order (docket #44), p. 3.  In response, Emmert added allegations

regarding the date of discovery in paragraphs 59 and 64 to the Proposed Third Amended

Complaint:

> Kenneth C. Bauman came to the conclusion that Defendant
> improperly interfered with Plaintiff's economic relationships using
> improper means some time after May 2010.  Plaintiff first
> discovered the tortious conduct thereafter and gave Mr. Bauman
> instructions to provide notice of this claim to Defendant.
> Mr. Bauman gave actual notice of the claim to Clackamas County
> Counsel Scot Sideras on or about October 8, 2010.

Proposed Third Amended Complaint (docket #51, Ex. 1), ¶¶ 59 & 64.  However, other

allegations of Clackamas County's conduct predating the discovery date suggested that Emmert

knew of the fraudulent conduct earlier than he alleged.  Therefore, on February 4, 2016, the court

granted the motion to dismiss as to the fraud claim for failure to affirmatively plead the date of

discovery either to satisfy FRCP 9 or sufficiently allege compliance with OTCA.  Findings and

Recommendations (docket #60), p. 21, adopted by Order (docket #62).

In the Third Amended Complaint, plaintiff has attempted to again cure this deficiency by

adding allegations of the circumstances that led to Mr. Bauman learning in May 2010 that

Clackamas County never intended to condemn any Properties:

> Kenneth C. Bauman came to the conclusion that there was a civil
> conspiracy to engage in the fraudulent conduct involving the above
> named individuals some time and that Defendant did not intend to

> purchase the properties and was not waiting to receive funds from
> ODOT to purchase the properties some time after May 2010.
> Plaintiff first discovered the fraudulent conduct thereafter and gave
> Mr. Bauman instructions to provide notice of this claim to
> Defendant.  Mr. Bauman gave actual notice of this claim to
> Clackamas County Counsel Scot Sideras on or about October 8,
> 2010.

Third Amended Complaint, ¶ 56.

Clackamas County, however, points to paragraphs 44 and 45, which state that Emmert learned "on or about June 2009" that Clackamas County had devised a strategy and was engaged in fraudulent conduct.  The May 2010 date is inconsistent with the allegations in paragraphs 44 and 45 that Emmert learned about the conspiracy in June 2009.

In his briefing, Emmert discloses that his lawyers recently reviewed his records and identified a document that shows he in fact did not learn of the alleged fraud until 2011.  Response, p. 5 n. 1.  To reconcile the inconsistent dates, Emmert proposes to amend paragraphs 44 and 45 to read, "Emmert learned in 2011 that on or about June 2009 Defendant had devised a strategy to keep property values down and inhibit sales of property."  *Id*.  Clackamas County vociferously objects to what it characterizes would be Emmert's "sixth attempt" to state a claim.

Under FRCP 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."  "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Id.*  The "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Id.*  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.*

Here, although there have been repeated failures to cure the deficiencies in the complaint, they are outweighed by the absence of any other factors this court considers in exercising its discretion, such as bad faith by Emmert or prejudice to Clackamas County. Clackamas County also has not shown that the amendment would be futile. Because the Federal Rules require that leave to amend shall be freely given, the court should allow Emmert to make this one last amendment.

## B.    FRCP 9 Particularity Requirement

Clackamas County next argues, as it did in the Motion to Dismiss the First Amended Complaint, that Emmert has failed to allege the elements of his fraud claim with the specificity required by FRCP 9 to plead the "who, what, when, where, and how" of the alleged misconduct. Motion, pp. 21-23; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

"A plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*. "While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Id.* at 1103. The elements of actionable fraud under Oregon law are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Conzelmann v. Nw. Poultry & Dairy Prods. Co.*, 190 Or. 332, 350, 225 P.2d 757, 764 (1950).

The Third Amended Complaint sufficiently alleges the substance of the misrepresentation as to Clackamas County's intent to purchase and condemn the 142nd Avenue East Properties, 13171 Property, 15576 Property, and Morning Way Properties. *See* Third Amended Complaint, ¶¶ 55-59. This representation was made either as an incentive for Emmert to purchase the 142nd Avenue East Properties (*id.*, ¶¶ 16, 57), or to dissuade Emmert from selling the Morning Way Properties (*id.*, ¶¶ 22-25), 13171 Property (*id.*, ¶¶ 32-34), and the 15576 Property (*id.*, ¶¶ 35-37).[5] Emmert sufficiently alleges the representation was false because Clackamas County never intended to purchase his Properties when the misrepresentation was made and completed the transportation projects without condemning any of the Properties.

