IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRY W. EMMERT,                                        No. 03:13-cv-01317-YY

                Plaintiff,

        v.

CLACKAMAS COUNTY,                                OPINION & ORDER

                Defendant.

HERNANDEZ, District Judge:

       Magistrate Judge You issued a Findings & Recommendation (#83) on October 17, 2016, in which she recommends the Court grant in part and deny in part Defendant's motion to dismiss Plaintiff's Third Amended Complaint.  Defendant has timely filed objections to the Findings & Recommendation.  The matter is now before me pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

       When any party objects to any portion of the Magistrate Judge's Findings & Recommendation, the district court must make a *de novo* determination of that portion of the

1 - OPINION & ORDER

Magistrate Judge's report.  28 U.S.C. § 636(b)(1); <u>Dawson v. Marshall</u>, 561 F.3d 930, 932 (9th

Cir. 2009); <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

 I have carefully considered Defendant's objections, and aside from those issues discussed

below, conclude there is no basis to otherwise modify the Findings & Recommendation.  I have

also reviewed the pertinent portions of the record *de novo* and find no other errors in the

Magistrate Judge's Findings & Recommendation.  As explained more fully below, Defendant's

motion is granted and the Third Amended Complaint is dismissed.  However, I give Plaintiff

leave to amend the inverse condemnation claims.  I do not give leave to amend the fraud claim.

I.  Claims at Issue & Background

 As described in past decisions, this case raises federal and state inverse condemnation

claims[1] as well as state common law claims.  Generally, the claims allege that three public

transportation projects have negatively affected the value of several pieces of Plaintiff's property.

The case was filed on July 31, 2013 and still lacks an operative pleading on which it may move

forward.  Judge Hubel dismissed the Complaint because the federal claims failed to state a claim

and he declined to address the state claims.  Judge Hubel concluded that the federal inverse

condemnation claim failed to include any 42 U.S.C. § 1983 allegations.  June 24, 2014 Op. 11-

14, ECF 26.  He also noted that during oral argument on the motion to dismiss, Plaintiff

conceded that the state common law fraud claim failed to state a claim under Federal Rule of

---

 [1]  An "inverse condemnation" claim seeks just compensation for a "taking" of property
absent the institution of condemnation proceedings.  <u>United States v. Clarke</u>, 445 U.S. 253, 257
(1980).  It is a "cause of action against a governmental defendant to recover the value of property
which has been taken in fact by the governmental defendant, even though no formal exercise of
the power of eminent domain has been attempted by the taking agency."  <u>Id.</u> (internal quotation
marks omitted) ("[t]he phrase 'inverse condemnation' . . . simply describes an action that is the
'inverse' or 'reverse' of a condemnation proceeding").

Civil Procedure 9(b). Id. at 2. Judge Hubel granted Plaintiff leave to amend. Plaintiff then filed a First Amended Complaint.

Defendant moved to dismiss the First Amended Complaint, which included the federal inverse condemnation claim and the fraud claim, as well as other claims. In a May 12, 2015 Findings & Recommendation, Judge Stewart[2] recommended granting the motion in part and denying it in part. Judge Stewart found, among other things, that Plaintiff had adequately pleaded a custom or practice theory of municipal liability for his § 1983 claims which included an equal protection claim which has since been dropped. May 12, 2015 F&R 14-16, ECF 39 (discussing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

Judge Stewart also found that Plaintiff's inverse condemnation claims failed to allege that Defendant acted for the benefit of public use. Id. at 16-19. Plaintiff asserted that the inverse condemnation claims were brought under a condemnation cloud/blight theory in which, as typically alleged, "properties designated for condemnation have suffered drastic physical deterioration and depreciation in value before the formal appropriation." Id. at 17. Judge Stewart found that such claims require an allegation that the "taking" was for the benefit of public use. Id. She explained that while the "public use" allegation could possibly be assumed based on the allegations that Plaintiff acquired many of the properties at issue allegedly to assist Defendant with the three public transportation projects, the pleading should be amended nonetheless because "public use" by Defendant was necessary to state both the federal and state inverse condemnation claims. Id.

_____

[2] By this time, Clackamas County had withdrawn its Magistrate Judge consent and separately, the case had been reassigned to Judge Stewart upon Judge Hubel's retirement.

Judge Stewart's conclusion that the "public use" allegation needed to be express was included in her finding that the "public use" allegation is inconsistent with an element of Plaintiff's fraud claim.  Id. at 18.  In the fraud claim, Plaintiff alleges that Defendant did not, in fact, intend to purchase the properties it had promised to buy.  Id. (citing First Am. Compl. ¶ 71).  Judge Stewart explained:

> Based on [the allegation in the fraud claim that Defendant did not intend to purchase the properties], Emmert's inverse condemnation claims necessarily fail because, if true, Clackamas County never intended to use his Properties for the public transportation projects.  On the other hand, if Emmert succeeds in proving his inverse condemnation claims, then his fraud claim necessarily fails because Clackamas County made no false statements regarding its future intent to eventually condemn his Properties for the transportation projects.

Id.  She concluded that although Plaintiff could not succeed on both the inverse condemnation and the fraud claims, he was not precluded from alleging them as alternative claims, "provided that he alleges all of the necessary elements of each claim."  Id.

Judge Stewart also separately analyzed the fraud claim.  She agreed with Defendant that Plaintiff failed to allege the discovery date of the fraud which was required to assess whether the October 8, 2010 tort claim notice complied with the 180-day notice requirement under the Oregon Tort Claims Act (OTCA).  Id. at 25-26 (citing Or. Rev. Stat. §§ (O.R.S.) 30.275(1), (2)).  However, she rejected Defendant's argument that the fraud claim otherwise failed to comply with the particularity requirements of Rule 9(b).  Id. at 26-30.

In a July 1, 2015 Order, I adopted Judge Stewart's May 12, 2015 Order with a few modifications.  July 1, 2015 Ord., ECF 44.  I made no comment on the Monell municipality liability finding, but I did expressly note that because Plaintiff was relying on the "discovery rule" to support his tort claims (which at that point included an intentional interference with economic

4 - OPINION & ORDER

relations claim along with the fraud claim), those claims required amendment to include facts

establishing when Plaintiff discovered the alleged tortious conduct. Id. at 3 (citing Vaccarino v.

Midland Nat'l Life Ins. Co., No. CV-05858 CAS (MANx), 2011 WL 5593883, at *4 (C.D. Cal.

Nov. 13, 2011) (when complaint indicates that the fraud is remote and implicates statute of

limitations issues and the plaintiff relies on the "discovery rule," the plaintiff has a duty to

affirmatively plead the date of discovery under Rule 9)). I also noted my agreement with Judge

Stewart's recommendations that the inverse condemnation claims be amended to include a

"public use" intent allegation and that the fraud claim be pleaded as an alternative claim. Id.

Plaintiff filed a Second Amended Complaint. After Defendant moved to dismiss it,

Plaintiff moved for leave to amend to file a Third Amended Complaint. A Proposed Third

Amended Complaint was attached to Plaintiff's motion.

In a December 29, 2015 F&R, Judge Stewart considered both Defendant's motion to

dismiss and Plaintiff's motion to amend. Dec. 29, 2015 F&R, ECF 60. Judge Stewart noted that

because the Proposed Third Amended Complaint purported to address many of the issues raised

by Defendant's motion attacking the Second Amended Complaint, she would primarily refer to

the allegations in the Proposed Third Amended Complaint to determine if further amendment

would be futile.

