IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRY W. EMMERT, sometimes
doing business under the name EMMERT
DEVELOPMENT COMPANY,

        Plaintiff,

        v.

CLACKAMAS COUNTY,

        Defendant.

No. 3:13-cv-01317-HZ

OPINION & ORDER

Hollis K. McMilan
HOLLIS K. MCMILAN, P.C.
1650 N.W. Naito Pkwy., Suite 125
Portland, Oregon 97209

Kenneth C. Bauman
1406 S.W. Upland Drive
Portland, Oregon 97221

    Attorneys for Plaintiff

/ / /

1 - OPINION & ORDER

Stephen L. Madkour
CLACKAMAS COUNTY COUNSEL
Alexander Gordon
ASSISTANT CLACKAMAS COUNTY COUNSEL
Office of Clackamas County Counsel
2051 Kaen Road
Oregon City, Oregon 97045-1819

      Attorneys for Defendant

HERNANDEZ, District Judge:

In his Fourth Amended Complaint (FAC), Plaintiff brings federal and state claims of inverse condemnation. Defendant moves to dismiss, arguing that Plaintiff fails to state a claim. I agree with Defendant that Plaintiff's 42 U.S.C. § 1983 federal inverse condemnation claim must be dismissed. Further, I dismiss it with prejudice because Plaintiff is unable to articulate a theory of relief entitling him to proceed. I also decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

The background of the dispute and a thorough discussion of the procedural history are recited in detail in my January 12, 2017 Opinion which partially adopted Judge You's October 17, 2016 Findings & Recommendation recommending that Defendant's motion to dismiss the Third Amended Complaint (TAC) be granted in part and denied in part. Jan. 12, 2017 Op. & Ord. 2-12, ECF 87. The January 12, 2017 Opinion dismissed Plaintiff's breach of contract and fraud claims with prejudice. Further, the federal inverse condemnation claim was dismissed for failure to sufficiently allege a custom or practice under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Id.* at 13-18, 20-21. I also concluded that the portion of the inverse condemnations claims which appeared to arise under an "as-applied regulatory takings" theory were not ripe as alleged and failed to assert a plausible claim for relief because of the lack of

allegations implicating Defendant's particular regulatory action. *Id.* at 18-30. Despite Plaintiff already having had several opportunities to plead viable claims, and despite previous admonitions about giving Plaintiff only one more chance to amend, I allowed Plaintiff an additional attempt because no prior decision had discussed some of the reasons for my conclusions.

In response, Plaintiff filed the FAC which Defendant argues fails to cure the defects explained in the January 12, 2017 Opinion. Defendant's motion[1] primarily targets the *Monell* allegations and the ripeness allegations. Because I agree with Defendant on those issues, I do not discuss other arguments Defendant raises.

I. Standards

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett–Packard Co.*, 668

---

[1] The briefing on the motion reveals a spat between the parties as to whether Defendant's motion was timely filed. The FAC was filed on January 31, 2017. Defendant's response to the FAC was due with fourteen days of service. Fed. R. Civ. P. 15(a)(3). The motion was filed February 16, 2017, two days after Plaintiff asserts it was due. The motion was timely filed under this Court's then-applicable Local Rule of Civil Procedure 6 which extended a deadline by three days to allow for service, even when service was by electronic means. Although the December 1, 2016 amendments to the Federal Rules of Civil Procedure eliminated the extra three days when service is by electronic means, *see* Federal Rules of Civil Procedure 5(b) and 6(d), this Court's Local Rules were not amended to conform to the new Federal Rules until March 1, 2017. Thus, at the time Defendant filed its motion, this Court still granted the extra three days for filing for service, even when service was by electronic means.

F.3d 1136, 1140 (9th Cir. 2012). However, the court need not accept unsupported conclusory allegations as truthful. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.*(citations and footnote omitted). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

II. *Monell*

As I explained in the January 12, 2017 Opinion, municipalities cannot be liable under § 1983 for the unconstitutional acts of their employees based on a respondeat superior theory. *Id.* at 14 (citing *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011)). Instead, municipal liability for an alleged constitutional violation by an employee is allowed only "when an employee is acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker." *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (citing *Monell*, 436 U.S. at 694), *amended*, 776 F.3d 1020 (9th Cir. 2015). If relying on the "final policymaker" prong of liability, the final policymaker must have actually committed the alleged constitutional violation, or must have either delegated that final policymaking

authority to, or ratified the decision of, a subordinate. *Ulrich v. City & Cty. of S.F.*, 308 F.3d 968, 985 (9th Cir. 2002); *Gregory v. City of Newberg*, No. 3:15-cv-00473-BR, 2016 WL 1069053, at *3 (D. Or. Mar. 17, 2016).