## III.    Breach of Contract (Fourth Claim)

Emmert has added a claim for breach of contract as to five properties: the 142nd Avenue East Properties, 15576 Property, 13171 Property, Morning Way Properties, and 142nd Avenue West Properties. Emmert alleges that Clackamas County's promise to buy the 142nd Avenue East Properties, 15576 Property, 13171 Property, and Morning Way Properties, and his purchasing or foregoing the sale of those properties in reliance on that promise formed an oral contract that Clackamas County breached when it later built the Sunrise Corridor Property without condemning those properties. The fourth claim also alleges breach of an unrelated oral contract formed when Emmert sold the 142nd Avenue West Properties in reliance on Clackamas County's promise to apply for an exception to the big box rule in support of the buyer's re-

---

[5] Paragraph 57 of the Third Amended Complaint alleges that Emmert also acquired the 15576 Property and one lot in the Morning Way Properties "specifically at Defendant's request." However, that allegation is not supported by any factual allegation. Clackamas County expressed its intent to acquire the 15576 Property after Emmert's purchase (Third Amended Complaint, ¶ 36), and expressed an interest in obtaining the Morning Way Properties after Emmert received an offer to purchase in 2008, which would be sometime after his acquisition (*id.*, ¶¶ 22-23). For purposes of this motion, the court will rely on the factual allegations.

17 – FINDINGS AND RECOMMENDATIONS

zoning application.  Clackamas County argues that Emmert has failed to sufficiently allege that the parties' actions formed enforceable oral contracts.

Clackamas County first argues that the claims lack allegations that the parties agreed on the materials terms of the contract at the time of formation, namely the sale price and the time the sale would be executed.  Motion, pp. 25-33.  "When the offer leaves an essential term for future agreement by the parties, acceptance of the offer cannot give rise to a legal obligation until performance of that future agreement.  *Reed v. Montgomery*, 180 Or. 196, 219-221, 175 P.2d 986, 995–96 (1947).  "In every agreement for the sale of land, the essential terms include the designation of the parties, the identification of the property, the promise to sell and buy, the purchase price and how it will be paid, and a fixed time and place for the delivery of the deed or 'closing.'"  *Povey v. Clow*, 146 Or. App. 760, 764, 934 P.2d 528, 530 (1997).

Emmert alleges that after he purchased the 15576 Property in 2003, Clackamas County employees told him that the County would purchase the property "because it needed the property . . . as part of the Sunrise Corridor Project."  Third Amended Complaint, ¶ 36.  Regarding the 13171 property, Emmert contends that Clackamas County employers reassured him that there was "no question" that it would be purchasing the 13171 Property "in the near future when Defendant received funds from ODOT for the acquisition" and continued to make that promise through 2007.  *Id.*, ¶¶ 32-33.  Emmert also contends that he entered into negotiations with Clackamas County for sale of the Morning Way Properties, which ended with a verbal agreement "that [Clackamas County] would purchase the Morning Way Properties for use in the development and construction of the Sunrise Corridor Project."  *Id.*, ¶ 24.  Finally, Emmert alleges that he bought the 142nd East Avenue Properties at the request of Clackamas County employees.  *Id.*, ¶ 16.  Emmert was promised that Clackamas County "would be purchasing the

142nd Avenue East Properties for the Sunrise Corridor Project as soon as the funds became available."  *Id.*

Under a liberal construction of the Third Amended Complaint, it may be reasonable for the court to infer that at least some of the parties' dealings concerning the four properties resulted in an agreement over essential terms, such as the negotiations for the sale of the 13171 Property that lasted about a year or for the Morning Way Properties that ended in a "verbal agreement."

However, it is unnecessary for the court to make that inference because the contracts are unenforceable under the statute of frauds.  Under Oregon's statute of frauds, some types of agreements, including agreements for the sale of real property, must be made in writing and be "subscribed by the party to be charged."  ORS § 41.580(1)(e).  Oregon law allows for exceptions under which verbal promises to purchase land are valid either as enforceable contracts or quasi-contracts based on part performance of the promise.  *Brice v. Hrdlicka*, 227 Or. App. 460, 465-55, 206 P.3d 265, 267-68 (2009).  A party may avoid the statute of fraud, if he can demonstrate partial performance of the verbal contract and thereby the existence of an enforceable contract. *Roadway Express, Inc. v. Jossy*, 853 F.2d 736, 739 (9th Cir. 1988), citing *Luckey v. Deatsman*, 217 Or. 628, 633, 343 P.2d 723, 725 (1959).