As to the inverse condemnation claims, Judge Stewart rejected Defendant's argument that

the newly-added "public use" allegations were insufficient, but she found that the claims still

required clarification as to which properties were included. Dec. 29, 2015 F&R 21. The claims

improperly included four properties for which no "public use" was alleged. Id. Additionally, she

explained that the inverse condemnation claims as to two of the properties arose under a different

5 - OPINION & ORDER

theory than those forming the basis of the condemnation cloud/blight theory which were impacted by the Sunrise Corridor Project.  Id. at 14.  Instead, the Con Battin Road Property and the Sunnyside Road Property, allegedly impacted by the East Side Light Rail Project and the Sunnyside Road Widening Project respectively, were brought as "as-applied regulatory takings claims[.]"  Id.  She wrote:  "the Con Battin and Sunnyside Road Properties are distinct from – and should not be lumped together with – the properties involved in the Sunrise Corridor Project, but should be alleged as separate takings claims."  Id. at 21.

As to the fraud claim, Defendant again argued that the proposed pleading failed to sufficiently set forth the date of discovery.  To comply with the previous Order requiring the allegation of facts establishing when he discovered the fraud, Plaintiff included the following in the Proposed Third Amended Complaint:

> Defendant engaged in the conduct described intentionally or with a reckless disregard for the truth.  Beginning at a time unknown to Emmert, but not later than November 2008, Defendant, acting through Barb Cartmill, Cam Gilmour, Gary Cook, Jonathan Mantay, and the other persons named in the above paragraphs, conspired together and with each other knowingly and intentionally to engage in the series of acts as set forth above for the purpose of misleading Emmert so he would lose sales of some of the Properties and/or be unable to begin development of some of the Properties and/or lease some of the Properties. [Plaintiff's counsel] Kenneth C. Bauman came to the conclusion that there was a civil conspiracy to engage in the fraudulent conduct involving the above named individuals some time after May 2010.  Plaintiff first discovered the fraudulent conduct thereafter and gave Mr. Bauman instructions to provide notice of this claim to Defendant.  Mr. Bauman gave actual notice of the claim to Clackamas County Counsel Scot Sideras on or about October 8, 2010.

Prop. Third Am. Compl. ¶ 59 (emphasis added), ECF 51-1.

Defendant argued that the May 2010 allegation was contradicted by other allegations revealing that Plaintiff knew, or reasonably should have known, that Defendant had deceived him

well before May 2010.  Dec. 29, 2015 F&R 17.  Judge Stewart noted several of the allegations. Id. at 18 (citing Prop. Third Am. Compl. ¶¶ 16-17, 25, 35, 37 (alleging that Defendant discouraged prospective buyers from purchasing the 142nd Ave. East Properties "[s]ometime after November 2005," the 15576 Property "[s]ubsequent to 2003," and the Morning Way Properties in the summer of 2009, because of an impending freeway project)).

Next, she noted the allegations in other paragraphs that "at least by June 2009, Emmert acquired detailed knowledge of the allegedly tortious actions by Clackamas County, namely 'a strategy [of] discouraging potential buyers from acquiring Properties in the planned right-of-ways' as part of a 'conspiracy to interfere with the use, development, and/or sales by Emmert' of his properties." Id. at 19 (quoting Prop. Third Am. Compl. ¶¶ 49, 50).  Judge Stewart remarked on the obvious contradiction between the June 2009 allegation in these two paragraphs with the allegation in Paragraph 59 that Plaintiff discovered Defendant's tortious conduct and scheme "some time after May 2010." Id.  "This May 2010 date is inconsistent with the allegations in paragraphs 49 and 50 that Emmert learned about the conspiracy in June 2009." Id.

Judge Stewart noted that at oral argument on the motions, Plaintiff clarified that until May 2010, Defendant was still leading him to believe that it would buy or condemn his properties. Id. at 20.  But, she said, "that clarification is difficult to reconcile with the factual allegations which, with one exception, all deal with conduct predating June 2009." Id.  She concluded that "inconsistent allegations cast doubt on the May 2010 discovery date.  Therefore, the Proposed Third Amended Complaint does not affirmatively plead the date of discovery either to satisfy FRCP 9 or to sufficiently allege compliance with the OTCA." Id. at 21.

Finally, despite having been given prior chances to amend, and over Defendant's

7 - OPINION & ORDER

objection, Judge Stewart recommended giving Plaintiff another opportunity.  Id. at 21-22.  After

summarizing the ways in which the Proposed Third Amended Complaint fell short, including

that the inverse condemnation and fraud claims still failed to state a claim for the reasons

explained, she concluded that there was no undue prejudice to Defendant by allowing

amendment again.  However, she indicated that this was to be the final chance:  "For these

reasons, Emmert should be given one, final opportunity to file an amended complaint, although

not in the form currently proposed."  Id. at 22.

Neither party objected to the December 29, 2015 F&R.  In a February 2, 2016 Order, I

adopted the F&R, granted in part and denied in part the motion to dismiss the Second Amended

Complaint, and granted the motion for leave to file a Third Amended Complaint but directed that

it cure the deficiencies described in the F&R.  Feb. 2, 2016 Ord., ECF 62.

II.  Third Amended Complaint

The Third Amended Complaint (TAC), filed February 18, 2016, retains the two inverse

condemnation claims (state and federal) and the fraud claim.  It omits the intentional interference

claim and adds a new breach of contract claim.[3]  TAC, ECF 63.  The federal inverse

condemnation claim continues to combine, rather than separate, the allegations supporting a

condemnation cloud/blight theory and the allegations supporting an as-applied regulatory takings

theory.  Id. ¶¶ 43-51 (allegations supporting federal inverse condemnation claim including

Paragraph 46 (condemnation cloud/blight theory properties) and Paragraph 49 (as-applied

regulatory takings properties)).

---

[3]  In her October 17, 2016 F&R, Judge You recommends that the contract claim be
dismissed with prejudice.  Plaintiff did not object to this recommendation.  I find no error in this
portion of the F&R and I adopt it without further comment.

The federal inverse condemnation claim repeats the allegation in the Proposed Third Amended Complaint that Emmert learned "on or about June 2009" of Defendant's "strategy to keep property values down and inhibit sales of property within the Sunrise Corridor's proposed right-of-way." Id. ¶ 44. It also repeats the allegation in the previously-proposed pleading that he learned "on or about June 2009" that Defendant's employees "had engaged in and continued to engage in a conspiracy to interfere with the use, development, and/or sales by Emmert of any property he owned and owns within Clackamas County." Id. ¶ 45. And, in support of the fraud claim, it repeats the allegations in the Proposed Third Amended Complaint that Bauman realized "some time after May 2010" that there "was a civil conspiracy to engage in [] fraudulent conduct[,]" that "Defendant did not intend to purchase the properties," that Plaintiff "first discovered the fraudulent conduct thereafter[,]" and that a tort claim notice was given to Defendant "on or about October 8, 2010." Id. ¶ 56.

III. Summary of Judge You's October 17, 2016 F&R

Defendant moved to dismiss the TAC, raising many arguments it previously raised as to the prior versions of the complaint. Defendant challenged the allegations establishing Monell liability for the federal inverse condemnation claim. Judge You rejected that argument for the same reasons previously given by Judge Stewart.

Next, Judge You addressed the portion of the inverse condemnation claims based on the as-applied regulatory takings theory. This part of the inverse condemnation claim is based on the impact of the East Side Light Rail Project on Plaintiff's Con Battin Road Property and the impact of the Sunnyside Road Widening Project on Plaintiff's Sunnyside Road Property. TAC ¶¶ 4e, 4f, 7, 8, 26-29, 31-31, 49, 53. Essentially, Plaintiff alleges that as a result of the two transportation

9 - OPINION & ORDER

projects, Plaintiff's properties were left inaccessible which negatively affected their value.  Id.

In its motion, Defendant argued that as to the Con Battin Road Property, Plaintiff failed to sufficiently allege that Defendant, as opposed to other governmental bodies, was responsible for the harm.  Def.'s Mot. 14, ECF 66 (arguing that the TAC alleged only that Defendant had some unexplained role in "developing the East Side Light Rail Project.").  Id.  As to the Sunnyside Road Property, Defendant argued that Plaintiff's claim was untimely because the loss of access occurred more than ten years ago.  Id. at 15.

Judge You generally addressed the sufficiency of the allegations under the "plausability standard."  Oct. 17, 2016 F&R 10.  She wrote:

> Emmert alleges that the construction of the Eastside Light Rail Project caused a re-design of the cul-de-sac, resulting in a loss of deeded legal frontage access to the Con Battin Road Property and the loss of a sale in January 2010.  Third Amended Complaint , ¶¶ 27-29.  In addition, he claims the construction of the Sunnyside Road Widening Project blocked the only street entrance to the Sunnyside Road Property, causing the loss of potential sales and System Development Charges, which Clackamas County has refused to refund, despite a promise to do so.  Id., ¶¶ 30-31.  These allegations present a plausible claim that the regulatory change in the access to these two properties substantially interfered with Emmert's ability to sell [] the land based on the alleged failed sales.

Id.[4]  She said nothing more specific about the allegations, or lack thereof, implicating Defendant in the development of the Eastside Light Rail Project.

As to the Sunnyside Road Property, Judge You concluded that Defendant's motion should be denied because when the facts of the TAC were read in the light most favorable to Plaintiff,

---

[4] The F&R places this discussion under a heading suggesting that it is relevant only to the federal inverse condemnation claim.  But, the as-applied regulatory takings allegations appear in both the federal and state inverse condemnation claims.  TAC ¶ 49 (regulatory takings allegations for federal claim); ¶ 53 (regulatory takings allegations for state claim).  The failure to state a claim argument is applicable to both state and federal claims.

the running of the statute of limitations was not apparent on the face of the pleading. Id. at 11. The claim alleges that Plaintiff bought the property in 1998 and at some unspecified time after that, Defendant blocked the entrance when it undertook the Sunnyside Road Widening Project. TAC ¶ 30. For the next ten years, Plaintiff attempted to get Defendant to create an alternative access to the property but despite promises by Defendant's employees that it would, it has not. Id.

Essentially, Judge You concluded that although the access was initially blocked when Defendant first took its "regulatory action," which was at least ten years before the July 31, 2013 Complaint in this case was filed, the statute of limitations did not commence until the end of the ten-year period of Plaintiff attempting to gain alternative access to the Property. Oct. 17, 2016 F&R 12. Even without a precise end date alleged, Judge You found that the Court could reasonably infer that Plaintiff's ten-year effort to obtain new access to the property occurred sometime between 2000 and 2009 because that is when the Sunnyside Road Widening Project was "planned, constructed, and completed." TAC ¶ 8. It was possible to further infer that if Defendant initially blocked access in 2001, the ten-year period ended in 2011. Oct. 17, 2016 F&R 13. With that, the claim was timely because it was first filed in 2013. Id. Therefore, it could not be conclusively determined on the motion to dismiss that the claim based on the Sunnyside Road Property was untimely.

As to the fraud claim, Defendant again argued that the TAC failed to sufficiently allege a discovery date and thus, it violated previous Orders directing that such amendment be made. Because the allegations in the TAC were identical to the those in the Proposed Third Amended Complaint and which Judge Stewart had said were insufficient because they were inconsistent,

11 - OPINION & ORDER

Judge You agreed that again, the "May 2010 date is inconsistent with the allegations in paragraphs 44 and 45 that Emmert learned about the conspiracy in June 2009." Oct. 17, 2015 F&R 15.

But, Judge You recommends allowing Plaintiff leave to amend because in a footnote in his response to Defendant's dismissal motion, Plaintiff disclosed that his lawyers "recently reviewed his records and identified a document that shows he in fact did not learn of the alleged fraud until 2011." Id. (citing Pl.'s Resp. 5 n.1, ECF 79). Plaintiff then proposed to amend the June 2009 allegations in Paragraphs 44 and 45 to read: "Emmert learned in 2011 that on or about June 2009 Defendant had devised a strategy to keep property values down and inhibit sales of property." Pl.'s Resp. 5 n.1. Over Defendant's "vociferous objection," Judge You recommends allowing Plaintiff leave to amend Paragraphs 44 and 45 to add the 2011 discovery date. Oct. 17, 2016 F&R 15-16. She found that "although there have been repeated failures to cure the deficiencies in the complaint, they are outweighed by the absence of any other factors this court considers in exercising its discretion, such as bad faith by Emmert or prejudice to Clackamas County." Id. at 16. Without a showing that the amendment would be futile and given that leave to amend should be freely given, she recommends allowing Plaintiff "to make this one last amendment." Id.

Finally, Judge You discussed Defendant's renewed argument that the fraud claim still failed to comply with Rule 9(b)'s particularity requirement. Id. at 16-17. She disagreed with Defendant, finding the allegations to be sufficient. Id. at 17.

/ / /

/ / /

12 - OPINION & ORDER

IV.  Discussion

    A.  Federal Inverse Condemnation Claim:  Condemnation Cloud/Blight Theory

    In its objections, Defendant challenges Judge You's finding that the allegations sufficiently plead an unconstitutional custom.  Although I previously adopted Judge Stewart's identical conclusion as to the allegations in the First Amended Complaint, I now agree with Defendant that the TAC fails to state <u>Monell</u> liability under a custom or practice theory, or any other theory.[5]

    I agree with Judge You, as does Defendant, that Plaintiff does not assert municipal liability based on the adoption of an express policy.  Oct. 17, 2016 F&R 8.  Instead, as she noted, Plaintiff alleges a "coordinated custom" of a "'strategy to keep property values down and inhibit sales of property within the Sunrise Corridor's proposed right-of-way.'"  <u>Id.</u> (quoting TAC  ¶ 44).  While Judge Stewart previously, and Judge You currently, were correct that Plaintiff has "sufficiently pled conduct consistent with a 'strategy' and not isolated decision-making[,]" <u>id.</u>, that conclusion does not go far enough.

    It is not enough to allege the fact of a "strategy" or a conspiracy.  The Eleventh Circuit recently observed that although it had not had "occasion to hold that a conspiracy claim against a

---

    [5]  The parties disagree about the proper pleading standard for a <u>Monell</u> claim.  Judge Brown recently explained that Ninth Circuit cases suggesting that a "'bare allegation that [municipal employee] conduct conformed to official policy, custom, or practice'" is sufficient, are no longer controlling after <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  <u>Gregory v. City of Newberg</u>, No. 3:15-cv-00473-BR, 2015 WL 5577755, at *9 (D. Or. Sept. 21, 2015) (quoting <u>AE ex rel. Hernandez v. Cnty. of Tulare</u>, 666 F.3d 631, 637 (9th Cir. 2012) (explaining that after <u>Twombly</u> and <u>Iqbal</u>, allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts[.]")).  <u>Monell</u> liability claims must, like other claims, satisfy the current <u>Twombly/Iqbal</u> pleading standard and contain sufficient underlying facts to give fair notice to the defendant.  <u>Gregory</u>, 2015 WL 5577755, at *9.  I agree with Judge Brown.

municipality must include the existence of a policy or custom underlying the conspiracy, that has to be so." Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1330 (11th Cir. 2015) (emphasis added). As the District of New Jersey explained, a municipality is not liable for a conspiracy "unless an official policy or custom underlies the conspiracy." Forrest v. Corzine, No. CV 09-1555 (RBK/JS), 2015 WL 6175360, at *9 (D.N.J. Oct. 20, 2015) (explaining that holding "otherwise would subject [the city] to § 1983 liability on a theory of respondeat superior" which is "prohibited"). The existence of a strategy or conspiracy alone does not establish Monell liability. The strategy or conpsiracy must be based on a custom or practice. The previous decisions in this case on this issue did not err in concluding there were sufficient facts to allege the existence of a strategy or conspiracy. But, none of the decisions analyzed the determinative question of whether there was a custom or practice underlying the conspiracy. Alleging the fact of a strategy composed of several acts may make it something more than isolated decision-making, but it alone does not constitute a custom under Monell.

Municipalities cannot be liable under § 1983 for the unconstitutional acts of their employees based on a respondeat superior theory. Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1232 (9th Cir. 2011) (explaining holding of Monell). Instead, municipal liability must be based on actions which ""implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or where the action is made 'pursuant to governmental custom'" even if that custom has not been formally approved by the body. Jackson v. Barnes, 749 F.3d 755, 762–63 (9th Cir. 2014) (quoting Monell, 436 U.S. at 690-91), cert. denied, 135 S. Ct. 980 (2015).

Under the unofficial custom or practice theory, "'an act performed pursuant to a "custom"

14 - OPINION & ORDER

that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law[.]'" Hunter, 652 F.3d at 1233 (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)). As the Hunter court explained, "'liability for improper custom may not be predicated on isolated or sporadic incidents[.]'" Id. (quoting Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)). Instead,

> "[t]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Monell, 436 U.S. at 691, 98 S. Ct. 2018); see also Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir. 2008) (holding that municipal liability may be established "by showing 'a longstanding practice or custom which constitutes the standard operating procedure of the local government entity'" (quoting Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 984–85 (9th Cir. 2002)))[.]

Id.

Put another way, "[l]iability for improper custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy[.]" Trevino, 99 F.3d at 918 (9th Cir. 1996); see also Engelbrecht v. Clackamas Cnty., No. CV05-665-PK, 2006 WL 2927244, at *7 (D. Or. Oct. 11, 2006) (to establish municipal liability, the unofficial custom or practice must be "widespread" and "so pervasive and well settled that it constitutes a custom or usage with the force of law"); Ninth Circuit Civil Model Jury Ins. No. 9.5 ("'Longstanding practice or custom' means any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure of the defendant[.]").

To qualify as an unconstitutional unofficial custom or practice under Monell, the custom

or practice must be directed to more than one person or concern more than one incident.  City of

Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion) ("Proof of a single incident

of unconstitutional activity is not sufficient to impose liability" against a municipality absent

conduct by a policymaker); Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A

plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the

occurrence of a single incident of unconstitutional action by a non-policymaking employee");

Richardson v. City of Gladstone, No. 3:14-cv-00588-ST, 2015 WL 569914, at *8 (D. Or. Feb.

10, 2015) (same).

        A conspiracy or strategy whose purpose is to single out a particular individual is

inconsistent with the requirement that the custom or practice be pervasive or widespread.  E.g.,

Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) (en banc) ("A single

incident would not be so pervasive as to be a custom or practice").  Thus, the Fourth Circuit

rejected a municipal liability claim absent evidence of any other instance of similar conduct.

Mitchell v. Aluisi, 872 F.2d 577, 580 (4th Cir. 1989).  And the Eleventh Circuit explained that

"[a] single incident of a constitutional violation is insufficient to prove a policy or custom even

when the incident involves several employees of the municipality."  Craig v. Floyd Cnty., Ga.,

643 F.3d 1306, 1311 (11th Cir. 2011).  In that case, several employees were allegedly

deliberately indifferent to the pretrial detainee plaintiff's serious head injury.  But, the court

concluded that the actions were part of one incident in evaluating a single injury.  Id.  The

plaintiff presented no evidence that the allegedly unconstitutional practices had been used for any

other detainees.  Id.  Thus, his Monell claim failed.

        Here, the condemnation cloud/blight portion of the inverse condemnation claim involves

16 - OPINION & ORDER

a single alleged strategy to "keep property values down and inhibit sales of property within the Sunrise Corridor's proposed right-of-way."  TAC ¶ 44; see also id. ¶ 5 (describing the location of the Sunrise Corridor Project and alleging that Defendant "engaged in a scheme to acquire certain Properties for public use in constructing the Sunrise Corridor Project as cheaply as possible even before the planning of the specific route was completed.").  Different means were allegedly used to accomplish the strategy's goal.  Id. ¶ 44 (listing methods including minimizing or prohibiting development and discouraging potential buyers from acquiring properties in planned right-of-ways).  Various employees allegedly engaged in the "conspiracy to interfere with the use, development, and/or sales by Emmert of any property he owned and owns within Clackamas County."  Id. ¶ 45.  The strategy or conspiracy, which was directed to properties within the Sunrise Corridor Project, has allegedly resulted in Plaintiff being unable to sell, use, and/or develop those particular properties.  Id. ¶ 46 (citing ¶¶ 16, 17, 22-24, 32-42).

Plaintiff alleges a single strategy/scheme/conspiracy to depress property values and inhibit property sales along the Sunrise Corridor Project route which occurred over a period of several years[6] and involved several employees of Defendant.  Although this strategy/scheme/conspiracy did not occur on a single day or with a single employee, it is equivalent to a single incident because it depends on a single coordinated plan.  Additionally, while the TAC does not affirmatively allege that Plaintiff was the sole target of the plan, Plaintiff

---

[6]  With the proposed amendment of the 2011 discovery of this scheme, the TAC now alleges that the scheme/strategy was devised in June 2009 and discovered by Plaintiff in 2011.  It is hard to square the 2009 inception date with several allegations indicating that Defendant's actions occurred before 2009.  E.g., TAC ¶¶ 32-34 (alleging that Plaintiff purchased the 13171 Property in 1997, then in November 2004, Gary Cook and Jonathan Mantay told Plaintiff that Defendant would probably buy it, then other employees continued to tell Plaintiff through 2007 that Defendant would purchase that property).

17 - OPINION & ORDER

makes no allegations that any other property owners were the victim of this

strategy/scheme/conspiracy.[7]  Thus, the inverse condemnation claim asserts a single plan

targeting a single individual.  This is inconsistent with the facts required to establish a

widespread, pervasive custom under Monell.  As a result, the condemnation cloud/blight theory

fails to state a Monell municipal liability claim based on unofficial custom.[8]

     B.     State & Federal Inverse Condemnation Claims:  As-Applied Regulatory
                Takings Theory

As Judge Stewart explained, the regulatory takings theory of liability is distinct from the

condemnation cloud/blight theory.  In the TAC, there are two alleged separate regulatory takings,

each grounded in the contention that Defendant's actions denied access to Plaintiff's properties,

thereby depriving Plaintiff of economically viable use of those properties.

The East Side Light Rail Project and the Sunnyside Road Widening Project are the

specific public transportation projects at issue in the regulatory takings claims.  As to the former,

Plaintiff alleges that since 2000, Defendant "and other governmental bodies, including, but not

---

[7] Moreover, Plaintiff has previously alleged that he was the only person subjected to this treatment.  E.g., Compl. ¶ 56 ("There are no other similarly situated property owners and/or developers within Clackamas County known to Emmert who have been subjected to the same and/or similar interference with their efforts to sell and/or develop their properties.");  May 12, 2015 F&R at 24 (discussing Defendant's argument that Plaintiff's § 1983 constitutional claims appeared to include violations of procedural due process and the Privileges and Immunities Clause of Article IV, but refusing to construe the First Amended Complaint as bringing such claims based on Plaintiff's clarification that the "allegation of conspiracy is not a separate claim, but merely supports his inverse condemnation . . . claim[] under the theory that Clackamas County singled him out for differential treatment.").

[8] Additionally, there are no allegations in the TAC that any unnamed final policymaker was involved in the strategy.  There are no allegations indicating that any named individual was a final policymaker or from which such policymaking responsibility can be inferred from other facts.  Thus, Plaintiff fails to state any type of Monell liability requiring action by a final policymaker.

limited to, [the Oregon Department of Transportation (ODOT)], and the Tri-County Metropolitan Transportation District ('TriMet'), planned, constructed, and completed" the East Side Light Rail Project.  TAC ¶ 7.  Plaintiff's Con Battin Property was "impacted and effectively taken by Defendant for the public use of developing and constructing" the East Side Light Rail Project. Id.  The East Side Light Rail Project resulted in the repositioning of a cul-de-sac which Plaintiff's Con Battin Property had fronted.  Id. ¶ 27.  As a result of the repositioning and the construction of a switching station by TriMet, Plaintiff lost his deeded legal access to the Con Battin Property.  Id.  As a result of the loss of access, he has lost the ability to develop or sell the property and it no longer has any economically viable use or value.  Id. ¶ 29.

The Sunnyside Road Widening Project was also undertaken by Defendant and other governmental bodies including ODOT and Metro between 2000 and 2009.  Id. ¶ 8.  Plaintiff's Sunnyside Road Property was allegedly impacted by Defendant for the public use of developing the Sunnyside Road Widening Project, including the loss of direct access to that property.  Id. Plaintiff also lost certain system development charges he had previously paid.  Id.  As a result of the Sunnyside Road Widening Project, Defendant allegedly took or blocked the only street entrance to the Sunnyside Road Property.  Id. ¶ 30.  As a result of the entrance being blocked, Plaintiff alleges that he has lost the ability to develop or sell the property.  Id. ¶ 31.  Although he does not expressly allege that the lack of access has deprived him of all economically viable use, his allegation that he lost the ability to develop or sell the property is substantially equivalent.  He further alleges that for ten years, he requested that Defendant provide alternative access to the property but Defendant has refused to do so.  Id. ¶ 30.

As to both of these properties, Plaintiff alleges that Defendant's actions in developing the

two transportation projects resulted in the denial of pre-existing access.  Id. ¶ 49 (federal claim),

¶ 53 (state claim).  He contends that taking away access to these properties has violated his rights

under the Fifth and Fourteenth Amendments to the federal constitution and under Article I,

Section 18 and/or Article XI, Section 4 of the Oregon Constitution.  Id. ¶ 49 (federal claim), ¶ 53

(state claim).

Defendant argued in its motion that Plaintiff failed to state a claim as to either of these

properties.  While the arguments are particular to each piece of property, the arguments implicate

a central issue of whether this portion of the federal inverse condemnation claim is ripe.  Before

discussing that issue in more detail, I address Defendant's Monell argument which was not

limited to the condemnation cloud/blight theory.

In support of the federal claim, the TAC fails to allege that the denials of access were

pursuant to an official policy or unofficial custom or practice.  The only allegation of a strategy

or scheme relates to the properties affected by the Sunrise Corridor Project.  TAC ¶¶ 5, 44, 46.

There is one additional general "conspiracy" allegation at Paragraph 45, but when Paragraph 45

is read in conjunction with Paragraphs 44 and Paragraphs 46-48, it is clear that Paragraph 45

relates only the Sunrise Corridor Project.  As Judge Stewart noted, the as-applied regulatory

takings theory is separate from the condemnation cloud/blight theory and Plaintiff, while failing

to adhere to Judge Stewart's recommendation that the two theories be pleaded as separate inverse

condemnation claims, has nonetheless structured the federal inverse condemnation claim so that

Paragraphs 44-48 refer to the condemnation cloud/blight theory and Paragraphs 49-59 refer to the

regulatory takings theory.  Compare TAC ¶ 48 (seeking $16,543,517 for properties allegedly

unconstitutionally taken by Defendant as part of the Sunrise Corridor Project scheme); with ¶ 50

(seeking a separate amount of $1,551,035.50 for the properties allegedly unconstitutionally taken by Defendant by denying access to them as a result of the Eastside Light Right Project and Sunnyside Road Widening Project). Accordingly, the federal regulatory takings claim based on the East Side Light Rail Project and the Sunnyside Road Widening Project fails to state a claim for municipal liability.

As to the arguments tailored to each piece of Property, Defendant argued that the allegations regarding the East Side Light Rail Project's impact on the Con Battin Road Property failed to sufficiently implicate Defendant. In objecting to Judge You's F&R, Defendant notes that its argument was not that the claim was implausible generally, but rather, that the allegations failed "to plead or otherwise link the construction of the Eastside Light Rail Project and its impact on the Con Battin Property to actions by Clackamas County." Def.'s Objs. 30, ECF 85. Instead, Defendant argues, the allegations indicate that TriMet is the culpable actor. Judge You did not specifically address this argument.

In regard to the taking of the Sunnyside Road Property by the Sunnyside Road Widening Project, Defendant argued that the claim was untimely. Judge You recommended denying Defendant's motion to dismiss this portion of the regulatory takings claim because, as noted above, she found that the claim did not accrue until the end of Plaintiff's ten-year period requesting that Defendant provide alternative access to the Sunnyside Road Property. Because under at least one scenario, that ten-year period could have ended within two years of the filing of the claim, it could not be dismissed on a motion to dismiss. Defendant argues that Judge You incorrectly determined when the claim accrued.

These arguments raise issues about whether Plaintiff has sufficiently stated an as-applied

21 - OPINION & ORDER

regulatory takings claim and whether such a claim is ripe.  Regulatory takings claims are divided into two categories:  "facial" and "as-applied" challenges.  "A facial challenge involves 'a claim that the mere enactment of a statute constitutes a taking,' while an as-applied challenge involves 'a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation.'"  Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 686 (9th Cir. 1993) (quoting Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 494 (1987)).  "[T]here is 'an important distinction' between the two types of claims.  Among other things, each raises different ripeness and statute of limitations issues."  Id.

Plaintiff fails to classify the regulatory takings claims as either facial or as-applied.  Judge Stewart properly characterized the theory as an "as-applied" claim because Plaintiff does not challenge the East Side Light Rail Project or Sunnyside Road Widening Project generally or facially, but rather contends that actions by Defendant in implementing those projects resulted in the denial of access to particular pieces of property.

Defendant previously argued that the federal inverse condemnation claim was not ripe. The argument was made in the context of arguing that the Proposed Third Amended Complaint was futile and thus it was not a direct attack on an already-filed pleading.  Defendant contended that allowing Plaintiff to amend would be futile.  One of the futility arguments was that because the Proposed Third Amended Complaint dropped the equal protection claim, the court lacked subject matter jurisdiction.  Defendant noted that without the equal protection claim, the only federal claim remaining in the Proposed Third Amended Complaint was the federal inverse condemnation claim.  Defendant argued that under the Supreme Court case of Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985),

the federal inverse condemnation claim was not ripe and should be dismissed.  As a result,

subject matter jurisdiction which was based solely on the presence of a federal question, no

longer existed.  Additionally, Defendant argued that without such jurisdiction, the Court then

lacked jurisdiction over the supplemental state claims.  Therefore, allowing amendment would be

futile.

Judge Stewart discussed the argument in the context of discussing the equal protection

claim.  Dec. 29, 2015 F&R 5-6 ("Now that Emmert is no longer alleging the equal protection

claim, Clackamas County raises another argument for dismissal based on the lack of subject

matter jurisdiction.").  Judge Stewart rejected the argument.  First, she noted that Williamson had

been weakened following later decisions urging its reconsideration.  Id. (citing San Remo Hotel,

L.P. v. City & Cnty. of S.F., 545 U.S. 323, 348-52  (2005) (Rehnquist, J., concurring)).  Given

that, and its consideration by the courts as a "prudential ripeness rule," she found that the ripeness

issue should not be decided at an early juncture on a motion to dismiss.  Id. at 7 (citing

Guggenheim v. City of Goleta, 638 F.3d 1111, 1116-18 (9th Cir. 2010) (en banc)).

Second, even if the federal inverse condemnation claim were to be dismissed as unripe,

Judge Stewart explained that because Plaintiff voluntarily abandoned the equal protection claim,

the Court properly acquired supplemental jurisdiction over the state claims in the first instance

and thus had discretion whether to keep jurisdiction over those claims.  Id. (distinguishing the

situation where the sole federal claim is dismissed for lack of subject matter jurisdiction in which

case the Court is considered to have never properly acquired supplemental jurisdiction over the

state claims and as a result, does not have discretion to retain them).  Accordingly, she

determined, dismissal of the state claims was not warranted based on the deletion of the equal

protection claim from the Proposed Third Amended Complaint and thus, the futility of the proposed amendments was not apparent.   Id.

Finally, Judge Stewart remarked later, in discussing the pleading of the East Side Light Rail Project and the Sunnyside Road Widening Project and their impact on the Con Battin Property and the Sunnyside Road Property, respectively, that if Plaintiff alleged as-applied regulatory takings claims,

> then he may be charged with knowledge of his constitutional takings claims at the time he lost the ability to develop those [] properties and may not have timely filed those claims.  Clackamas County has not sought dismissal for that reason, but does suggest . . . that these claims are not ripe for review, citing Williamson Cnty., 473 U.S. at 186, 195.  Whether the constitutional claims for these . . . properties can survive challenges based on the statute of limitations and ripeness are significant issues that should not be resolved based on the pending motion.

Id. at 14-15.

Williamson "imposed two ripeness requirements on federal takings claims." Guggenheim, 638 F.3d at 1116.  The first requirement is that the "appropriate administrative agency has made a final decision on how the regulation will be applied to the property at issue." Id. at 1117.  Second, "a property owner who sues for inverse condemnation, claiming that his property was taken without just compensation, generally must seek that compensation through the procedures provided by the state before bringing a federal suit."  Id.

Although Judge Stewart was correct that Williamson has been limited since it was decided, it has not been limited as to as-applied regulatory takings claims.  The first requirement is not uniformly applied to facial challenges.  Id. ("Facial challenges are exempt from the first prong of the Williamson ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation.") (internal quotation marks omitted).  But,

the second requirement continues to apply to both types of regulatory takings claims.  Pringle v. Oregon, No. 2:13-cv-00309-SU, 2014 WL 795328, at *5 (D. Or. Feb. 25, 2014) ("Even a facial claim, alleging a regulatory taking based on the theory that an ordinance takes property without just compensation, is unripe until a property owner has sought compensation through such state proceedings as may be available") (citing Guggenheim, 638 F.3d at 1117-18); see also Guggenheim, 638 F.3d at 1117 ("That is not to suggest that Williamson is dead.  In [a 2004] case, we held that the only cognizable claim was an as applied challenge, so held it was properly dismissed as unripe"; further stating that in another earlier case, "we held that while as applied challenges required Williamson exhaustion, facial challenges sometimes did and sometimes did not.").

Because this is an as-applied claim, Williamson applies.  Thus, to establish the ripeness of the claim, Plaintiff must allege facts showing first, that a final decision has been made and second, that he has sought compensation through the procedures provided by the state before having filed a federal inverse condemnation claim.  None of the complaints filed so far have expressly alleged such facts.  As to finality, although the TAC lacks express allegations as to what Defendant actually did and when its actions caused the denial of access, it is obvious that a "final decision" has been made because first, Plaintiff affirmatively alleges that access has actually been denied and second, both of the projects have been completed.  Thus, the Court can infer from existing allegations that the first Williamson prong has been met.

But, there are no allegations indicating that Plaintiff sought compensation through state procedures.  See, e.g., Hall v. State ex rel. Or. Dep't of Transp., 355 Or. 503, 326 P.3d 1165 (2014) (discussing state inverse condemnation claims).  As Pringle explained,

> Article I, section 18 of the Oregon Constitution provides in part: "[p]rivate property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation . . ." Or. Const., Art. I, § 18. The Oregon Supreme Court has interpreted this provision of the Oregon Constitution to provide a private right of action for a regulatory takings claim. Coast Range Conifers, LLC v. State ex rel. State Bd. of Forestry, 339 Or. 136, 145–46, 117 P.3d 990, 995 (2008).

Pringle, 2014 WL 795328, at *5.  Because Plaintiff fails to allege that he sought compensation through available State procedures, and he does not allege that these procedures are unavailable or inadequate, his federal inverse condemnation claim is not ripe.  Levald, 998 F.2d at 687 ("a plaintiff cannot bring a section 1983 action in federal court until the state denies just compensation. A claim under section 1983 is not ripe—and a cause of action under section 1983 does not accrue—until that point.").

Although Judge Stewart found that the ripeness issue was premature on a motion to dismiss, many cases have disposed of unripe inverse condemnation claims at this stage.  E.g., Pringle, 2014 WL 795328, at * 5; Fenton v. City of Portland, No. CIV. 09-1240-ST, 2010 WL 1257604, at *2 (D. Or. Feb. 16, 2010) (recommending dismissal of § 1983 federal inverse condemnation claim for failure to seek compensation through available state procedures), adopted by J. King, 2010 WL 1257605 (D. Or. Mar. 19, 2010); see also Equity Lifestyle Props. v. Cnty. of San Luis Obispo, 548 F.3d 1184, 1191–92 (9th Cir. 2008) (affirming dismissal of premature federal takings claims where the plaintiff had not first sought compensation through the state-provided process); Carson Harbor Village Ltd. v. City of Carson, 353 F.3d 824 (9th Cir. 2004) (same); Hacienda Valley Mobile Estates v. City of Morgan Hill, 353 F.3d 651 (9th Cir. 2003) (same).  I see no reason not to dismiss the claim.

I address the ripeness issue even though Defendant did not re-assert this argument in the

current motion attacking the TAC.  Given that Defendant raised it as to the Proposed Third Amended Complaint, it should come as no surprise to Plaintiff.  But, more importantly, it directly relates to Judge You's finding that the portion of the regulatory takings claim based on the impact of the Sunnyside Road Widening Project on the Sunnyside Road Property, should not be dismissed as untimely.

"Determining when the cause of action accrues is merely the corollary to the ripeness inquiry."  Levald, 998 F.2d at 687.  Because a cause of action does not accrue in the first instance until it is ripe, Judge You implicitly found that the as-applied takings claim, at least as to the Sunnyside Road Property, was ripe.  But, Judge You did not engage in a ripeness analysis under Williamson and thus, she did not acknowledge Plaintiff's failure to allege that it had sought compensation through state procedures.  Judge You cited no law supporting her proposition that the end of the ten-year period in which Plaintiff sought alternative access to the property was the appropriate point of accrual of the claim.  She also did not acknowledge Judge Stewart's suggestion that the claim accrued when Plaintiff learned that access was denied.  Access to the property was denied at least as late as 2009 when the Sunnyside Road Widening Project was completed and it is the denial of the then-existing access that allegedly caused the devaluation of the property.  Defendant's alleged breach of subsequent promises to provide *alternative* access could possibly support other claims, but the TAC makes plain that Plaintiff knew of the denial of access and suffered harm from that denial no later than 2009.  As such, the as-applied regulatory takings claim as to the Sunnyside Road Property is either unripe for failing to comply with

Williamson, or is time barred.[9]

Finally, I respectfully disagree with Judge You's determination that the regulatory takings portion of both the state and federal inverse condemnation claims stated a plausible claim for relief.  The claims are pleaded in such a way that it is impossible to tell exactly which governmental body did exactly what and how that caused the denial of access.  For example, in the allegations regarding the impact of the East Side Light Rail Project on the Con Battin Road Property, Plaintiff first alleges that Defendant, along with other governmental bodies, planned, constructed, and completed the project.  TAC ¶ 7.  There is no allegation specific to Defendant and no allegation that as part of the planning process, Defendant enacted regulations, ordinances, or other rules.  But, the project did not materialize out of thin air and the actual construction of the project and the redesign of the cul-de-sac was authorized by some governmental body at some point in time.  The TAC fails to allege these facts.

The specific allegation reciting the movement of the cul-de-sac, which had been to the north of Plaintiff's property, contends that:

During the construction of the Eastside Light Rail Project and specifically to

---

[9]  Both parts of the as-applied regulatory takings claim (the Con Battin Road Property and the Sunnyside Road Property) are unripe under Williamson.  While Defendant did not make a timeliness argument as to the Con Battin Road Property, it appears that absent any applicable tolling agreement, the Con Battin Road Property is also time-barred if it is somehow determined to be ripe.  Although Plaintiff does not expressly allege when the East Side Light Rail Project was complete, TriMet's "Fact Sheet" regarding the rail project states that construction was complete and service began in September 2009.  I-205/Portland Mall MAX Green Line Project Fact Sheet July PDF - available at https://trimet.org/publications/; see also https://trimet.org/history/greenline.htm (showing opening date of September 12, 2009).  Plaintiff also alleges that a potential buyer made an earnest money offer in 2009 but then canceled the sale in January 2010 because of the lack of access.  TAC ¶¶ 28, 29.  Thus, access to the Con Battin Property as a result of the repositioning of the cul-de-sac must have been impeded by that time which is also more than two years before the claim was filed.

facilitate the construction of the Eastside Light Rail Project, the cul-de-sac was
repositioned to lay to the south.  The re-design of the cul-de-sac caused the
ownership of the small piece of land formerly covered by the cul-de-sac to revert
to the state of Oregon.  Tri-Met then constructed a switching station to the north
of [the] new [] cul-de-sac on the reverted land.  What had previously been
frontage for Emmert's Con Battin Road Property became state property with a Tri-
Met switching station constructed upon it.  Emmert now has no deeded legal
access to the Con Battin Property.

Id. ¶ 27.  The use of the passive voice leaves no named actor responsible for the re-design and re-
positioning of the cul-de-sac.  The only actor mentioned is TriMet which constructed the
switching station on the property.  Thus, the allegations fail to allege what Defendant actually did
and when.

The allegations regarding the Sunnyside Road Property suffer from the same problem.
Defendant, along with other governmental bodies, planned, constructed, and completed the
Sunnyside Road Widening Project.  Id. ¶ 8.  There is no allegation indicating what Defendant, as
opposed to the other governmental bodies, actually did, or when.  While Defendant "effectively"
took the property, it is not clear what it did to cause the loss of access.  Id.; see also id. ¶ 30
(alleging only that Defendant "took and/or blocked" the entrance to the property).  Like the
allegations for the Con Battin Road Property, no allegations make clear whether Defendant
passed an ordinance, adopted a regulation, or otherwise authorized the conduct causing the
access to be blocked.

Without such allegations, both the federal and state as-applied regulatory takings claims
fail to comply with Iqbal/Twombly.  To survive a motion to dismiss, Plaintiff must do more than
allege the "grounds of his entitlement to relief."  Twombly, 550 U.S. at 555 (internal quotation
marks and brackets omitted).  He cannot rely on "labels and conclusions[] and a formulaic

recitation of the elements of a cause of action[.]" Id.   The factual allegations must allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Here, while Plaintiff may have alleged a "plausible" claim that the "regulatory change in the access to these two properties substantially interfered" with his ability to sell them, Oct. 17, 2016 F&R 10, he has not alleged facts "above the speculative level" that it was *Defendant's* regulatory actions that caused the alleged harm. See Calif.-Nev. Annual Conf. of the Methodist Church v. City & Cnty. of S.F., 74 F. Supp. 3d 1144, 1162 (N.D. Cal. 2014) (explaining that "any regulatory takings claim impliedly must be linked to discrete governmental conduct or action, such as the application of a governmental decision vis-a-vis a particular piece of property"; dismissing claim for failing to allege discrete governmental conduct or action).

In summary, both theories (condemnation cloud/blight and as-applied regulatory takings) of the federal § 1983 inverse condemnation claim fail to sufficiently allege municipal liability. The as-applied regulatory takings portion of the federal claim is unripe for failing to allege that Plaintiff pursued state remedies for compensation before filing the federal claim.  And, the as-applied regulatory takings portion of both the state and federal inverse condemnation claims fails to sufficiently allege facts showing Defendant's liability for any harm under Iqbal/Twombly.  The claims are dismissed.

C.  Fraud Claim

Defendant objects to Judge You's recommendation to allow Plaintiff to amend Paragraphs 44 and 45 to plead a 2011 discovery date for the fraud claim.  Those paragraphs are part of the federal inverse condemnation claim, not the fraud claim.  Plaintiff responds to this point by

noting that he has incorporated them by reference into the fraud claim.  TAC ¶ 55 (incorporating

Paragraphs 1-54).  But, the fraud claim still alleges that Plaintiff sent a tort claim notice

regarding the fraud claim to Defendant on October 8, 2010.  Id. ¶ 56.  With the 2011 discovery

date allegations related to the federal inverse condemnation claim incorporated into the fraud

claim, there is now an irreconcilable conflict created by allegations that Plaintiff sent a tort claim

notice before the tort was allegedly discovered.

Addressing Defendant's contention that the 2011 discovery date is inconsistent with the

October 8, 2010 tort claim notice date, Plaintiff, in its response to Defendant's objections to

Judge You's F&R, *for the first time* indicates that there are actually *two* schemes, not one.

Despite having filed a Complaint, a First Amended Complaint, a Second Amended Complaint, a

Proposed Third Amended Complaint, and a Third Amended Complaint, despite having

responded to four motions to dismiss, despite having filed a motion for leave to amend, and

despite having filed a response to objections to a previous F&R, Plaintiff never before articulated

this theory of his case.

In the response to the objections, Plaintiff states

> plaintiff . . . has negotiated and otherwise engaged with defendant, and its
> operatives, over the course of many years, toward what plaintiff was [led] to
> believe was a common goal.  Plaintiff's realization of defendant's ultimate fraud
> did not become known until later = and the discovery came in two distinct
> incidents.  The first incident triggered plaintiff's discovery of the fraud involving
> the four properties but not the broader scheme relating to all properties.  As
> pleaded at paragraph 56 of the Third Amended Complaint . . ., Kenneth C.
> Bauman reached the conclusion that there was a civil conspiracy to engage in the
> fraudulent conduct relating to defendant's false promises to purchase [the four
> properties alleged as the basis for the fraud claim].  It was only after Mr. Bauman
> reached that conclusion that plaintiff became aware of the fact that defendant was
> not truly waiting for money from ODOT to pay plaintiff.  Plaintiff's discovery
> triggered his direction to Mr. Bauman to give notice of the fraud claim to Scot

> Sideras, one of Clackamas County's lawyers. The second discovery (that we now
> know did not occur until 2011) pleaded at paragraphs 44 and 45 of the Third
> Amended Complaint . . . . as proposed to be amended does not relate specifically
> to the false promises to purchase the properties included in the fraud claim.
> Rather, it relates more generally to all the properties in that it disclosed
> defendant's overall strategy to keep property values down and inhibit sales of
> property within the Sunrise Corridor's proposed right-of-way.

Pl.'s Resp. to Objs. 11, ECF 86.

While Plaintiff frames this as two different discovery dates, the allegations, combined

with the argument, indicate that it is more properly understood as two different *schemes*. That is,

the fraud claim is based, as currently alleged, on a conspiracy formed "not later than November

2008" for the purpose of misleading Plaintiff into believing that Defendant would purchase the

four properties. TAC ¶ 56. This "property-purchase-misrepresentation conspiracy" was

allegedly discovered by Bauman and then Plaintiff in 2010, resulting in the October 8, 2010 tort

claim notice. Id.

The federal inverse condemnation claim, in contrast, is based, as is pleaded in the TAC

with the proposed amendments, on a strategy formed "on or about June 2009" to keep property

values down and inhibit property sales in the Sunrise Corridor's proposed right-of way. Id. ¶ 44;

Pl.'s Resp. 5 n.1 (as proposed, the amended paragraph would read: "Emmert learned in 2011 that

on or about June 2009 Defendant had devised a strategy . . . ."); Id. ¶ 45; Pl.'s Resp. 5 n.1 (as

proposed, the amended paragraph would read: "Emmert learned in 2011 that on or about June

2009 Defendant's employees . . . . engaged in and continued to engage in a conspiracy to interfere

with the use, development, and/or sales by Emmert of any property he owned and owns within

Clackamas County"). This June 2009 strategy was then discovered in 2011.

Because of the irreconcilable conflict between the 2011 discovery date and the 2010 tort

claim notice allegation, it is futile to allow Plaintiff to amend the TAC with the 2011 discovery

date allegations proposed for Paragraphs 44 and 45 as a way to satisfy the requirement that he

more specifically plead the discovery date of the fraud claim.   Plaintiff may amend any newly-

filed pleading with the 2011 discovery date allegations, but those are limited to allegations

supporting the inverse condemnation claims only.   The fraud claim as pleaded in the TAC fails to

cure the previously-discussed deficiencies regarding discovery-date allegations.   Thus, it is

dismissed.

D.   Leave to Amend

As Judge You noted in the October 17, 2016 F&R, Federal Rule of Civil Procedure 15

states that the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ.

P. 15(a)(2).   The district court has discretion whether to allow amendment.  Tracht Gut, LLC v.

L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC), 836 F.3d 1146, 1151 (9th Cir.

2016) ("'the grant or denial of an opportunity to amend is within the discretion of the District

Court'") (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Exercise of that discretion is guided by four factors.  Leave need not be granted where the

amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue

delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d

946, 951 (9th Cir. 2006).  Futility can, by itself, justify denial of a motion for leave to amend.

Gonzalez v. Planned Parenthood of L.A., 759 F.3d 1112, 1116 (9th Cir. 2014), cert. denied, 135

S. Ct. 2313 (2015)..

While leave should ordinarily be freely given, the "[t]he district court's discretion to deny

leave to amend is particularly broad where a plaintiff previously has amended the complaint."

33 - OPINION & ORDER

World Wide Rush, LLC v. City of L.A., 606 F.3d 676, 690 (9th Cir. 2010); see also Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (district court did not abuse discretion in denying leave to amend when the plaintiffs had "ample opportunity to properly plead a case and have failed to do so" and the plaintiffs previously failed to follow specific instructions from the court on how to amend the complaint); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to [his] claims, the district court's discretion to deny leave to amend is particularly broad.") (internal quotation marks and brackets omitted).

1. Inverse Condemnation Claim

As made clear in this Opinion, both the cloud condemnation/blight theory and the regulatory takings theory portions of the federal inverse condemnation claim fail to plead sufficient municipal liability. The regulatory takings theory portion of the claim fails to establish that it is ripe. Additionally, the regulatory takings theory portion of both the federal and state inverse condemnation claims fails to allege Defendant's conduct with sufficient particularly to satisfy federal pleading standards.

Although Plaintiff has amended his complaint several times and Judge Stewart expressly allowed only "one, final opportunity," which Plaintiff has now exercised, I give Plaintiff leave to amend the inverse condemnation claims one additional time. I do so because to date, none of the decisions issued have concluded that the Monell allegations in support of the federal claim were insufficient, that the regulatory takings portion of the federal claim was not ripe, or that the allegations regarding Defendant's actions were insufficient. Given that, Plaintiff is allowed a final opportunity to replead these claims in accordance with the discussion in this Opinion.

34 - OPINION & ORDER

2. Fraud Claim

In contrast to the inverse condemnation claims, Plaintiff has been given previous opportunities to amend the fraud claim. Judge Hubel noted Plaintiff's concession that the fraud claim as pleaded in the Complaint failed to comply with Rule 9(b). In her May 12, 2015 F&R, Judge Stewart agreed with Defendant that Plaintiff's First Amended Complaint failed to allege the discovery date of the fraud. In her December 29, 2015 F&R discussing the Second Amended Complaint and Proposed Third Amended Complaint, Judge Stewart again agreed with Defendant that the fraud claim in the proposed pleading still failed to affirmatively plead the date of discovery sufficient to satisfy Rule 9 or to allege compliance with the OTCA. And, Judge You, in assessing the Third Amended Complaint, agreed with Defendant that once again, the allegations regarding the discovery date were inconsistent and failed to sufficiently allege the discovery date.

For the reasons explained above, allowing the amendment considered by Judge You would be futile. And, while Plaintiff might be able to restructure the pleading and amend it to eliminate the confusion about two schemes and two discovery dates, and more expressly plead the existence of two different strategies with two different discovery dates, I do not allow such an amendment. First, Plaintiff has not expressly requested this amendment. Second, Plaintiff has been given multiple chances to satisfactorily plead the fraud claim and has failed to do so. Third, the articulation of a two strategy/two discovery date theory comes almost three and one-half years after the first Complaint was filed.[10] This suggests undue delay by Plaintiff in ascertaining

---

[10] The Complaint was filed July 31, 2013 and the Response to Defendant's Objections to Judge You's F&R was filed November 18, 2016. ECF 1, 86.

35 - OPINION & ORDER

relevant facts and articulating theories.  For these reasons, I exercise my discretion to dismiss the fraud claim without leave to amend.

CONCLUSION

The Court ADOPTS IN PART Magistrate You's Findings & Recommendation [83]. Defendant's Motion to Dismiss the Third Amended Complaint [66] is granted as follows:  (1) the breach of contract claim is dismissed with prejudice; (2) the federal inverse condemnation claim is dismissed with leave to amend consistent with this Opinion; (3) the state inverse condemnation claim is dismissed with leave to amend consistent with this Opinion; and (4) the fraud claim is dismissed with prejudice.

Any amended pleading is due within fourteen (14) days of the date of this Opinion. Because of the age of the case and the need for efficiency in resolving the dispute, the case will be reassigned to me.

IT IS SO ORDERED.

DATED this ____12____ day of __January__, 2017.


_____
MARCO A. HERNANDEZ
United States District Judge

36 - OPINION & ORDER