In every pleading thus far, Plaintiff's theory of relief for the inverse condemnation claims has been grounded in Plaintiff's assertion that Defendant devised a strategy or conspiracy to suppress property values and inhibit property sales of several pieces of property owned by Plaintiff ("the Properties"), within the Sunrise Corridor Project's proposed right-of-way. Judge Stewart and Judge You rejected Defendant's argument that Plaintiff had failed to plead facts establishing *Monell* municipal liability. They concluded that Plaintiff had sufficiently alleged conduct consistent with a strategy and not just relied on facts showing isolated decision-making.

As I explained in my January 12, 2017 Opinion, that conclusion was not necessarily incorrect. But, it did not go far enough. Jan. 12, 2017 Op. & Ord. 13-14. The existence of a strategy or conspiracy alone does not establish *Monell* liability. *Id.* Instead, the alleged strategy or conspiracy must be based on a custom or longstanding practice. The determinative question is whether there were allegations of a custom or longstanding practice underlying the alleged conspiracy or strategy. I concluded that there were no such allegations in the TAC and thus, the federal inverse condemnation claim had to be dismissed. *Id.* at 13-18 (concluding that Plaintiff's TAC alleged a single strategy, scheme, or conspiracy to depress property values and inhibit property sales along the Sunrise Corridor Project route and was at best a single plan targeting a single individual; accordingly, the pleading did not allege a widespread, pervasive custom required under the custom/practice prong of *Monell* liability).

Judge You had found, and I agreed, that Plaintiff had not asserted municipal liability

based on the adoption of an express policy. *Id.* at 13. I further noted that there were no allegations in the TAC that any unnamed final policymaker was involved in the strategy, scheme, or conspiracy and no allegations from which final policymaking responsibility could be inferred. *Id.* at 18 n.8. There were also no facts asserted as to any type of ratification theory. Therefore, none of the recognized avenues of *Monell* liability were pleaded and the claim could not survive.

In the FAC, Plaintiff repeats many allegations that were in the TAC supporting the same basic theory of the inverse condemnation claims. For example, in the TAC, Plaintiff alleged that "Defendant, in collaboration with other governmental bodies," planned the Sunrise Corridor Project. TAC ¶ 5, ECF 63. That allegation is repeated verbatim in the FAC. FAC ¶ 5, ECF 93. In the TAC, Plaintiff then alleged that:

> Defendant, acting through the Development, Disposition and Acquisition department ("DDA"), engaged in a scheme to acquire certain Properties for public use in constructing the Sunrise Corridor Project as cheaply as possible even before the planning of the specific route was completed.

TAC ¶ 5. The identical allegation is in the FAC. FAC ¶ 5.

The TAC then alleged that

> [t]his scheme included official actions including formulation of strategies, and pursuit of policies such as instructing the planning department staff to suppress property values by discouraging buyers from purchasing the Properties and/or thwarting Plaintiff's attempt to use the Properties in a manner that would produce any economic benefit.

TAC ¶ 5. The FAC changes this allegation slightly. Plaintiff still starts with "[t]his scheme included official actions," but instead of following with "including formulation of strategies," the FAC states "such as formulation of stratgies[.]" FAC ¶ 5. Then, while the TAC alleged the "pursuit of policies" including instructing the planning staff to suppress property values, the FAC

6 - OPINION & ORDER

reads:

> This scheme included official actions such as formulation of strategies, and, *upon information and belief*, the *adoption and* pursuit of *a formal government policy, articulated by Planner Mike McAllister to Principal Planner Ron Weinman*, *directing* the planning department staff to suppress *the value of certain properties, including the Properties*, by discouraging buyers from purchasing the Properties, and/or thwarting *owners'* [sic] including Plaintiff, from attempting to use *properties*, including the Properties in a manner that would produce any economic benefit.

FAC ¶ 5 (emphasis added to highlight changes from TAC). It is clear that just as in the earlier pleadings, the underlying theory of a strategy, scheme, or conspiracy by Defendant to suppress property values in the Sunrise Corridor Project right-of-way is the cornerstone of Plaintiff's current inverse condemnation claims. Some changes from the TAC to the FAC broaden the allegation to include that Plaintiff's properties were not the sole target of the scheme. The more notable change is the addition of the "upon information and belief" allegation that the strategy, scheme, or conspiracy included the adoption of a formal governmental policy, articulated by one planner to a principal planner, directing planning department staff to suppress property values.

Although neither the TAC nor the prior pleadings had expressly alleged a custom and practice theory of *Monell* liability, no other theory was apparent from the face of the pleadings. For example, in her May 12, 2015 Findings & Recommendation, Judge Stewart construed the First Amended Complaint's allegations that Defendant had a "strategy to keep property values down and inhibit sales of property" as an allegation of a "coordinated custom" in support of the custom and practice theory. May 12, 2015 Findings & Rec. 14-15 (D. Or. May 12, 2015), ECF 39, adopted July 1, 2015, ECF 44. Judge Stewart noted the absence of any allegation of an express policy. *Id.* And, she rejected Plaintiff's argument made opposing Defendant's motion to

7 - OPINION & ORDER

dismiss the First Amended Complaint, that *Monell* liability was also based on the ratification and decisions of an official policymaker. *Id.* at 15 (stating "neither theory is apparent from the face of the allegations"). Similarly, Judge You also found that there were no allegations of an express policy but the allegations in the TAC supported a custom or practice theory of *Monell* liability. Oct. 17, 2016 Findings & Rec. 7-8 (D. Or. Oct. 17, 2016), ECF 83, adopted in part Jan. 12, 2017, ECF 87.

As I explained in my January 12, 2017 Opinion, the allegations failed to establish that the strategy, scheme, or conspiracy instructing planning department staff to suppress property values was attributable to a widespread, established practice or custom of Defendant's. Thus, to the extent these allegations in the TAC are repeated in the FAC, they similarly fail to sufficiently allege *Monell* liability. Moreover, the attempt to broaden the allegations to contend that the strategy, scheme, or conspiracy was aimed at properties owned by others does not cure the insufficiency. The allegations still refer to a *single* plan related to the Sunrise Corridor Project. Although the strategy now allegedly involved additional properties, the strategy, scheme, or conpsiracy is still the equivalent of a single incident because it is a "single coordinated plan." Jan. 12, 2017 Op. & Ord. 17.

The addition of allegations referring to the pursuit and adoption of a "formal government policy" further reinforces the lack of widespread custom or practice allegations. Because the allegations refer to a single act (the adoption and pursuit of a formal government policy articulated by McAllister to Weinman), they are inconsistent with a widespread custom and practice theory. And, later in the FAC, Plaintiff refers to "Defendant's formal policy to keep property values down and inhibit development and/or sales of property within the Sunrise

8 - OPINION & ORDER

Corridor's various proposed right-of-ways[.]" FAC ¶ 26. The single "formal policy" allegation is not compatible with a widespread custom or practice theory. Thus, I consider the allegations in the FAC as alleging *Monell* liability based on an express policy or perhaps a final policymaker theory.

Defendant argues that the allegations fail to establish municipal liability because they are conclusory and do not meet *Iqbal/Twombly* pleading standards. Plaintiff contends that he need allege only that individual conduct conformed to an official policy, custom, or practice. Pl. Resp. 6, ECF 95. Although I rejected this argument in my January 12, 2017 Opinion, Plaintiff raises it again. Jan. 12, 2017 Op. & Ord. 13 n.5.

Plaintiff provides the following quote which Plaintiff attributes to a 2016 Opinion by Judge Brown:

> "In *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012), the Ninth Circuit addressed the level of pleading sufficient to state a claim under *Monell* in light of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The court noted: In the past, our cases have not required parties to prove much detail at the pleading stage regarding such a policy or custom. "In this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (citation and internal quotation marks omitted)."

Pl.'s Resp. 6 (quoting *Gregory v. City of Newberg*, 2016 U.S. Dist. LEXIS 34500, at *9).

There are problems with the quote as well as with Plaintiff's reliance on it for the proposition that to survive a motion to dismiss, Plaintiff need allege nothing more than an individual's conduct conformed to official policy, custom, or practice. First, the language after

"[t]he court noted" is from the Ninth Circuit's opinion in *Hernandez*, which Judge Brown quoted. It is *not* original to Judge Brown's Opinion.

Second, and more importantly, Plaintiff fails to include the entire *Hernandez* passage quoted by Judge Brown which actually *rejects* the proposition Plaintiff argues for here. The entire passage from Judge Brown's *Gregory* opinion, properly quoted, provides:

> In *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012), the Ninth Circuit addressed the level of pleading sufficient to state a claim under *Monell* in light of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The court noted:
>
>> In the past, our cases have not required parties to prove much detail at the pleading stage regarding such a policy or custom. "In this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." [*Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)] (citation and internal quotation marks omitted)."
>
>> * * *
>
>> [After *Twombly* and *Iqbal*, however,] . . . "to be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."
>
> *Hernandez*, 666 F.3d at 637 (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)).

*Gregory*, No. 3:15-cv-00473-BR, 2016 WL 1069053, at *4 (D. Or. Mar. 17, 2016) (ellipses and

brackets in *Gregory*).

In *Gregory*, Judge Brown went on to hold that while the allegations of *Monell* liability, which included that the chief of police was a final policymaker for the city and knowingly ratified and approved of the use of excessive force, or alternatively, that the city had a custom, practice, or unwritten policy of excessive force, may have satisfied the pre-*Twombly/Iqbal* standard, they did not include sufficient facts to satisfy the current post-*Twombly/Iqbal* standard as recognized in *Hernandez*. *Id.* Clearly, Plaintiff's contention that to survive a motion to dismiss directed to municipal liability allegations, Plaintiff need allege only that individual conduct conformed to official policy, custom, or practice, is not supported by *Gregory* or Ninth Circuit cases and it must be rejected.

I agree with Defendant that the allegations of municipal liability in the FAC are insufficient under *Iqbal/Twombly*. The relevant allegations are that the scheme, strategy, or conspiracy to suppress property values included (1) "official actions such as formulation of strategies"; (2) the adoption and pursuit of a formal government policy, articulated by McAllister to Weinman, directing planning staff to suppress property values; and (3) a "formal policy to keep property values down and inhibit development and/or sales of property" which included but was not limited to "enacting regulations" and "undertaking activities" that discouraged property owners from making economically viable use of their properties by minimizing or prohibiting development or discouraging potential buyers. FAC ¶¶ 5, 26. The first allegation is conclusory without specific facts such as what official actions were taken by whom or when, how that led to the formulation of strategies, and what exact strategies were formulated. The third allegation is again conclusory by referring to a generic "formal policy" without stating when it was adopted or

11 - OPINION & ORDER

by what body or person.

The second allegation comes closer but is still incomplete. McAllister's articulation of a policy to Weinman does not specify anything more than the "articulation" of a policy. The fact that one planner "articulates" a policy to a principal planner does not, without more, establish municipal liability. Additionally, there is no allegation, even a conclusory one, that either McAllister or Weinman is a final policymaker for planning and development policy. And, there are no allegations as to when this articulated policy was adopted or how it became "formal."

As Defendant notes, the allegations lack any assertion that the claimed official or formal policy was a policy statement, an ordinance, a regulation, or a decision adopted and promulgated by the officers of Clackamas County. Further, "[t]here are no allegations that any Clackamas County official, let alone one with final policymaking authority as to the acquisition of property for public use by Clackamas County" was involved in adopting the policy or in carrying out the complained of conduct. Def. Reply 20, ECF 96. Plaintiff's assertions do not contain sufficient allegations of underlying facts to support a municipal liability claim.

III. *Ripeness*

The previous decisions in this case suggested that Plaintiff's inverse condemnation claims contained separate theories of relief. In seeking to dismiss Plaintiff's First Amended Complaint, Defendant argued that the inverse condemnation claims must be dismissed because, among other reasons, there was no allegation that the takings were for public use. In response, Plaintiff contended that his inverse condemnation claims stated a claim under the condemnation cloud/blight theory and alternatively, as a regulatory takings claim under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

In her May 12, 2015 Findings & Recommendation, Judge Stewart discussed the claims and Defendant's argument. May 12, 2015 Findings & Rec. 16-19. She described the condemnation cloud/blight theory as well as Plaintiff's alternative theory of a "general regulatory takings pursuant to *Penn Cent.*[.]" *Id.* at 17. She concluded that under either theory, Plaintiff was required to plead that any taking was for the benefit of public use. *Id.* at 17-18. She dismissed the inverse condemnation claims because Plaintiff did not allege that Defendant's "strategy to keep property values down and inhibit sales of his Properties within the Sunrise Corridor's proposed right-of-way was done with the intention to use those Properties for public use." *Id.* at 18. She allowed Plaintiff leave to amend.

Plaintiff added the public use allegations in his Second Amended Complaint (SAC). SAC ¶ 5 (Defendant "engaged in a scheme to acquire certain Properties for public use in constructing the Sunrise Corridor Project as cheaply as possible[.]"), ECF 48. This allegation has remained in subsequent amended pleadings. Prop. Third Am. Compl. ¶ 5, ECF 51-1; TAC ¶ 5; FAC ¶ 5. In her December 29, 2015 Findings & Recommendation discussing Defendant's motion to dismiss the Second Amended Complaint and Plaintiff's Motion for Leave to File a Third Amended Complaint, Judge Stewart rejected Defendant's argument that the newly added "public use" allegations were insufficient, except she noted that the claims required clarification because four properties for which no there was no "public use" allegation still were part of the inverse condemnation claims. Dec. 29, 2015 Findings & Rec. 8-11, 21 (D. Or. Dec. 29, 2015), ECF 60, adopted Feb. 4, 2016, ECF 62. The public use allegation has not since been an issue.

In discussing the inverse condemnation claims, Judge Stewart also explained that as to two of the properties, the Con Battin Road Property and the Sunnyside Road Property, the

13 - OPINION & ORDER

inverse condemnation claims arose under a different theory than the condemnation cloud/blight theory underlying the claims as to the Properties impacted by the Sunrise Corridor Project. *Id.* at 14. The claims based on the Con Battin Road and Sunnyside Road Properties were straightforward "as-applied regulatory takings claims[.]" *Id.* Judge Stewart went so far as to suggest that the claims for these two pieces of property should be alleged as separate takings claims, independent of any claim based on the properties impacted by the Sunrise Corridor Project. *Id.* at 21.

The distinction between these theories of relief continued in Judge You's October 17, 2016 Findings & Recommendation where she separately discussed arguments directed at the Properties underlying the condemnation cloud/blight theory from the arguments directed at the Properties underlying the regulatory takings part of the claims. Oct. 17, 2016 Findings & Rec. 7-9 (condemnation cloud/blight), 10-13 (regulatory takings). My January 12, 2017 Opinion also perpetuated the distinction between the two theories. Jan. 12, 2017 Op. & Ord. 13-18 (condemnation cloud/blight), 18-30 (regulatory takings).

Perhaps because of the lack of precision in the pleadings, or the fact that four different Judges in this Court have issued decisions, the decisions have created the impression that the claim involving the Properties impacted by the Sunrise Corridor Project was to be treated differently than the claim involving the two pieces of property which clearly alleged an as-applied regulatory taking by virtue of completed governmental action depriving these properties of any feasible access. However, while the theories underlying these two groups of properties are different, it is clear that both are properly classified as regulatory takings claims.

The condemnation cloud/blight theory of inverse condemnation claims arose in response

14 - OPINION & ORDER

to the previous "general rule" which provided that "absent a statute imposing liability on a condemnor, damages suffered by a landowner as a result of condemnation proceedings that were protracted or subsequently abandoned were . . . damages for which no legal recourse exists." *Thompson v. Tualatin Hills Park & Recreation Dist.*, 496 F. Supp. 530, 539 (D. Or. 1980), *aff'd*, 701 F.2d 99 (9th Cir. 1983). In moving away from this harsh result in cases where properties designated for condemnation suffered "drastic physical deterioration and depreciation in value before formal appropriation[,]" courts allowed damages by concluding that a *de facto* taking had occurred before the statutorily required time for the land transfer or by allowing damages for loss of income and other harm caused by the condemnation process to be included in the condemnation award. *Id.*; *see also W.J.F. Realty Corp. v. Town of Southampton*, 351 F. Supp. 2d 18, 26 (E.D.N.Y. 2004) (discussing "bad faith" taking claims such as where a municipality had prohibited development of the plaintiff's land so that it might more easily acquire that land and noting that cases involving the "condemnation blight principle" were analogous).

While allowing recovery for deterioration or depreciation damages attributable to unjustifiable delay in the condemnation process, the theory did not alter the legal basis of the claim which is a challenge to governmental conduct (whether it be a formal regulation, ordinance, policy, widespread practice, or denial of a development permit, etc.) that substantially interferes with the use of the property. That is, then, a regulatory taking claim. *See Picard v. Bay Area Reg'l Transit Dist.*, 823 F. Supp. 1519, 1522 (N.D. Cal. 1993) ("A claim for unreasonable pre-condemnation activity states a type of regulatory taking claim") (citing *Kaiser Dev. Co. v. City & Cty. of Honolulu*, 913 F.2d 573, 575 (9th Cir. 1990)); *see also Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 684 (9th Cir.1993) (distinguishing physical intrusion takings

from a regulatory taking which "occurs when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property.") (citing *Penn Central*, 438 U.S. 104, 123–25 (1978)).

To the extent the prior decisions of this case suggested that the portion of the inverse condemnation claims based on the Properties impacted by the Sunrise Corridor Project were to be adjudged under a different legal standard that the portion of the claim based on the two properties which more clearly pleaded as-applied regulatory takings claim, the prior decisions were wrong. The inverse condemnation claims in their entirety are regulatory takings claims.

In the FAC, Plaintiff no longer bases the inverse condemnation claims on the Con Battin Road Property and the Sunnyside Road Property. Thus, there is no readily apparent distinction in the allegations. Plaintiff's inverse condemnation claims as currently pleaded are based solely on the theory that Defendant engaged in a scheme to acquire properties for public use as cheaply as possible by "official action" and the "adoption and pursuit" of a "formal government policy" which directed the planning staff to suppress the value of certain properties in one of two ways, including telling prospective buyers that the properties were to be condemned for a public works project. FAC ¶ 5; *see also id.* ¶ 26 (referring to the "formal policy to keep property values down" by enacting regulations). As pleaded, this is a regulatory takings claim because distilled to its essence, Defendant allegedly took some official action to suppress Plaintiff's property values in anticipation of later condemning the property for the Sunrise Corridor Project.

Although my January 12, 2017 Opinion did not analyze the ripeness of the federal inverse condemnation claim based on the Sunrise Corridor Project because of my own misunderstanding of the nature of the claims, I did thoroughly discuss the issue in the context of the part of the

16 - OPINION & ORDER

claims based on the Con Battin Road Property and the Sunnyside Road Property. I do not repeat that discussion here except to say that I concluded that the regulatory takings claim was not ripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). Jan. 12, 2017 Op. & Ord. 22-30. In its motion to dismiss the FAC, Defendant argues that under *Williamson*, the currently pleaded § 1983 inverse condemnation claim requires dismissal based on ripeness. I agree with Defendant.

As before, Plaintiff does not classify the regulatory takings claims as either facial or as-applied. In my January 12, 2017 Opinion, I agreed with Judge Stewart that the claims based on the alleged taking of the Con Battin Road Property and the Sunnyside Road Property were clearly as-applied claims because Plaintiff did not generally or facially challenge the two government development projects that led to the deprivation of access to those properties but instead contended that a taking occurred by Defendant's implementing the two development projects as to particular pieces of property. Jan. 12, 2017 Op. & Ord. 22. The currently pleaded inverse condemnation allegations are less clear. On the one hand, they can be understood as a facial challenge to the unspecified "official action" and "adoption and pursuit" of the "formal government policy" articulated by McAllister to Weinman designed to suppress property values in the Sunrise Corridor right-of-way. On the other hand, they can be understood as an as-applied challenge because they appear to challenge the particular implementation of the Sunrise Corridor Project. In the end, whether facial or as-applied, the claim is unripe.

Putting aside the first "final decision" prong of the two-part *Williamson* analysis which is not uniformly applied to facial challenges, the second prong requires a property owner suing for inverse condemnation to seek "compensation through the procedures provided by the state before

17 - OPINION & ORDER

bringing a federal suit." *Williamson*, 473 U.S. at 194-95. In Oregon, state procedures are available for inverse condemnation claims. Jan. 12, 2017 Op. & Ord. 25-26 (citing cases holding that regulatory takings claims may be brought under state law in Oregon). The FAC contains no allegation that Plaintiff has sought compensation through state procedures.

*Williamson* recognized an exception to the second ripeness requirement when state procedures are unavailable or inadequate. *Williamson*, 473 U.S. at 197. Although there are no allegations in the FAC that state procedures are unavailable or inadequate, Plaintiff argues that such is the case. Plaintiff contends that although "final decisions were made[,]" an argument posited to satisfy the first *Williamson* ripeness prong, these "decisions are not, however, of a sort for which administrative review is available, as they did not involve overt regulatory action." Pl. Resp. 9-10. As such, Plaintiff continues, "Plaintiff has no available administrative recourse to obtain justice for his damages from Defendant's actions." *Id.* at 10.

The problem, however, is that Plaintiff seeks "just compensation" as a result of what can be described, as explained above, only as a "regulatory" taking. FAC ¶ 30 ("Emmert is entitled to receive just compensation of not less than $16,543,517.00 for the properties taken by Defendant"). As *Williamson* explained, "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson*, 473 U.S. at 194. Thus, "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process yields just compensation, then the property owner has no claim against the Government for a taking." *Id.* at 194-95 (brackets and internal quotation marks omitted). As a result "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure

18 - OPINION & ORDER

and been denied just compensation." *Id.* at 195.

Plaintiff cites no authority for his proposition that he has no administrative recourse because he does not challenge "overt regulatory action." But, even assuming he is correct that the second *Williamson* prong does not apply to regulatory takings accomplished pursuant to a widespread custom and practice, Plaintiff has pleaded a § 1983 regulatory taking claim premised on alleged overt governmental action. FAC ¶¶ 5, 26 (referring to "official actions," "adoption and pursuit of a formal government policy," "formal policy to keep property values down" which included "enacting regulations"). By attempting to write himself into a viable claim, Plaintiff has written himself into *Williamson*'s ripeness requirements. Because he fails to plead or otherwise show that state procedures are unavailable or inadequate, his federal inverse condemnation claim is not ripe. *Levald*, 998 F.2d at 687 ("a plaintiff cannot bring a section 1983 action in federal court until the state denies just compensation. A claim under section 1983 is not ripe—and a cause of action under section 1983 does not accrue—until that point.").

IV. Leave to Amend

The FAC is Plaintiff's sixth attempt to plead a viable claim.[2] As explained in my January 12, 2017 Opinion, even though prior decisions in the case had cautioned that the next amendment would be the last, I allowed Plaintiff "one additional time" or one "final opportunity" to successfully plead the inverse condemnation claim. Jan. 12, 2017 Op. 34. I noted that while leave to amend is ordinarily freely given, the district court's "'discretion to deny leave to amend is particularly broad where a plaintiff previously has amended the complaint.'" *Id.* at 33-34 (quoting

---

[2] The FAC follows the Complaint, the First Amended Complaint, the SAC, the proposed Third Amended Complaint, and the TAC as actually filed.

19 - OPINION & ORDER

*World Wide Rush, LLC v. City of L.A.*, 606 F.3d 676, 690 (9th Cir. 2010)). I cited additional authority on this point as well. *Id.*

Plaintiff's repeated failures to set forth a viable claim against this Defendant show that any further amendment would be futile. Plaintiff has either repleaded the same allegations or has retained those same or similar allegations while attempting to recharacterize them as something else in an attempt to cure the deficiencies explained by the Court. Because he has failed to successfully plead *Monell* liability and has failed to plead allegations supporting the ripeness of his § 1983 claim, I dismiss it with prejudice.

V. State Law Claim

The only basis for federal subject matter jurisdiction is the federal § 1983 inverse condemnation claim. The dismissal of that claim leaves Plaintiff's claim based on the Oregon Constitution. Because I have dismissed all claims over which this Court has original jurisdiction, I exercise my discretion under 28 U.S.C. § 1367(c)(3) and decline to exercise supplemental jurisdiction over the Oregon Constitution claim. Therefore, that claim is also dismissed.

CONCLUSION

Defendant's motion to dismiss [94] is granted.

IT IS SO ORDERED.

DATED this ___9___ day of __May__, 2017.

_____
MARCO A. HERNANDEZ
United States District Judge