A party who invokes the doctrine of partial performance must prove: "(1) there is conduct corroborating and unequivocally referable to the oral agreement sufficient to satisfy the policy of the statute designed to minimize perjured claims and the opportunities for fraud, and (2) if there are equitable grounds for enforcing the contract whether those grounds are found in facts establishing the basis for a true estoppel or in facts justifying the avoidance of unjust enrichment or relief from fraud."  *Conklin v. Karban Rock, Inc.*, 94 Or. App. 593, 599, 767 P.2d 444, 447-48 (1989), quoting *Luckey*, 217 Or. At 633.  The equitable estoppel doctrine is "intended to protect

those who materially change their position in reliance upon another's acts or representations."
*Bash v. Fir Grove Cemeteries, Co.*, 282 Or. 677, 687, 581 P.2d 75, 80 (1978). Estoppel also
requires that "there was a right of reliance upon the act of the party sought to be estopped, and
such reliance was reasonable." *Id*.

Emmert may be asserting an equitable estoppel claim – he contends that he relied to his
detriment on Clackamas County's promises. However, Emmert has failed to allege that his
actions, either through part performance or reliance, conferred a benefit on Clackamas County.
For oral contracts to be enforceable, the acts of part performance must confer a benefit on the
party to be charged so that failure to enforce the contract would result in a windfall. *Conklin*, 94
Or. App. at 600.

The complaint does not assert that Clackamas County gained anything from allegedly
promising to purchase properties from Emmert in the future. Clackamas County would have
received a windfall from the drop in the properties' value had it later condemned the land, but
that never happened; the Sunrise Corridor was built without Clackamas County condemning the
Properties. Theoretically, Clackamas County could have benefitted if its promise to Emmert
resulted in reducing values of surrounding properties that it later purchased. But Emmert does
not allege that Clackamas County benefitted from any decrease in property values. Emmert
alleges that rejection of competing offers to sell his properties while waiting for Clackamas
County to secure ODOT funding for condemnation was detrimental to him, but does not allege
how that action was beneficial to Clackamas County.

The allegations of Clackamas County's abandoned promise to apply for a zoning
exception for the 142nd Avenue West Properties fail to support a breach of contract claim for an
entirely different reason. The pertinent portion of Emmert's factual allegations are as follows:

20.  In or about October 2005, Craig Ramey representing Regency Centers offered Emmert more than $16 million for the 142nd Ave. West Properties. After the Defendant agreed to support the zone change application by applying to Metro for an exception to the big box rule, to make Mr. Ramey's project commercially feasible, Plaintiff and Mr. Ramey entered into a contract for the sale of the property. The offer was supported by earnest money in the amount of $100,000. The offer was accepted only after Defendant promised to apply to Metro for the exception.

21. After the zone change, but while an appeal was still pending, on or about June 2008, Defendant reneged on its promise to ask for the exception. Regency Centers then terminated the Earnest Money Agreement and rescinded the offer to purchase.

*Id.*, ¶¶ 20-21.

There is no enforceable contract with respect to the 142nd West Properties because Emmert does not include facts establishing that consideration existed.[6]  Consideration is a necessary element of a valid contract.  In order for a contract to be binding, each party must give some legal consideration to the other by conferring some benefit upon the promisor or suffering a legal detriment at the promisor's request.  *See Shelley v. Portland Tug & Barge Co.*, 158 Or. 377, 387, 76 P.2d 477, 481 (1938) ("[C]onsideration consists of the accrual to one party of some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other."); *Small v. Paulson*, 187 Or. 76, 83-84, 209 P.2d 779 (1949).

Here, Emmert failed to allege facts showing he conferred some benefit upon Clackamas County or suffered a legal detriment at Clackamas County's request.  Without a benefit to Clackamas County or a detriment to Emmert, there is no valid consideration, and no contract was ever formed.  For these reasons, the Third Amended Complaint fails to state a claim for breach of contract.

///

---

[6] Emmert also does not discuss consideration in his response to the motion to dismiss.

## RECOMMENDATIONS

For the reasons set forth above, Clackamas County's Motion to Dismiss (docket #66) should be GRANTED IN PART, and the following claims dismissed:

(1) the Third Claim (Fraud), with leave to amend as proposed in Emmert's Response, p. 5, n. 1; and

(2) the Fourth Claim (Breach of Contract) with prejudice.

In all other respects, the motion should be DENIED.  Emmert also should be allowed to amend his complaint with respect to the First Claim to include the names of Clackamas County employees that were inadvertently deleted in paragraph 41.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Thursday, November 03, 2016.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED October 17, 2016.


/s/ Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge